Jeffrey M. Monhait, AZ Bar No. 038707
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: (215) 665-2084
Email:       jmonhait@cozen.com

Attorneys for Defendants
GoDaddy Inc., GoDaddy.com, LLC
and 123-Reg Limited

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Prime Loyalty, LLC a New York limited liability company, Crisby Studio AB, a Swedish limited liability company, and Niklas Thorin, a Swedish resident,<br><br>Plaintiffs,<br><br>v.<br><br>GoDaddy, Inc. a Delaware corporation, GoDaddy.com, LLC, a Delaware corporation, and 123-Reg Limited, a UK company,<br><br>Defendants. | Case No.: 2:24-cv-03359-JJT<br><br>**DEFENDANTS GODADDY INC., GODADDY.COM, LLC AND 123-REG LIMITED'S OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION** |

# TABLE OF CONTENTS

**Page**

I.     Introduction ................................................................................ 1

II.    Relevant Factual Background .................................................... 2

    A.    Background On GoDaddy .................................................. 2

    B.    Plaintiffs' Allegations Against GoDaddy ......................... 2

    C.    Plaintiffs' Contracts With GoDaddy ................................. 3

    D.    The Registrant Of The Domains ....................................... 5

    E.    Relevant Procedural History ............................................. 5

III.   Legal Standard .......................................................................... 6

IV.    Argument ................................................................................... 6

    A.    Plaintiffs Failed to Allege Subject-Matter Jurisdiction. ...................................... 6

        1.    *Plaintiffs Failed to Allege the Domicile of Prime's Sole Member.* ......... 7

        2.    *Crisby Failed to Allege the Identity or Citizenship of Its Members.* ....... 9

        3.    *Plaintiffs Failed to Allege Jurisdictional Facts Regarding 123-Reg.* ... 10

    B.    123-Reg Is Not Subject To Personal Jurisdiction In Arizona ......................... 11

        1.    *The Court Lacks General Jurisdiction Over 123-Reg* ......................... 12

        2.    *Plaintiffs Failed To Allege An "Alter Ego" Theory* ............................. 13

        3.    *The Court Lacks Specific Jurisdiction Over 123-Reg* ........................... 15

    C.    Plaintiffs Are Unlikely To Succeed On the Merits ............................................ 18

        1.    *Plaintiffs' Cannot Escape The Plain Terms Of The Parties' Contracts* 18

        2.    *Plaintiffs Cannot Succeed On A Contract Claim* .................................. 21

        3.    *Plaintiffs Cannot Succeed On Their Implied Covenant Claim* .............. 22

        4.    *Plaintiffs Cannot Prevail On An Estoppel Claim* ................................. 23

        5.    *Plaintiffs Cannot Succeed On Their Tort Claims* ................................. 23

        6.    *Plaintiffs Cannot Prevail On A Separate "Claim" For Injunction* ....... 26

    D.    Plaintiffs' Failed To Demonstrate A Likelihood Of Irreparable Harm ............ 26

    E.    The Balance Of Equities Favors Defendants .................................................... 29

i

F.    A Preliminary Injunction Is Against The Public Interest .................................. 30

V.    Conclusion ................................................................................................. 30

ii

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Abraham v. Am. Res. Co., LLC,*
  2021 WL 5180230 (E.D. Mich. July 28, 2021)............................................................10

*Acad. of Mot. Picture Arts & Scis. v. GoDaddy.com, Inc.,*
  2015 WL 5311085 (C.D. Cal. Sept. 10, 2015)........................................................2, 19

*Adams v. W. Marine Prods., Inc.,*
  958 F.3d 1216 (9th Cir. 2020)......................................................................................8

*Advantage Aviation Servs. Sweden AB v. JetPro Int'l, LLC,*
  2021 U.S. Dist. LEXIS 70699 (S.D. Fla. Apr. 12, 2021).............................................9

*AFCO Credit Corp. v. Randall Transp. LLC,*
  2023 WL 2810701 (M.D. Fla. Apr. 6, 2023) ...............................................................10

*Akobdzhanyan v. Volvo Car U.S.,*
  2020 U.S. Dist. LEXIS 77511 (C.D. Cal. Apr. 30, 2020)............................................9

*Allendale Mut. Ins. Co. v. Bull Data Sys.,*
  10 F.3d 425 (7th Cir. 1993) ..........................................................................................7

*Am. Girl, LLC v. Nameview, Inc.,*
  381 F. Supp. 2d 876 (E.D. Wis. 2005) .........................................................................2

*Argyros v. Island Storage & Marine LLC,*
  2021 WL 4427061 (D. Ariz. Sept. 27, 2021)..............................................................22

*Barton & Assocs. Inc. v. Trainor,*
  2020 WL 6081496 (D. Ariz. Oct. 15, 2020) ...............................................................28

*Beauchamp v. Muise,*
  2024 WL 4364058 (D. Ariz. Oct. 1, 2024) .................................................................16

*Bishop Paiute Tribe v. Inyo Cnty.,*
  863 F.3d 1144 (9th Cir. 2017).......................................................................................7

*BMO Harris Bank NA v. Corley,*
  2022 WL 4781944 (D. Ariz. Oct. 3, 2022) .................................................................24

*BNSF Ry. Co. v. Tyrrell,*
  581 U.S. 402 (2017) ....................................................................................................12

iii

*Boehm v. Airbus Helicopters Inc.*,
    527 F. Supp. 3d 1112 (D. Ariz. 2020) .................................................................. 11

*Bowman v. Honeywell Int'l, Inc.*,
    438 F. App'x 613 (9th Cir. 2011) ........................................................................ 23

*Boyko v. Kondratiev*,
    2023 WL 5017198 (D. Ariz. July 14, 2023) ........................................................ 29

*Buethe v. Britt Airlines, Inc.*,
    787 F.2d 1194 (7th Cir. 1986) ............................................................................ 10

*Butte Min. PLC v. Smith*,
    24 F.3d 245 (9th Cir. 1994) ................................................................................ 11

*Caribbean Marine Servs. Co. v. Baldrige*,
    844 F.2d 668 (9th Cir. 1988) .............................................................................. 27

*Chubchai v. Abbvie, Inc.*,
    599 F. Supp. 3d 866 (2022) ................................................................................ 12

*Cook v. Orkin Exterminating Co.*,
    258 P.3d 149 (Ariz. Ct. App. 2011) ................................................................... 23

*Corcoran v. CVS Health Corp.*,
    169 F. Supp. 3d 970 (N.D. Cal. 2016) ................................................................ 15

*Cornelis v. B & J Smith Assocs. LLC*,
    2013 WL 6795969 (D. Ariz. Dec. 20, 2013) ....................................................... 14

*Crabb v. GoDaddy.com, Inc.*,
    2010 WL 5890625 (W.D. Ark. Mar. 29, 2010) ................................................... 19

*Crisby Studio AB v. GoDaddy Inc.*,
    2024 WL 4785815 (D. Ariz. Nov. 14, 2024) ............................................... 1, 3, 5

*Cruz v. Cameron Fin. Grp. Inc.*,
    2024 WL 326957 (D. Ariz. Jan. 29, 2024) .......................................................... 26

*Ctr. for Food Safety v. Vilsack*,
    636 F.3d 1166 (9th Cir. 2011) ............................................................................ 28

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ............................................................................................ 12

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) .............................................................................. 19

iv

*Day v. LSI Corp.*,
    174 F. Supp. 3d 1130 (D. Ariz. 2016) ........................................................22

*Democratic Nat'l Comm. v. Reagan*,
    2018 WL 10455189 (D. Ariz. May 25, 2018) ................................................6

*Dev. Servs. Network v. Douglas*,
    666 F.3d 540 (9th Cir. 2011) ...............................................................6, 18

*Discovery Growth Fund, LLC v. Clickstream Corp.*,
    2023 U.S. Dist. LEXIS 110638 (D. Nev. June 27, 2023) ...............................8

*Doe v. Snyder*,
    28 F.4th 103 (9th Cir. 2022) ......................................................................6

*Doe v. Unocal Corp.*,
    248 F.3d 915 (9th Cir. 2001) ..............................................................12, 15

*Dopadre v. City of Sierra Vista*,
    2019 WL 4014099 (Ariz. Ct. App. Aug. 26, 2019) .....................................26

*Double AA Builders, Ltd. v. Grand State Constr. L.L.C.*,
    114 P.3d 835 (Ariz. Ct. App. 2005) ..........................................................23

*East v. Cnty. of Riverside*,
    2024 WL 1012975 (D. Ariz. Mar. 8, 2024) .................................................16

*Ehrmantraut v. Safeway Inc.*,
    2024 WL 1893999 (D. Ariz. Apr. 30, 2024) ...............................................20

*Engage BDR v. GoDaddy*,
    2021 WL 8820555 (C.D. Cal. Sept. 23, 2021) ...........................................25

*Enhanced Athlete Inc. v. Google LLC*,
    2020 WL 4732209 (N.D. Cal. Aug. 14, 2020) ............................................20

*ENS Labs Ltd. v. GoDaddy Inc.*,
    2023 WL 4746115 (D. Ariz. July 25, 2023) ...............................................30

*EZScreenPrint LLC v. SmallDog Prints LLC*,
    2018 WL 3729745 (D. Ariz. Aug. 6, 2018) ............................................12, 13

*Five Star Gourmet Foods, Inc. v. Fresh Express, Inc.*,
    2020 WL 1244918 (N.D. Cal. Mar. 16, 2020) ............................................13

*Forefront Dermatology S.C. v. Crossman*,
    642 F. Supp. 3d 947 (D. Ariz. 2022) ....................................................27, 29

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) ........................................................................18

*Gen. Tech. Applications, Inc. v. Exro Ltda*,
   388 F.3d 114 (4th Cir. 2004) ..........................................................................9

*Gillard v. Good Earth Power AZ LLC*,
   2019 WL 1280946 (D. Ariz. Mar. 19, 2019) ...............................................21

*Givemepower Corp. v. Pace Compumetrics, Inc.*,
   2007 WL 951350 (S.D. Cal. Mar. 23, 2007) ................................................28

*Glamour Dolls Inc. v. Lisa Frank Inc.*,
   2024 WL 4267376 (D. Ariz. Sept. 23, 2024) ...............................................15

*Hao v. GoDaddy.com, LLC*,
   2023 WL 3078660 (D. Ariz. Apr. 25, 2023) ................................................24

*Helicopteros Nacionales de Colom., S.A. v. Hall*,
   466 U.S. 408 (1984) ......................................................................................11

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,
   736 F.3d 1239 (9th Cir. 2013) ......................................................................26

*Hertz Corp. v. Friend*,
   559 U.S. 77 (2010) ........................................................................................10

*Hungerstation LLC v. Fast Choice LLC*,
   2020 WL 137160 (N.D. Cal. Jan. 13, 2020), *aff'd*, 2021 WL 963777 (9th
   Cir. Mar. 15, 2021) .......................................................................................11

*Identity Intel. Grp. LLC v. Rocket Mortg. LLC*,
   2022 WL 17903681 (D. Ariz. Sept. 28, 2022) .......................................6, 27

*Insight Direct USA Inc. v. Gorilla, Inc.*,
   2020 U.S. Dist. LEXIS 107260 (D. Ariz. June 18, 2020) ..............................8

*Inter123 Corp. v. Ghaith*,
   2014 WL 1343508 (D. Ariz. Apr. 4, 2014) ..................................................17

*Ireland Miller, Inc. v. Shee Atika Holdings Phoenix, LLC*,
   2010 WL 2743653 (D. Ariz. July 12, 2010) ................................................25

*Jones v. Chiado*,
   670 P.2d 403 (Ariz. Ct. App. 1983) .............................................................19

*Jones v. GEICO Cas. Co.*,
   2021 WL 3602855 (D. Ariz. Aug. 13, 2021) ................................................................22

*Kocharov v. JPMorgan Chase Bank, N.A.*,
   2023 WL 7018030 (D. Ariz. Oct. 25, 2023) ................................................................20

*Koepnick v. Sears Roebuck & Co.*,
   762 P.2d 609 (Ariz. Ct. App. 1988) ................................................................24

*LaRussa v. NMTC, Inc.*,
   2007 WL 9724933 (D. Ariz. Mar. 30, 2007) ................................................................23

*Leo India Films Ltd. v. GoDaddy.com*,
   LLC, 2020 WL 836603 (D. Ariz. Feb, 20, 2020), *rev'd on other grounds*,
   840 Fed. App'x. 227 (9th Cir. 2021) ................................................................19

*Li v. Home Depot USA Inc.*,
   2013 WL 12120065 (C.D. Cal. Jan. 7, 2013) ................................................................28

*LimoStars, Inc. v. New Hersey Car & Limo, Inc.*,
   2011 WL 3471092 (D. Ariz. Aug. 8, 2011) ................................................................19

*Lois v. Levin*,
   2022 WL 3591850 (C.D. Cal. Aug. 5, 2022) ................................................................16, 18

*Lopez v. Brewer*,
   680 F.3d 1068 (9th Cir. 2012) ................................................................6

*Lorenz v. State*,
   364 P.3d 475 (Ariz. Ct. App. 2015) ................................................................24

*Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*,
   634 F.2d 1197 (9th Cir. 1980) ................................................................28

*Lowry v. EMC Mortg. Corp.*,
   710 F. App'x 752 (9th Cir. 2018) ................................................................21

*Lundblad v. Game 1, LLC*,
   2024 WL 3468745 (C.D. Cal. Mar. 1, 2024) ................................................................9

*Maricopa Cnty v. Office Depot, Inc.*,
   2014 WL 6611562 (D. Ariz. Nov. 21, 2014) ................................................................23

*Marquez v. Amazon.com, Inc.*,
   69 F.4th 1262 (11th Cir. 2023) ................................................................20

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**

*McAlister v. Gieszl*,
  2010 WL 173309 (Ariz. Ct. App. Jan. 19, 2010) ..........................................28

*McClure v. State Farm Life Ins. Co.*,
  608 F. Supp. 3d 813 (D. Ariz. 2022) ...........................................................23

*McDonald v. Kiloo ApS*,
  385 F. Supp. 3d 1022 (N.D. Cal. 2019)........................................................17

*McGeachy v. Pinto Valley Mining Corp.*,
  2017 WL 3130639 (D. Ariz. July 24, 2017) ................................................14

*McNair v. Synapse Grp. Inc.*,
  672 F.3d 213 (3d Cir. 2012) .........................................................................9

*Meza v. Lowe's Home Centers, LLC*,
  2015 WL 5462053 (N.D. Cal. Sept. 16, 2015)..............................................10

*Mikelson v. Conrad*,
  839 F. App'x 275 (10th Cir. 2021)...............................................................9

*Mishiyev v. Alphabet, Inc.*,
  444 F. Supp. 3d 1154 (N.D. Cal. 2020)........................................................21

*Miss. Band of Choctaw Indians v. Holyfield*,
  490 U.S. 30 (1989) .........................................................................................8

*Modulus Fin. Eng'g Inc. v. Modulus Data USA Inc.*,
  2020 WL 2512785 (D. Ariz. May 15, 2020)..................................................16

*Monardes v. Ayub*,
  339 F. App'x 369 (5th Cir. 2009) (per curiam)............................................9

*Mulato v. Wells Fargo Bank, N.A.*,
  76 F. Supp. 3d 929 (N.D. Cal. 2014)............................................................12

*Myers v. Experian Info. Sols. Inc.*,
  2024 WL 2278398 (D. Ariz. May 20, 2024).........................................19, 20

*Naylor v. Flavan*,
  2009 WL 1468708 (C.D. Cal. May 19, 2009)...............................................18

*Neerman v. Cates*,
  2022 WL 17098666 (C.D. Cal. July 1, 2022) ..............................................10

*Newman-Green, Inc. v. Alfonzo-Larrain*,
  490 U.S. 826 (1989) .......................................................................................8

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ......................................................................19

*Nike Inc. v. Comerica Iberica de Exclusivas Deportivas, S.A.*,
    20 F.3d 987 (9th Cir. 1994) ...........................................................................7

*Omega Env't, Inc. v. Gilbarco, Inc.*,
    127 F.3d 1157 (9th Cir. 1997) ......................................................................26

*Orchid Labs Inc. v. Anonymous Ultimate Licensee of Sale-Orchid.Com*,
    2018 U.S. Dist. LEXIS 250142 (D. Ariz. May 4, 2018).............................29

*Otero v. Johnson*,
    2016 WL 6476292 (D. Ariz. 2016) ...............................................................7

*Patrick v. Running Warehouse, LLC*,
    93 F.4th 468 (9th Cir. 2024) ........................................................................20

*Phillips v. Hernandez*,
    2012 WL 5185848 (S.D. Cal. Oct. 18, 2012)..............................................17

*Pistor v. Garcia*,
    2014 WL 116391 (D. Ariz. Jan. 13, 2014)...................................................24

*Quantum Fluids LLC v. Kleen Concepts LLC*,
    2020 U.S. Dist. LEXIS 222593 (D. Ariz. Nov. 25, 2020) ...........................8

*Quiroz v. ALCOA Inc.*,
    416 P.3d 824 (Ariz. 2018) ............................................................................24

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015).........................................................12, 13, 14

*Regency Midwest Ventures Ltd. P'ship v. Best W. Int'l, Inc.*,
    2017 WL 992357 (D. Ariz. Mar. 15, 2017) .................................................22

*Ret. Sys. v. Wynn*,
    829 F.3d 1048 (9th Cir. 2016)........................................................................9

*Rolle v. Robel*,
    2024 WL 342457 (D. Ariz. Jan. 30, 2024)...................................................24

*San Mateo Union High Sch. Dist. v. Educ. Testing Servs.*,
    2013 WL 4711611 (N.D. Cal. Aug. 30, 2013).............................................20

*Sanai v. Cardona*,
    2024 WL 4733514 (N.D. Cal. July 3, 2024) .................................................7

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**

*Scanlon v. Curtis Int'l Ltd.*,
    465 F. Supp. 3d 1054 (E.D. Cal. 2020) ........................................................14

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ........................................................................12

*Segundo Suenos, LLC v. Jones*,
    494 F. App'x 732 (9th Cir. 2012) ...................................................................8

*Serio v. Fan Fair Inc.*,
    2017 WL 8785132 (N.D. Cal. Feb. 21, 2017) .........................................16, 17

*Size, Inc. v. Network Sols., Inc.*,
    255 F. Supp. 2d 568 (E.D. Va. 2003) ............................................................25

*Smith v. Chrysler Grp. LLC*,
    2014 WL 1577515 (D. Ariz. Apr. 19, 2014) ..................................................26

*Smith v. Facebook, Inc.*,
    262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd*, 745 F. App'x 8 (9th Cir. 2018) ...........17

*Stage Nine Design, LLC v. Rock-It Cargo USA, LLC*,
    2021 WL 3565310 (E.D. Cal. Aug. 12, 2021) ...............................................12

*Stormans, Inc. v. Selecky*,
    586 F.3d 1109 (9th Cir. 2009) ......................................................................30

*Tanga.com LLC v. Gordon*,
    2015 WL 533264 (D. Ariz. Feb. 9, 2015) .....................................................12

*TDBBS LLC v. Ethical Prod. Inc.*,
    2019 WL 1242961 (D. Ariz. Mar. 18, 2019) ...........................................26, 27

*ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*,
    871 F. Supp. 2d 905 (D. Ariz. 2012) ............................................................26

*Transure, Inc. v. Marsh & McLennan, Inc.*,
    766 F.2d 1297 (9th Cir. 1985) ........................................................................7

*True Names Ltd. v. GoDaddy Inc.*,
    2022 WL 4121401 (D. Ariz. Sept. 9, 2022) .............................................29, 30

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
    2015 WL 12752879 (C.D. Cal. July 2, 2015) ...............................................18

*Unknown Party v. Arizona Bd. of Regents*,
    2021 WL 1967392 (D. Ariz. May 17, 2021) ..................................................24

*Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*,
   995 F. Supp. 1060 (D. Ariz. 1997) .................................................................18

*Viral DRM LLC v. YouTube Uploadeers Listed on Schedule A*,
   2024 WL 189013 (N.D. Cal. Jan. 17, 2024) .................................................11

*Voltage Pictures, LLC v. Gussi S.A. de C.V.*,
   92 F.4th 815 (9th Cir. 2024) .............................................................................8

*Walls v. Arizona Dep't of Pub. Safety*,
   826 P.2d 1217 (Ariz. Ct. App. 1991) ............................................................25

*Warfield v. Gardner*,
   346 F. Supp. 2d 1033 (D. Ariz. 2004) ...........................................................24

*Whaleco Inc. v. TemuExpress.com*,
   2024 WL 1366933 (D. Ariz. Apr. 1, 2024) ....................................15, 22, 29

*Winestyles, Inc. v. GoDaddy.com, LLC*,
   2012 WL 8254047 (D. Ariz. Aug. 15, 2012) ................................................19

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ................................................................................................6

*Zinn v. ADT LLC*,
   2018 WL 526899 (D. Ariz. Jan. 24, 2018) ...................................................25

**Statutes**

A.R.S. § 29-3201(B)(4).........................................................................................9

**Other Authorities**

Fed. R. Civ. P. 12(h)(3).........................................................................................7

Fed. R. Civ. P. 19(a)(B)(i) ..................................................................................30

Defendants GoDaddy.com, LLC ("GoDaddy"), GoDaddy Inc., and 123-Reg Limited ("123-Reg") (collectively, "Defendants") oppose Plaintiffs Crisby Studio AB, Niklas Thorin, ("Thorin") (together, "Crisby"), and Prime Loyalty, LLC's ("Prime") (collectively, "Plaintiffs") Motion for a Temporary Restraining Order and Preliminary Injunction (Doc. 2).

## I.   INTRODUCTION

Plaintiffs allege they each purchased a domain name registration through GoDaddy's auction services in or around April 2024—calor.com for Crisby (the "Calor Domain"), and butane.com for Prime (the "Butane Domain") (collectively, the "Domains")—and two months later, GoDaddy unwound the transactions because the Domains were auctioned in error. The parties' contracts expressly permitted this alleged action to correct such mistakes or errors, and GoDaddy refunded Plaintiffs and gave them additional in-store credit. Months later, Plaintiffs sued GoDaddy, GoDaddy Inc. (the sole member of GoDaddy's corporate grandparent, and an entity with no involvement in the underlying allegations), and 123-Reg, a United Kingdom ("UK") entity that is the registrar of the Domains. *See Crisby Studio AB v. GoDaddy Inc.*, No. 24-cv-02165-PHX-SMB (D. Ariz.) (*Crisby I*). The Honorable Susan M. Brnovich dismissed *Crisby I* for lack of subject matter jurisdiction, *see* 2024 WL 4785815 (D. Ariz. Nov. 14, 2024), and Plaintiffs then re-filed the exact same case in this Court. Now, six months after the Domains were returned to the original registrant, Plaintiffs seek to enjoin Defendants from allowing the Domains to expire or be transferred or sold.

Plaintiffs failed to satisfy any of the required elements for injunctive relief. ***First***, Plaintiffs once again failed to allege diversity jurisdiction under 28 U.S.C. § 1332. ***Second***, an injunction would be ineffective and unenforceable because 123-Reg is not subject to personal jurisdiction in Arizona. ***Third***, Plaintiffs have not shown a likelihood of success on the merits of any of their scattershot claims, as this action is simply a contractual matter. The parties' contracts expressly allowed GoDaddy's alleged actions, and Plaintiffs' claims fail as a matter of law. ***Fourth***, Plaintiffs failed to show an injunction is necessary to prevent irreparable harm because the purported "harm": (a) ***occurred 6 months ago***; (b) is speculative and unsupported; (c) would not be remedied by the requested relief; and (d) is compensable with money

1

damages. **Fifth**, Plaintiffs failed to demonstrate that the balance of equities favors them because an injunction would be ineffective, create confusion, and alter the status quo. **Sixth**, a TRO is against the public interest because it would adversely impact the non-party registrant of the Domains (an un-joined necessary party), and would impede registrars from correcting errors or mistakes. The Motion should be denied.

## II.     RELEVANT FACTUAL BACKGROUND

### A.     Background On GoDaddy

GoDaddy is a domain name registrar, meaning it manages the reservation of Internet domain names registered through it by members of the public. *See Acad. of Mot. Picture Arts & Scis. v. GoDaddy.com, Inc.*, 2015 WL 5311085, at *1 (C.D. Cal. Sept. 10, 2015); Declaration of Jessica Hanyen ("Hanyen Decl.") ¶ 3. GoDaddy Inc. is the sole member of GoDaddy's corporate grandparent, and GoDaddy Inc. is not a registrar. "[T]o use a domain name in connection with a web site, the web site operator must register the name with one of a number of competing companies known as 'registrars.' Registrars accept domain name registrations on a first-come, first-served basis." *Am. Girl, LLC v. Nameview, Inc.*, 381 F. Supp. 2d 876, 879 (E.D. Wis. 2005). GoDaddy provides domain name services in connection with domains that are not registered at the time of purchase as well as domains that have been previously registered. *See* Hanyen Decl. ¶ 5. The latter category is referred to as aftermarket domain names. *Id.* One component of GoDaddy's aftermarket domain services is GoDaddy Auctions, a venue to facilitate the purchase and sale of currently registered domain names and expiring domain names. *See id.*; *id.* at Ex. C §§ 1–2, 6. GoDaddy "is not the owner of the domain names listed" for auction, and "has no control over the quality, safety, or legality of the domain names listed." *See id.* at Ex. C § 2.

### B.     Plaintiffs' Allegations Against GoDaddy

Crisby alleges they won an auction for the Calor Domain in April 2024. Doc. 1 ¶¶ 31–33; Doc. 4 ¶¶ 3–5. Crisby alleges that on May 27, 2024, they executed a joint venture agreement ("JVA") with non-party QLSC Consulting S.R.L. ("QLSC"), a Romanian company, "for the purpose of developing and launching a dating app." Doc. 1 ¶ 36; Doc. 4 ¶ 9.

Crisby alleges they warranted that they "own[ed]" the Calor Domain, and agreed to eventually "transfer ownership" of it "to the Joint Venture." Doc. 1 ¶ 36; Doc. 4 ¶ 10. Crisby alleges that on May 29, 2024, a GoDaddy employee contacted Thorin regarding the Calor Domain, and Thorin sought "a high six-figure amount" for it. Doc. 1 ¶¶ 46, 48; Doc. 4 ¶¶ 11–12. Crisby alleges that on June 4, 2024, GoDaddy told Thorin the Calor Domain was mistakenly listed for auction "due to an unexpected error" and should not have been auctioned. Doc. 1 ¶ 50; Doc. 4 ¶ 13. Crisby alleges that GoDaddy removed the Calor Domain from their account to correct the error and gave Thorin a full refund plus a $350 in-store credit. *See id.* Crisby alleges that QLSC then terminated the JVA. *See* Doc. 1 ¶ 55; Doc. 4 ¶ 16.

Prime alleges it won an auction for the Butane Domain on March 31, 2024. Doc. 1 ¶¶ 40–41; Doc. 3 ¶¶ 2, 6–8. Prime alleges it "secured" funding from non-party Mike Giordano ("Giordano") to bid in the auction, and that they agreed to establish a "joint white-label butane business" (Giordano was apparently already running such a business). Doc. 1 ¶ 39; Doc. 3 ¶¶ 4–5. Prime alleges it purchased additional services and registered the domain names butane.net and butane.org on April 7, 2024. Doc. 1 ¶ 42; Doc. 3 ¶ 9. Prime alleges that on May 29, 2024, a GoDaddy employee contacted Prime regarding the Butane Domain. Doc. 1 ¶ 46; Doc. 3 ¶ 14. Prime alleges that on June 4, 2024, GoDaddy told Prime that the Butane Domain was mistakenly listed for auction "due to an unexpected error," removed the Butane Domain from Prime's account to correct the error, and gave Prime a full refund plus a $7,350 in-store credit. *See* Doc. 1 ¶ 50; Doc. 3 ¶ 16.

**C.    Plaintiffs' Contracts With GoDaddy**

GoDaddy requires all customers to agree to its Universal Terms of Service Agreement ("UTOS") and other uniform agreements relating to the specific products or services purchased, such as the Domain Name Registration Agreement ("DNRA") for domain registration services, and the Auctions Membership Agreement ("AMA") for auctions services. *See* Hanyen Decl. ¶¶ 6-11, Exs. A-C. Plaintiffs repeatedly admitted they entered into these contracts. *See, e.g.*, *Crisby I* at Doc. 3 ¶¶ 3, 5 (Thorin averred under penalty of perjury that he agreed to the AMA and DNRA); Doc. 18 ¶¶ 72, 82, 87 (Plaintiffs alleged they agreed

to and were bound by the AMA and DNRA); Doc. 20 at 11 (same). The UTOS is expressly incorporated by reference in the AMA and DNRA. *See* Hanyen Decl. at Ex. B § 1, Ex. C § 1. *See also* Doc. 1-1, Ex. E at 2 ("during the checkout process, you agreed to [the UTOS]"), Exs. 4–5 (same). Plaintiffs agreed to the UTOS, AMA, and DNRA on *numerous* occasions—including during the many purchases they made with GoDaddy **before and after the transactions at issue**. *See* Hanyen Decl. at ¶¶ 12-24, Exs. D-N.

The UTOS and DNRA expressly permit GoDaddy to cancel or transfer a domain registration to correct mistakes or errors (among other reasons). First, the UTOS provides:

> GoDaddy expressly reserves the right … to deny, cancel, terminate, suspend, lock, or modify access to (or control of) any Account or Services (including the right to cancel or transfer any domain name registration) for any reason (as determined by GoDaddy in its sole and absolute discretion), including but not limited to the following: (i) to correct mistakes made by GoDaddy in offering or delivering any Services (including any domain name registration), (ii) to protect the integrity and stability of, and correct mistakes made by, any domain name registry or registrar, …[and] (viii) to avoid any civil or criminal liability on the part of GoDaddy….

Hanyen Decl. at Ex. A § 15. Similarly, the DNRA provides:

> You acknowledge and agree that GoDaddy and registry reserve the right to deny, cancel or transfer any registration or transaction, or place any domain name(s) on lock, hold or similar status, as either deems necessary, in the unlimited and sole discretion of either GoDaddy or the registry: … (ii) to protect the integrity and stability of, and correct mistakes made by, any domain name registry or registrar, … [and] (vii) to avoid any liability, civil or criminal, on the part of registry operator…."

*Id.* at Ex. B § 8. Also, the AMA provides for a full refund if an "Expired Domain Name is reclaimed by the original registrant." *See id.* at Ex. C § 6.

Additionally, the UTOS contains a limitation of liability provision that states, in part:

> IN NO EVENT SHALL GODADDY … BE LIABLE TO YOU … FOR ANY DIRECT, INDIRECT, INCIDENTAL, SPECIAL, PUNITIVE, OR CONSEQUENTIAL DAMAGES WHATSOEVER, INCLUDING ANY THAT MAY RESULT FROM (I) THE ACCURACY, COMPLETENESS, OR CONTENT OF THIS SITE, … [and/or] (XI) ANY LOSS OR DAMAGE OF ANY KIND INCURRED AS A RESULT OF YOUR USE OF THIS SITE OR THE SERVICES FOUND AT THIS SITE, WHETHER BASED ON

WARRANTY, CONTRACT, TORT, OR ANY OTHER LEGAL OR EQUITABLE THEORY, AND WHETHER OR NOT GODADDY IS ADVISED OF THE POSSIBILITY OF SUCH DAMAGES[.]

*Id.* at Ex. A § 20. The UTOS expressly limits GoDaddy's total liability to $10,000. *See id.*

### D.    The Registrant Of The Domains

The Domains are registered with 123-Reg, a company registered in England and Wales, with its registered office and principal place of business in the UK. *See* Declaration of Andrew Gradon ("Gradon Decl.") ¶¶ 3, 17. Plaintiffs allege that the original registrant of the Domains was non-party Calor Gas Ltd ("Calor"), that Calor registered the Domains with 123-Reg, and that a technical error prevented Calor from renewing the Domains. *See* Doc. 1 ¶ 19; Doc. 1-1 at Exs. 11, 15. To correct the error, the Domains were returned to Calor. *See* Doc. 1-1 at Ex. 11, 15; Gradon Decl. ¶ 17.

### E.    Relevant Procedural History

This is the exact same case as *Crisby I*. Crisby commenced that action on August 23, 2024. *Crisby I*, Doc. 1. On August 27, 2024, before any defendant appeared, Judge Brnovich granted Crisby's *ex parte* request for a TRO and enjoined the Defendants from allowing the Calor Domain to expire or be transferred or sold. *See id.* at Doc. 11. Defendants opposed Crisby's request for a preliminary injunction, and by its terms, the *ex parte* TRO expired on October 15, 2024. *See id.* at Doc. 16. Judge Brnovich did not extend Crisby's TRO beyond that date, nor did Plaintiffs request such an extension. *See id.* at Doc. 42.

On September 25, 2024, Crisby filed an amended Complaint to add Prime as a plaintiff. *Id.* at Doc. 18. Prime sought an identical TRO regarding the Butane Domain and Defendants opposed Prime's request. *See id.* at Doc. 20, 27, 37, 51-52. That motion was pending when Judge Brnovich dismissed *Crisby I* without prejudice for lack of subject-matter jurisdiction on November 14, 2024. *See* 2024 WL 4785815. *First*, Plaintiffs failed to allege "both the identity of the individual members or the citizenship of the [LLC] members of Prime or Crisby," as required for diversity jurisdiction. *Id.* at *1. *Second*, diversity "was lacking" when Crisby file suit, and Crisby could not create diversity jurisdiction by adding Prime. *Id.* at *2-3.

5

Plaintiffs refiled the exact same case on November 27, 2024. *See* Doc. 1. However, Plaintiffs opportunistically omitted from their pleading certain admissions they made in *Crisby I*, including their admissions that they agreed to and are bound by the UTOS, AMA, and DNRA. Plaintiffs' claims include: (a) trespass to chattel (Count 1); (b) negligence claims (Counts 2–4); (c) estoppel (Count 5); (d) contract claims (Counts 6–8); (e) tortious interference (Counts 9–11); and (f) a claim for injunctive relief (Count 12). *See id.* ¶¶ 63–143.

## III.    LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (internal quotations and citation omitted); *accord Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). "A plaintiff seeking a preliminary injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm without an injunction, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest." *Identity Intel. Grp. LLC v. Rocket Mortg. LLC*, 2022 WL 17903681, at *2 (D. Ariz. Sept. 28, 2022) (citing *Winter*, 555 U.S. at 20).

Courts may balance these factors under a "sliding scale" approach, which allows a plaintiff to obtain an injunction where it has raised "serious questions going to the merits"—provided that plaintiff also shows "a balance of hardships that tips sharply towards the plaintiff" and "a likelihood of irreparable injury and that the injunction is in the public interest." *Dev. Servs. Network v. Douglas*, 666 F.3d 540, 544 (9th Cir. 2011) (internal quotations and citation omitted). The "sliding scale" approach "does not relieve the movant of the burden to satisfy all four prongs for the issuance of a preliminary injunction," *Democratic Nat'l Comm. v. Reagan*, 2018 WL 10455189, at *1 (D. Ariz. May 25, 2018), and "weakness in a plaintiff's showing of harm cannot be offset by a stronger showing on the merits of the underlying legal claim." *Doe v. Snyder*, 28 F.4th 103, 112 n.4 (9th Cir. 2022).

## IV.    ARGUMENT

### A.    Plaintiffs Failed to Allege Subject-Matter Jurisdiction.

"District courts in the Ninth Circuit treat a lack of subject-matter jurisdiction as a failure to show a likelihood of success on the merits." *Sanai v. Cardona*, 2024 WL 4733514, at *1 (N.D. Cal. July 3, 2024) (citation omitted); *accord Otero v. Johnson*, 2016 WL 6476292, at *4–8 (D. Ariz. 2016). Plaintiffs' failure to allege facts sufficient to invoke this Court's subject-matter jurisdiction also mandates dismissal. *See* Fed. R. Civ. P. 12(h)(3); *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1151 (9th Cir. 2017) ("Dismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject-matter jurisdiction.") (citation omitted).

Plaintiffs again failed to properly allege diversity jurisdiction under 28 U.S.C. § 1332(a)(3). *See* Doc. 1 ¶ 9. While "diversity jurisdiction does not encompass a foreign plaintiff suing foreign defendants," *Nike Inc. v. Comerica Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991 (9th Cir. 1994) (citation omitted), Section 1332(a)(3) allows this Court to exercise diversity jurisdiction in cases where there is complete diversity between citizens of different States on both sides of the case, and "additional" foreign parties. *See Transure, Inc. v. Marsh & McLennan, Inc.*, 766 F.2d 1297, 1298-1299 (9th Cir. 1985) (Section 1332(a)(3) requires "complete diversity as to the citizens" of different States, but not the additional citizens of foreign states). For Section 1332(a)(3) to apply, at least one plaintiff and one defendant must not be foreign citizens because Section 1332(a)(3) "does not permit a suit between foreigners and a mixture of citizens and foreigners." *Allendale Mut. Ins. Co. v. Bull Data Sys.*, 10 F.3d 425, 428 (7th Cir. 1993).

Plaintiffs failed to allege diversity jurisdiction for numerous reasons. *First*, Plaintiffs failed to allege the domicile of Prime's sole member. *Second*, Plaintiffs failed to allege the identities or domiciles of Crisby's members or member-equivalents. *Third*, Plaintiffs failed to allege jurisdictional facts regarding 123-Reg. Therefore, this Court should deny the Motion and dismiss this case *sua sponte* for lack of subject-matter jurisdiction.

### 1.    *Plaintiffs Failed to Allege the Domicile of Prime's Sole Member.*

Plaintiffs allege that Prime is a New York LLC. *See* Doc. 1 ¶ 3. For purposes of diversity jurisdiction, "[a] limited liability company is a citizen of every state of which its

owners/members are citizens, not the state in which it was formed or does business." *Voltage Pictures, LLC v. Gussi S.A. de C.V.*, 92 F.4th 815, 822 (9th Cir. 2024) (citation omitted). Thus, "[w]hen a limited liability company sues, the complaint must allege the citizenship of its constituent members" to satisfy their burden to prove subject-matter jurisdiction. *Segundo Suenos, LLC v. Jones*, 494 F. App'x 732, 735 (9th Cir. 2012) (mem.) (citations omitted).

Where a plaintiff fails to allege these facts, the complaint must be dismissed for lack of subject-matter jurisdiction. *See, e.g.*, *Discovery Growth Fund, LLC v. Clickstream Corp.*, 2023 U.S. Dist. LEXIS 110638, at *3-4 (D. Nev. June 27, 2023) (complaint failed to identify plaintiff LLC's members and their citizenship); *Insight Direct USA Inc. v. Gorilla, Inc.*, 2020 U.S. Dist. LEXIS 107260, at *4, *7-8 (D. Ariz. June 18, 2020) (ordering plaintiff to show cause where plaintiff failed to allege such facts regarding respondent LLC); *Quantum Fluids LLC v. Kleen Concepts LLC*, 2020 U.S. Dist. LEXIS 222593, at *2 (D. Ariz. Nov. 25, 2020) (ordering plaintiff to file amended complaint alleging such facts).

Here, Plaintiffs allege that Prime's "sole member" is "Jeffrey K. Garbutt, also located in Orangeburg, New York." Doc. 1 ¶ 3. Plaintiffs also allege that Garbutt is "a resident of Orangeburg, New York." *Id.* ¶ 11. For diversity purposes, to be a citizen of a state, a natural person must be both a U.S. citizen and a domiciliary of that state. *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). As a threshold matter, Plaintiffs failed to allege that Garbutt is a U.S. citizen, and so have failed to allege that he is a citizen of New York for diversity purposes.

Plaintiffs also failed to allege that Garbutt is a New York domiciliary, only that he is a New York resident. *See* Doc. 1 ¶¶ 3, 11. "'[D]omicile' is not necessarily synonymous with 'residence,' and one can reside in one place but be domiciled in another." *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989) (citations omitted); *see Adams*, 958 F.3d at 1221 (a domicile is one's "'permanent home'—that is, where (i) she resides, (ii) 'with the intention to remain or to which she intends to return,'" with residence providing only "some evidence of domicile" (citations omitted)). Because domicile and residence are not synonymous, alleging residence alone is insufficient to establish diversity jurisdiction at the

8

pleadings stage. *See, e.g.*, *Lundblad v. Game 1, LLC*, 2024 WL 3468745, at *1 (C.D. Cal. Mar. 1, 2024) (dismissing complaint because it alleged a person's residence, but not their domicile); *Mikelson v. Conrad*, 839 F. App'x 275, 277 (10th Cir. 2021) ("the district court correctly questioned [the] initial complaint because the complaint alleged . . . residences rather than . . . domiciles"); *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 219 n.4 (3d Cir. 2012) (allegation of residence inadequate to establish diversity); *Monardes v. Ayub*, 339 F. App'x 369, 370 (5th Cir. 2009) (per curiam) (same). Plaintiffs' failure to allege Garbutt's domicile warrants dismissal for failure to allege facts sufficient to invoke this Court's diversity jurisdiction.

### 2. Crisby Failed to Allege the Identity or Citizenship of Its Members.

Plaintiffs allege Crisby is a Swedish "Aktiebolag," which they claim is "equivalent to a Swedish limited liability company." *See* Doc. 1 ¶¶ 4, 12. An Aktiebolag is treated like an LLC for purposes of diversity jurisdiction. *See Advantage Aviation Servs. Sweden AB v. JetPro Int'l, LLC*, 2021 U.S. Dist. LEXIS 70699, at *2-3 (S.D. Fla. Apr. 12, 2021); *Akobdzhanyan v. Volvo Car U.S.*, 2020 U.S. Dist. LEXIS 77511, at *8 (C.D. Cal. Apr. 30, 2020).

Despite this, Plaintiffs failed to allege the identities or citizenships of Crisby's members or member-equivalents. Instead, Plaintiffs alleged that an Aktiebolag is managed by directors, rather than members, and then proceeded to allege the foreign residences of Crisby's directors.[1] *See* Doc. 1 ¶¶ 4, 12. However, manager-managed LLCs exist in the United States as well, *see, e.g.*, A.R.S. § 29-3201(B)(4) (the articles of organization for an Arizona LLC must state whether an LLC is manager-managed or member-managed), and the citizenship of a manager-managed LLC for diversity purposes is still determined by the citizenship of the LLC's members, not its managers. *See, e.g.*, *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004) ("While a manager-managed [LLC] looks and acts somewhat like a corporation," it nevertheless "is not a corporation and cannot be treated as such under

---

[1] Even if the citizenship of Crisby's directors was dispositive, Crisby failed to allege the citizenship of its director, John Alfredsson, and alleged only his residence. *See* Doc. 1 ¶ 12. This is insufficient to establish diversity jurisdiction. *See, e.g.*, *La. Municipal Police Emps.' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1056 (9th Cir. 2016) (U.S. citizen living abroad is "stateless" for purposes of 28 U.S.C. § 1332(a)(3)).

1    section 1332 until Congress says otherwise." (citation omitted)); *AFCO Credit Corp. v.*

2    *Randall Transp. LLC*, 2023 WL 2810701, at *1 (M.D. Fla. Apr. 6, 2023) (citizenship of

3    members of an LLC, not the citizenship of managers, is relevant to diversity jurisdiction);

4    *Abraham v. Am. Res. Co., LLC*, 2021 WL 5180230, at *1 (E.D. Mich. July 28, 2021) (same);

5    *see also Meza v. Lowe's Home Centers, LLC*, 2015 WL 5462053, at *2 (N.D. Cal. Sept. 16,

6    2015) (analyzing citizenship of a manager-managed LLC based on citizenship of members).

7    It is irrelevant whether Crisby is managed by its member-equivalents or separate managers.[2]

8        Plaintiffs failed to allege the identities or citizenships of Crisby's members or

9    member-equivalents, as required to establish Crisby's citizenship. Therefore, Plaintiffs failed

10   to allege facts sufficient to invoke this Court's diversity jurisdiction.

11        ### 3.    *Plaintiffs Failed to Allege Jurisdictional Facts Regarding 123-Reg.*

12        Plaintiffs allege little about 123-Reg. *See* Doc. 1 ¶¶ 8, 10. Plaintiffs do not allege the

13   nature of 123-Reg's corporate form, the state or country in which 123-Reg was incorporated,

14   or the location of 123-Reg's principal place of business. At most, Plaintiffs allege that

15   123-Reg's "registered address" is located in England. A registered address (*e.g.*, the address

16   at which a registered agent can be served) is not equivalent to a state or country of

17   incorporation or a principal place of business. *See, e.g.*, *Neerman v. Cates*, 2022 WL

18   17098666, at *1-2 (C.D. Cal. July 1, 2022) (a registered address is insufficient to allege

19   corporate citizenship); *Buethe v. Britt Airlines, Inc.*, 787 F.2d 1194, 1196 (7th Cir. 1986)

20   (distinguishing between registered address and principal place of business); *see also Hertz*

21   *Corp. v. Friend*, 559 U.S. 77, 92–97 (2010) (principal place of business is "the place where a

22   corporation's officers direct, control, and coordinate the corporation's activities" (*e.g.* the

23   company's "nerve center" or headquarters), and cannot be established via addresses simply

24

25

26   ――――――――――――――――

     [2] The member-equivalents of a Swedish Aktiebolag appear to be referred to as aktieägarna.

27   *See* Aktiebolagslag (2005:551), at chap. 1, § 3, https://www.riksdagen.se/sv/dokument-och-
     lagar/dokument/svensk-forfattningssamling/aktiebolagslag-2005551_sfs-2005-551    (last

28   accessed Dec. 13, 2024). Therefore, Crisby must allege the identities and citizenships of its
     aktieägarna to determine Crisby's citizenship for purposes of diversity jurisdiction.

listed on official forms, such as SEC filings). Therefore, Plaintiffs failed to allege facts sufficient for diversity jurisdiction.

Plaintiffs failed to allege sufficient facts to establish the citizenship of at least three parties for diversity purposes—Crisby, Prime, and 123-Reg. Accordingly, this Court should deny Plaintiffs' Motion and dismiss this action for lack of subject-matter jurisdiction.

## B.      123-Reg Is Not Subject To Personal Jurisdiction In Arizona

The Domains are not registered with GoDaddy, and GoDaddy Inc. is not a domain registrar (this is reason alone to deny injunctive relief against GoDaddy and GoDaddy Inc.). Rather, the Domains are registered with 123-Reg. *See* Gradon Decl. ¶ 17. 123-Reg is not subject to personal jurisdiction in Arizona, which is reason alone to deny Plaintiffs' motion.

"A district court lacks authority to grant a preliminary injunction when it lacks personal jurisdiction over defendants." *Viral DRM LLC v. YouTube Uploadeers Listed on Schedule A*, 2024 WL 189013, at *1 (N.D. Cal. Jan. 17, 2024) (citation omitted); *see Butte Min. PLC v. Smith*, 24 F.3d 245 (9th Cir. 1994) ("[It] would be inappropriate for a district court to enter any injunction … without first considering whether personal jurisdiction could be asserted over the defendant."). As such, "personal jurisdiction is a threshold issue" for purposes of a preliminary injunction analysis. *See Hungerstation LLC v. Fast Choice LLC*, 2020 WL 137160, at *2 (N.D. Cal. Jan. 13, 2020), *aff'd*, 2021 WL 963777 (9th Cir. Mar. 15, 2021).

Plaintiffs "bear[] the burden of "establishing the court's personal jurisdiction over a defendant." *Viral DRM LLC*, 2024 WL 189013, at *1 (internal quotations and brackets omitted) (citing *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)). "Arizona's long-arm jurisdictional statute is coextensive with federal due process," and thus the personal jurisdiction inquiry under Arizona law "is identical to that of federal due process." *Boehm v. Airbus Helicopters Inc.*, 527 F. Supp. 3d 1112, 1117 (D. Ariz. 2020) (citing Ariz. R. Civ. P. 4.2(a)). The "constitutional touchstone" of a jurisdictional due process analysis is whether the nonresident defendant has purposefully established "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 (1984)

1    (cleaned up). To prove such "minimum contacts," Plaintiffs must demonstrate either general

2    or specific jurisdiction. *See Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001).

3        Plaintiffs must demonstrate jurisdictional facts "that, if true, would support jurisdiction

4    over the defendant," *Tanga.com LLC v. Gordon*, 2015 WL 533264, at *1 (D. Ariz. Feb. 9,

5    2015) (citation omitted), and Plaintiffs cannot satisfy this burden with "mere 'bare bones'

6    assertions of minimum contacts with the forum or legal conclusions unsupported by specific

7    factual allegations." *Mulato v. Wells Fargo Bank, N.A.*, 76 F. Supp. 3d 929, 943 (N.D. Cal.

8    2014) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007)) On a motion

9    challenging jurisdiction, the Court "may not assume the truth of allegations in a pleading which

10   are contradicted by affidavit." *Chubchai*, 599 F. Supp. 3d at 876 (citation omitted).

### 1.    *The Court Lacks General Jurisdiction Over 123-Reg*

12       A court has general personal jurisdiction over a defendant only if that defendant's

13   "affiliations with the State in which suit is brought are so constant and pervasive as to render

14   [it] essentially at home in the forum State." *EZScreenPrint LLC v. SmallDog Prints LLC*, 2018

15   WL 3729745, at *1 (D. Ariz. Aug. 6, 2018) (quoting *Daimler AG v. Bauman*, 571 U.S. 117,

16   122 (2014). Except in "exceptional" circumstances, a corporation is subject to general

17   jurisdiction only in its state of incorporation or principal place of business. *Daimler AG*, 571

18   U.S. at 139 n.19. Even substantial in-state business does not permit the assertion of jurisdiction

19   over a foreign corporation for claims unrelated to activity in the state. *See BNSF Ry. Co. v.*

20   *Tyrrell*, 581 U.S. 402, 414 (2017); *accord Schwarzenegger v. Fred Martin Motor Co.*, 374

21   F.3d 797, 801 (9th Cir. 2004) ("This is an exacting standard, as it should be….")

22       Moreover, "the general jurisdiction inquiry examines a corporation's activities

23   worldwide—not just the extent of its contacts in the forum state—to determine where it can

24   be rightly considered at home." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015). As

25   such, the general jurisdiction analysis must "involve a comparative assessment of the

26   defendant's business activities in different locations." *Stage Nine Design, LLC v. Rock-It*

27   *Cargo USA, LLC*, 2021 WL 3565310, at *3 (E.D. Cal. Aug. 12, 2021); *Daimler*, 571 U.S. 117

28   at 139 n.20 ("General jurisdiction instead calls for an appraisal of a corporation's activities in

1    their entirety, nationwide and worldwide. A corporation that operates in many places can
2    scarcely be deemed at home in all of them.").

3         Here, Plaintiffs have not—and cannot—allege any basis for finding that 123-Reg is
4    subject to general jurisdiction in Arizona. 123-Reg is a UK company with a UK registered
5    office and principal place of business. *See* Gradon Decl. ¶ 3. Plaintiffs have not alleged that
6    123-Reg has any physical presence or employees in Arizona, let alone the "constant and
7    pervasive" affiliations that would make it "essentially at home" in Arizona. *See EZScreenPrint*
8    *LLC*, 2018 WL 3729745, at *1. Plaintiffs also have not alleged that a majority of 123-Reg's
9    customers or sales are located in the United States, *let alone* in Arizona. *See Ranza*, 793 F.3d
10   at 1070 (no general jurisdiction over defendant that "sends employees and products into
11   Oregon and engages in commercial transactions there" because the "vast majority of its
12   employees and business activities" were located in Europe).

13        123-Reg is plainly "at home" in the UK, not Arizona. 123-Reg is organized under UK
14   laws, is headquartered in the UK, and 96% of its customers are located in the UK. *See* Gradon
15   Decl. ¶¶ 3, 5. 123-Reg is not incorporated in Arizona, has no office, facility or physical
16   presence in Arizona, and has no employees in Arizona. *See id.* at ¶¶ 6-9. Less than 3% of
17   123-Reg's customers are located in the United States. *Id.* at ¶ 5. It strains credulity for Plaintiffs
18   to suggest that 123-Reg's "home" forum is Arizona. *See Five Star Gourmet Foods, Inc. v.*
19   *Fresh Express, Inc.*, 2020 WL 1244918, at *4 (N.D. Cal. Mar. 16, 2020) (no general
20   jurisdiction over defendant where it lacked physical presence in California and the majority of
21   sales occurred outside California).

22              **2.    *Plaintiffs Failed To Allege An "Alter Ego" Theory***

23        Plaintiffs cannot attribute GoDaddy or GoDaddy Inc.'s Arizona contacts to 123-Reg,
24   and Plaintiffs' conclusory allegation that "123-Reg operates as an alter ego of GoDaddy" is
25   without merit. Doc. 1 ¶ 10. A "parent-subsidiary relationship is insufficient, on its own, to
26   justify imputing one entity's contacts with a forum state to another for the purpose of
27   establishing personal jurisdiction." *Ranza*, 793 F.3d at 1070. Under the alter ego test, Plaintiffs
28   must show "(1) that there is such unity of interest and ownership that the separate personalities

of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Cornelis v. B & J Smith Assocs. LLC*, 2013 WL 6795969, at *4 (D. Ariz. Dec. 20, 2013). To satisfy the "unity of interest and ownership" prong, Plaintiffs must show that GoDaddy Inc. controls 123-Reg "to such a degree as to render the latter the mere instrumentality of the former." *Ranza*, 793 F.3d at 1065. There must be "pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business." *Id.* (internal quotations omitted). "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Id.*

123-Reg is a separate and distinct legal entity from GoDaddy and GoDaddy Inc. *See* Gradon Decl. ¶ 10; *see also Scanlon v. Curtis Int'l Ltd.*, 465 F. Supp. 3d 1054, 1063 (E.D. Cal. 2020) ("Courts have granted motions to dismiss for lack of personal jurisdiction in favor of defendants based on similar declarations.") (collecting cases). 123-Reg observes and enforces corporate formalities, maintains its own corporate records, bank accounts, payroll, and financial plans and records, files and pays its own taxes, and funds its own operations. *See* Gradon Decl. ¶¶ 11–16. 123-Reg's assets and funds are not commingled with those of GoDaddy or GoDaddy Inc., and 123-Reg controls its own day-to-day operations and affairs. *See id.* Plaintiffs failed to allege that 123-Reg is an "alter ego" of GoDaddy or GoDaddy Inc., and they cannot establish that either entity "exert[s] substantially total control" over 123-Reg such that it is "a mere instrumentality" of them. *See Ranza*, 793 F.3d at 1065.

Nor does the Complaint contain sufficient allegations to satisfy the "unity of interest" prong. For example, Plaintiffs allege that one of 123-Reg's directors "is also a GoDaddy officer." *See* Doc. 1 ¶ 10. However, "it is considered a normal attribute of ownership that officers and directors of the parent serve as officers and directors of the subsidiary." *Scanlon*, 465 F. Supp. 3d at 1064 (citation omitted); *McGeachy v. Pinto Valley Mining Corp.*, 2017 WL 3130639, at *4 (D. Ariz. July 24, 2017) ("It is not enough that the parent wholly owns the subsidiary or that both corporations share management personnel" to establish alter ego liability). Similarly, Plaintiffs allege 123-Reg refers to GoDaddy or GoDaddy Inc. in various filings. Doc. 1 ¶ 10 "Separate corporate entities presenting themselves as one online does not

14

rise to the level of unity of interest required to show companies are alter egos." *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016).

Likewise, Plaintiffs' allegations that GoDaddy or GoDaddy Inc. provides management, support, and/or administrative services for 123-Reg are insufficient to satisfy the unity of interest requirement. *See id.* (entities were not alter egos where parent and subsidiary had overlapping officers and directors, parent provided management and administrative services, and parent's website presented itself as one integrated company); *Unocal Corp.*, 248 F.3d at 927 ("A parent … may be directly involved in financing and macro-management of its subsidiaries … without exposing itself to a charge that each subsidiary is merely its alter ego."); *Whaleco Inc. v. TemuExpress.com*, 2024 WL 1366933, at *5 (D. Ariz. Apr. 1, 2024) (allegations that GoDaddy "owned" a corporate affiliate, responded to complaints directed at the affiliate, and had "an overlap" in operations failed "to give rise to the plausible inference that the separate personalities of GoDaddy and DBP have ceased to exist").

Plaintiffs also cannot show "fraud or injustice" necessary to satisfy the second prong an alter ego theory. "A fraud or injustice arises if observance of the corporate form would confuse the opposing parties and frustrate their efforts to protect their rights, while allowing the party responsible to evade liability." *See Glamour Dolls Inc. v. Lisa Frank Inc.*, 2024 WL 4267376, at *16 (D. Ariz. Sept. 23, 2024). Here, Plaintiffs' alleged contractual relationship was with GoDaddy, and Plaintiffs alleged no interaction with 123-Reg. Observing the corporate form would not confuse Plaintiffs or frustrate their alleged contractual rights with GoDaddy. Plaintiffs' alter ego theory cannot support general jurisdiction over 123-Reg.

### 3.    *The Court Lacks Specific Jurisdiction Over 123-Reg*

Courts use the following three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

1    (3) the exercise of jurisdiction must comport with fair play and substantial
2    justice, i.e. it must be reasonable.

3    *East v. Cnty. of Riverside*, 2024 WL 1012975, at *2 (D. Ariz. Mar. 8, 2024). Plaintiffs bear the
4    burden of establishing the first two prongs of this test. *See id.*

5         Courts apply a "purposeful direction" test for tort claims, meaning Plaintiffs must show
6    that 123-Reg "(1) committed an intentional act, (2) expressly aimed at the forum state, (3)
7    causing harm that the defendant knows is likely to be suffered at the forum state." *Modulus*
8    *Fin. Eng'g Inc. v. Modulus Data USA Inc.*, 2020 WL 2512785, at *3 (D. Ariz. May 15, 2020)
9    (quoting *Schwarzenegger*, 374 F.3d at 803). "All three elements of the test must be satisfied."
10   *Beauchamp v. Muise*, 2024 WL 4364058, at *2 (D. Ariz. Oct. 1, 2024).

11        Plaintiffs' cannot satisfy their burden to show specific jurisdiction for several reasons.
12   *First*, Plaintiffs failed to allege any intentional acts by 123-Reg expressly aimed at Arizona.
13   To satisfy this element, Plaintiffs must demonstrate that 123-Reg engaged in conduct "directly
14   targeting the forum" itself, as opposed to merely engaging in a "relationship with a plaintiff or
15   third party" in the forum. *See Lois v. Levin*, 2022 WL 3591850, at *3–4 (C.D. Cal. Aug. 5,
16   2022) (quoting *Walden v. Fiore*, 571 U.S. 277, 285–86 (2014)). Plaintiffs' allegation that 123-
17   Reg communicated with GoDaddy (*see* Doc. 1 ¶¶ 10, 51) does not show that 123-Reg
18   somehow directly targeted Arizona, merely because GoDaddy is in Arizona. *See Beauchamp*,
19   2024 WL 4364058, at *3 (no specific jurisdiction over defendant where the forum-related
20   conduct was not "expressly or especially made to Arizona customers"); *Serio v. Fan Fair Inc.*,
21   2017 WL 8785132, at *4 (N.D. Cal. Feb. 21, 2017) ("conducting business through an internet
22   platform based in California," and using that internet platform to commit an "allegedly tortious
23   action," was not "aimed" at California).

24        Nor does Plaintiffs' speculative allegation that 123-Reg and GoDaddy may have
25   entered into a contract that is "presumably" governed under Arizona law give rise to specific
26   jurisdiction. *See* Doc. 1 ¶ 10. "[T]he mere existence of a contract with a party in the forum
27   state does not constitute sufficient minimum contacts for jurisdiction." Plaintiffs' claims do
28   not arise or relate to any purported contract between 123-Reg and GoDaddy because Plaintiffs

are not parties to—or suing for a breach of—any such purported contract. Even if a foreign defendant contracts with an Arizona resident, that cannot establish specific jurisdiction over the defendant for claims brought by a plaintiff who is not a party to that agreement. *See Inter123 Corp. v. Ghaith*, 2014 WL 1343508, at *3 (D. Ariz. Apr. 4, 2014) ("[E]ven if Defendant's contacts and agreements with GoDaddy could be viewed as Defendant having personally availed himself of the privilege of doing business in Arizona, he did so with respect to his business dealings with GoDaddy and any potential future dispute with GoDaddy, not with respect to the contract with Plaintiff at issue in this case."); *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1028 (N.D. Cal. 2019) (foreign defendant not subject to specific jurisdiction in California, notwithstanding that it entered into a contract with a California-based defendant, because plaintiffs were "not parties to th[at] contract" and were "not suing for any breaches of that contract"). *Phillips v. Hernandez,* 2012 WL 5185848, at *5 (S.D. Cal. Oct. 18, 2012) ("As Plaintiffs are not a party to the contract entered into in San Diego, their cause of action cannot have arisen out of the circumstances surrounding that contract."); *see also Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 953 (N.D. Cal. 2017) (contractual forum selection clause "applies only to disputes between the Healthcare Defendants and Facebook …. It does not create personal jurisdiction in California over the Healthcare Defendants when they are sued by third parties, even if Facebook is also a defendant."), *aff'd*, 745 F. App'x 8 (9th Cir. 2018).

*Second*, Plaintiffs cannot show any harm suffered in Arizona, as required under the "purposeful direction" test. Plaintiffs allege that Crisby is a Swedish limited liability company, and that Prime is a New York limited liability company. *See* Doc. 1 ¶¶ 3–5. Plaintiffs do not contend they suffered harm in Arizona, much less that 123-Reg knew that such harm was likely to occur in Arizona. The decision in *Serio*, 2017 WL 8785132, is instructive. There, the plaintiff alleged the defendant operated an internet store through eBay to engage in infringing activity that harmed the plaintiff's business. *See id.* *4. The Court rejected the plaintiff's assertion that the harm occurred in California, where eBay was headquartered, rather than Maryland, where the plaintiff's business was based. *See id.* ("Any such harm [to Plaintiff's business] did not occur in California. Even though eBay is headquartered in California, a

listing on its internet platform is no more located in California than it is in any other location where it can be viewed."). For the same reasons, Plaintiffs cannot allege they suffered harm in Arizona. *See Lois v. Levin*, 2022 WL 3591850, at *3–4 (no specific jurisdiction where plaintiffs "d[id] not describe how they suffered harm in California," and failed to show how defendant "knew such harm was likely to be suffered in California.").

### C.    Plaintiffs Are Unlikely To Succeed On the Merits

The "most important" factor and "threshold inquiry" on an injunction request is whether the plaintiff is likely to succeed on the merits. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). "[I]f a plaintiff fails to show that he has some chance on the merits, that ends the matter." *Dev. Servs. Network*, 666 F.3d at 544.

#### 1.    *Plaintiffs' Cannot Escape The Plain Terms Of The Parties' Contracts*

Plaintiffs have implicitly recognized that their contracts with GoDaddy, including the UTOS and DNRA, foreclose their claims. Despite their numerous admissions in declarations, pleadings, and briefs in *Crisby I* that they agreed to the AMA and DNRA—and the UTOS, which is incorporated by reference in those agreements—Plaintiffs now attempt to disavow those admissions by claiming those agreements are unenforceable. *Compare* Plaintiffs' admissions cited in Section II.C., *supra*, *with* Doc. 2 at 11–12. The UTOS, DNRA, and AMA are plainly enforceable for several reasons.

First, Plaintiffs cannot escape their judicial admissions that they agreed to and are bound by the UTOS, DNRA, and AMA. *See Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*, 995 F. Supp. 1060, 1066 (D. Ariz. 1997) (allegations in complaint that parties had enforceable contract was judicial admission); *Naylor v. Flavan*, 2009 WL 1468708, at *5 (C.D. Cal. May 19, 2009) (declaration in prior action "constitutes a judicial admission"); *see also UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 2015 WL 12752879, at *9 n.57 (C.D. Cal. July 2, 2015) (courts can consider party's declaration in prior proceeding).

Even Plaintiffs' exhibits make clear that Plaintiffs knew they "agreed to GoDaddy's Universal Terms of Service Agreement, Privacy Policy, and all other agreements applicable to your purchase." Doc. 1-1 at Ex. E, Exs. 4–5. The Court is not "required to accept as true

18

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**

allegations that contradict exhibits attached to the Complaint." *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Plaintiffs plainly assented to the UTOS, DNRA, and AMA, represented that the parties entered into enforceable agreements, and cannot now seek to disavow their admissions to avoid those same terms.

In any event, there is no merit to Plaintiffs' challenge to the enforceability of the UTOS, DNRA, and AMA. All GoDaddy customers—including Plaintiffs—*must* agree to the UTOS and other applicable agreements before they can purchase or use any GoDaddy products or services. *See* Hanyen Decl. ¶¶ 6-11. That requirement has been in place since GoDaddy's formation. *Id.* at ¶ 10. Plaintiffs were required to—and did—affirmatively consent to the UTOS, DNRA, and AMA numerous times before, during, and after the transactions at issue. *See id.* at ¶¶ 12-24, Exs. D-N. Courts have widely upheld the enforceability of GoDaddy's UTOS. *See, e.g.*, *Acad. of Motion Picture Arts & Scis.*, 2015 WL 5311085, at *26; *Winestyles, Inc. v. GoDaddy.com, LLC*, 2012 WL 8254047, at *3 (D. Ariz. Aug. 15, 2012); *Leo India Films Ltd. v. GoDaddy.com*, LLC, 2020 WL 836603, at *2 (D. Ariz. Feb, 20, 2020), *rev'd on other grounds*, 840 Fed. App'x. 227 (9th Cir. 2021); *Crabb v. GoDaddy.com, Inc.*, 2010 WL 5890625, at *4 (W.D. Ark. Mar. 29, 2010); *LimoStars, Inc. v. New Hersey Car & Limo, Inc.*, 2011 WL 3471092, at *14 (D. Ariz. Aug. 8, 2011).

Moreover, the UTOS, DNRA, and AMA are clickwrap, not browsewrap agreements. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014) (discussing features of each type of agreement). Under Arizona law, a party is bound by its agreement to a contract—even if it does not read the agreement—so long as the party had the opportunity to read the contract. *See Jones v. Chiado*, 670 P.2d 403, 405 (Ariz. Ct. App. 1983). "[A] website operator may establish an enforceable internet contract on an 'inquiry notice theory,'" so long as: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Myers v. Experian Info. Sols. Inc.*, 2024 WL 2278398, at *4 (D. Ariz. May 20, 2024) (citation omitted).

Here, it is undisputed that at the check-out page: (1) immediately below the "Complete Purchase" button, it states, "By clicking "Complete Purchase", you agree to our <u>Terms & Conditions</u> and <u>Privacy Policy</u>"; (2) the text "<u>Terms & Conditions</u>" is underlined and contains hyperlinks to the applicable contracts for the products or services purchased; (3) the customer has the ability to click first on the underlined hyperlinks to review the terms of the agreements; and (4) the customer has to click the "Complete Purchase" button, consenting to all the terms of the written agreements identified in the check-out page, in order to complete the purchase. Hanyen Decl. ¶ 11. The notice is reasonably conspicuous because it is displayed immediately below the "Complete Purchase" button, is clear and legible on an uncluttered page, and uses underlined text—which Plaintiffs concede provided notice that they were hyperlinks. *See* Doc 3 ¶ 26; Doc. 4 ¶ 24; *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (conspicuous notice of terms placed "on the final order review page … directly below the button [plaintiff] tapped to complete his purchase."); *accord Myers*, 2024 WL 2278398, at *4; *Ehrmantraut v. Safeway Inc.*, 2024 WL 1893999, at *4 (D. Ariz. Apr. 30, 2024) (no "color test" for hyperlinks, and underlined text for hyperlinks was conspicuous).

Finally, there is no merit to Plaintiffs' substantive unconscionability argument. *See* Doc. 2 at 12. "Contract clauses may be substantively unconscionable if they are 'monstrously harsh' or 'shocking to the conscience.'" *Kocharov v. JPMorgan Chase Bank, N.A.*, 2023 WL 7018030, at *8 (D. Ariz. Oct. 25, 2023) (quoting *Aerial Funding LLC v. Van Sickle*, 2020 WL 6140700, at *3 (Ariz. Ct. App. Oct. 20, 2020)). The UTOS and DNRA are not "monstrously harsh" for allowing GoDaddy discretion to cancel or transfer a domain name registration in order correct mistakes or to avoid potential civil liability. *See Enhanced Athlete Inc. v. Google LLC*, 2020 WL 4732209 (N.D. Cal. Aug. 14, 2020) (contract not unconscionable where it gave defendants sole discretion to determine whether users' videos were harmful and terminate accounts); *see also Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1272–73 (11th Cir. 2023) (contract not unconscionable where it gave Amazon authority to suspend customers' Amazon Prime benefits); *San Mateo Union High Sch. Dist. v. Educ. Testing Servs.*, 2013 WL 4711611, at *8 (N.D. Cal. Aug. 30, 2013) (contract not unconscionable where it gave defendant sole

discretion to invalidate test scores). Indeed, Prime has similar provisions in its own terms and conditions that govern Prime's relationship with its customers. *See* Request for Judicial Notice ("RJN"), Ex. A § 5 (reserving "the right to refuse or cancel any… orders" in the event of "typographical errors" in a transaction, without any time limit), § 4 (disclaiming liability for special or consequential damages). Prime even included similar terms in the terms of service on its website at butane.net. *See* RJN, Ex. B § 1 (reserving the right to modify the terms at any time); § 8 (disclaiming liability for "indirect, incidental, special, consequential, or punitive damages"). Plaintiffs can hardly complain about terms they utilize in their own agreements with their customers.

As GoDaddy explained to Prime, returning the Domain to the original registrant, Calor, "was the right thing to do" because a technical error prevented Calor from being able to renew the Domains, and "[i]f the roles were reversed and an error" caused Plaintiffs to "miss an opportunity to renew one of your domains, we would take the same actions." Doc. 1-1 at Ex. 15. That GoDaddy returned the Domains in this circumstance, and provided Plaintiffs full refunds and in-store credit, is not "shocking to the conscience."

### 2.    *Plaintiffs Cannot Succeed On A Contract Claim*

To prevail on a contract claim, Plaintiffs must prove: (1) the existence of a contract between Plaintiffs and the named defendants, (2) a breach of the contract by the named defendants, and (3) resulting damages to Prime. *See Gillard v. Good Earth Power AZ LLC*, 2019 WL 1280946, at *4 (D. Ariz. Mar. 19, 2019). Plaintiffs failed to identify any contractual provision that was purportedly breached, and that is fatal to Plaintiffs' claims. *See Lowry v. EMC Mortg. Corp.*, 710 F. App'x 752 (9th Cir. 2018) (affirming dismissal where plaintiffs "failed to identify a contract provision" that was breached). Moreover, the parties' contracts ***expressly permitted*** the alleged conduct at issue. *See Mishiyev v. Alphabet, Inc.,* 444 F. Supp. 3d 1154, 1159 (N.D. Cal. 2020) (Where "defendants were given the right to do what they did by the express provisions of the contract[,] there can be no breach."). The Domains were returned to Calor to correct "an unexpected error" that prevented Calor from being able to renew the Domains, and because the Domains should not have expired or been auctioned. *See*

Doc. 1-1 at Exs. 11, 15. The UTOS and DNRA expressly allow GoDaddy to "cancel or transfer any domain name registration" for any reason, including, *inter alia*: (a) to "correct mistakes" made by GoDaddy in offering any of its services, (b) to "correct mistakes" of any domain name registrar, or (c) to avoid any potential civil liability (including potential claims by the original registrant of the Domains). *See* Hanyen Decl., Ex. A § 15, Ex. B § 8. Plaintiffs cannot succeed on contract claims when the UTOS and DNRA expressly permitted the conduct at issue.[3]

### 3.    *Plaintiffs Cannot Succeed On Their Implied Covenant Claim*

A plaintiff asserting a claim for breach of the implied covenant of good faith and fair dealing must prove that the defendant "either [acted] in a manner that denies the other party the reasonably expected benefits of the contract or [used] its discretion under the terms of the contract for a reason beyond the risks assumed by the party claiming a breach." *See Argyros v. Island Storage & Marine LLC*, 2021 WL 4427061, at *4 (D. Ariz. Sept. 27, 2021) (internal quotations omitted). Any claim based on this implied covenant "cannot directly contradict an express contract term," *Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1155–56 (D. Ariz. 2016) (citation omitted), and "an implied covenant claim is not a tool to create new terms of a contract." *Argyros*, 2021 WL 4427061, at *4.

The UTOS and DNRA expressly authorized the alleged conduct at issue—the alleged retrieval or transfer of a domain to correct a registrar's mistake and/or to avoid potential civil liability. "If contracting parties cannot profitably use their contractual powers without fear that a jury will second-guess them under a vague standard of good faith, the law will impair the predictability that an orderly commerce requires." *Jones v. GEICO Cas. Co.*, 2021 WL 3602855, at *4 (D. Ariz. Aug. 13, 2021) (citation omitted). Plaintiffs cannot use the implied covenant of good faith and fair dealing to frustrate the express terms of the parties' contracts, or obtain greater rights and seek a financial windfall. *See Regency Midwest Ventures Ltd.*

---

[3] Plaintiffs' reference to ICANN's Registrar Accreditation Agreement, *see* Doc. 2 at 13, is also meritless, as "[o]nly ICANN and domain name registrars are parties to the RAA," and third parties such as Plaintiffs have no standing to bring claims under the RAA. *See Whaleco Inc. v. TemuExpress.com*, 2024 WL 1366933, at *3 (D. Ariz. Apr. 1, 2024).

1    *P'ship v. Best W. Int'l, Inc.*, 2017 WL 992357, at *4 (D. Ariz. Mar. 15, 2017) (plaintiffs cannot

2    obtain "greater rights than that they bargained for").

3              **4.    Plaintiffs Cannot Prevail On An Estoppel Claim**

4              Plaintiffs' "estoppel" claim fails because the parties' relationship is governed by the

5    UTOS, DNRA, and AMA. Promissory estoppel is equitable in nature and used only when the

6    plaintiff cannot establish an enforceable contract. *See Double AA Builders, Ltd. v. Grand State*

7    *Constr. L.L.C.*, 114 P.3d 835, 843–844 (Ariz. Ct. App. 2005). Arizona law does not permit a

8    party to bring an estoppel claim where there is an express agreement between the parties that

9    covers the subject matter at issue. *See Bowman v. Honeywell Int'l, Inc.*, 438 F. App'x 613, 615

10   (9th Cir. 2011) ("Arizona law prohibits an action based on the promissory estoppel theory of

11   liability if there is an express, written contract on the same subject matter") (citing *Chanay v.*

12   *Chittenden*, 563 P.2d 287, 290 (Ariz. Ct. App. 1977)).

13             **5.    Plaintiffs Cannot Succeed On Their Tort Claims**

14             Plaintiffs cannot succeed on their tort claims for numerous reasons. First, the economic

15   loss rule ("ELR") bars these claims. The ELR "limits a party to its contractual remedies for

16   purely economic loss arising from the other party's alleged failure to adequately perform its

17   promises under a contract." *Maricopa Cnty v. Office Depot, Inc.*, 2014 WL 6611562, at *7 (D.

18   Ariz. Nov. 21, 2014) (internal quotations omitted). Courts have broadly applied the ELR to

19   bar tort claims that are duplicative of contract claims or otherwise premised on the parties'

20   contractual relationship. *See, e.g.*, *Cook v. Orkin Exterminating Co.*, 258 P.3d 149, 152 (Ariz.

21   Ct. App. 2011) (ELR barred negligence claims where plaintiffs were seeking "purely

22   economic loss from [defendant's] alleged failure to adequately perform its promises under the

23   Agreement"); *McClure v. State Farm Life Ins. Co.*, 608 F. Supp. 3d 813, 824–25 (D. Ariz.

24   2022) (ELR barred conversion claim "based upon exactly the same conduct as [plaintiff's]

25   breach of contract claims"); *LaRussa v. NMTC, Inc.*, 2007 WL 9724933, at *5 (D. Ariz. Mar.

26   30, 2007) (ELR barred tortious interference claims based on "Defendant's breach of the

27   [parties' contract]," and "economic repercussions from that breach of contract"). Plaintiffs'

28   tort claims are based on the same allegations as their contract claims—that is, allegations that

1    GoDaddy removed the Domains from Plaintiffs' respective accounts to correct an error or

2    mistake. Indeed, Plaintiffs recognize that this entire action is premised on their contract claims,

3    as they alleged that "[t]his action arises from Defendants breach of its various domain name

4    registration and auction agreements…."). Doc. 1 ¶ 1. Because Plaintiffs have not, and cannot,

5    allege non-economic losses, the ELR bars Plaintiffs duplicative tort claims premised on the

6    same allegations as their contract claims. *See BMO Harris Bank NA v. Corley*, 2022 WL

7    4781944, at *11 (D. Ariz. Oct. 3, 2022) (dismissing tortious interference claim that arose from

8    the same conduct giving rise to contract claims).

9        Second, each of Plaintiffs' tort claims fails as a matter of law:

10    **Trespass to Chattel:** "[T]he tort of trespass to a chattel may be committed by

11    intentionally dispossessing another of the chattel or using or intermeddling with a chattel in

12    the possession of another." *Koepnick v. Sears Roebuck & Co.*, 762 P.2d 609, 617–18 (Ariz.

13    Ct. App. 1988). Trespass to chattel has the same elements as conversion, and differs only in

14    the measure of damages. *See Pistor v. Garcia,* 2014 WL 116391, at *7 n.3 (D. Ariz. Jan. 13,

15    2014). Plaintiffs' claim fails for at least two reasons. *First*, domains cannot be the subject of

16    such a claim. *See, e.g., Hao v. GoDaddy.com, LLC*, 2023 WL 3078660, at *1–2 (D. Ariz. Apr.

17    25, 2023); *Rolle v. Robel*, 2024 WL 342457, at *5 (D. Ariz. Jan. 30, 2024) (same). *Second*, the

18    UTOS and DNRA permitted the conduct at issue. *See Warfield v. Gardner*, 346 F. Supp. 2d

19    1033, 1047 (D. Ariz. 2004) ("an act which would otherwise constitute a conversion may be

20    precluded from having that effect by the plaintiff's consent to the act.").

21    **Gross Negligence, Negligence, and Negligent Misrepresentation:** Plaintiffs cannot

22    prevail on any negligence claim because those claims are based on a mere alleged contractual

23    breach. "Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent

24    some duty, an action for negligence cannot be maintained." *Lorenz v. State*, 364 P.3d 475, 477

25    (Ariz. Ct. App. 2015) (citation omitted). "[D]uty is not presumed," and "in every negligence

26    case, the plaintiff bears the burden of proving the existence of a duty." *Quiroz v. ALCOA Inc.*,

27    416 P.3d 824, 827 (Ariz. 2018); *see also Unknown Party v. Arizona Bd. of Regents*, 2021 WL

28    1967392, at *7 (D. Ariz. May 17, 2021) (negligence claim failed where plaintiff had not

identified any duty of care that was owed). Importantly, "a breach of contract is not a tort unless the law imposes a duty on the relationship created by the contract which exists ***apart from the contract***." *Zinn v. ADT LLC*, 2018 WL 526899, at *2 (D. Ariz. Jan. 24, 2018) (emphasis added) (dismissing negligence claim).

Here, GoDaddy owed Plaintiffs no duty of care other than contractual duties.[4] *See Engage BDR v. GoDaddy*, 2021 WL 8820555, at *3 (C.D. Cal. Sept. 23, 2021) (plaintiffs failed to state negligence claim because GoDaddy's alleged duties as registrar "all arise from the registration and renewal contracts underlying Plaintiffs' contractual claims"); *Size, Inc. v. Network Sols., Inc.*, 255 F. Supp. 2d 568, 574 (E.D. Va. 2003) (dismissing negligence claim because registrar did not owe "broader legal duties than were covered explicitly in the contract"). Accordingly, Plaintiffs' duplicative negligence claims fail as a matter of law. *See Ireland Miller, Inc. v. Shee Atika Holdings Phoenix, LLC*, 2010 WL 2743653, at *3 (D. Ariz. July 12, 2010) (dismissing "claims based in negligence [that] are duplicative of [plaintiff's] breach of contract claim" because claims alleging "Seller breached a duty set forth in the parties' agreement merely is another attempt to plead a breach of contract claim"). Moreover, Plaintiffs cannot show that Defendants engaged in conduct that created "an unreasonable risk of bodily harm to others" necessary to state a claim for gross negligence, *see Walls v. Arizona Dep't of Pub. Safety*, 826 P.2d 1217, 1221 (Ariz. Ct. App. 1991).

***Tortious Interference With Prospective Economic Advantage and Contract***: To prevail on a tortious interference claim, Plaintiffs must prove: (1) "the existence of a valid contractual relationship or business expectancy;" (2) "the interferer's knowledge of the relationship or expectancy;" (3) "intentional interference inducing or causing a breach or termination of the relationship or expectancy;" and (4) "resultant damage to the party whose relationship or expectancy has been disrupted." *Miller*, 104 P.3d at 202. In addition, "[t]he interference must be 'improper' before liability will attach." *Id.*

Plaintiffs cannot prevail on these claims because the alleged "improper" act—removing the Domains from Plaintiffs' respective accounts to correct an error or mistake, and issuing

---

[4] Plaintiffs do not allege GoDaddy Inc. or 123-Reg owed Plaintiffs any duty.

Plaintiffs refunds (plus additional in-store credits)—were exercises of GoDaddy's express contractual rights. *See, e.g.*, *Smith v. Chrysler Grp. LLC*, 2014 WL 1577515, at \*11 (D. Ariz. Apr. 19, 2014) ("Although [defendant] intentionally caused the termination of [plaintiff's] contractual relationship with the [third party], it cannot be said that [defendant] tortuously interfered with the contract when it exercised a power expressly granted to it by the contract"); *Dopadre v. City of Sierra Vista*, 2019 WL 4014099, at \*3 (Ariz. Ct. App. Aug. 26, 2019) ("specifically authorized" action was not "improper" and not actionable for intentional interference with business expectancy); *see also Omega Env't, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1166 (9th Cir. 1997) (alleged interference was not improper where the defendant "exercised its express contractual right"). Moreover, with respect to Count 9, Prime failed to "identify a specific relationship" that any defendant purportedly interfered with, and failed to allege more than the mere "speculative hope of a business expectancy." *See ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*, 871 F. Supp. 2d 905, 912 (D. Ariz. 2012); Doc. 1 ¶ 49.

### 6.    *Plaintiffs Cannot Prevail On A Separate "Claim" For Injunction*

Plaintiffs cannot prevail on a "claim" for injunctive relief because injunctions "are *remedies*…. They are not causes of action in their own right—and therefore cannot be pleaded as such." *See Cruz v. Cameron Fin. Grp. Inc.*, 2024 WL 326957, at \*4 (D. Ariz. Jan. 29, 2024).

### D.    **Plaintiffs' Failed To Demonstrate A Likelihood Of Irreparable Harm**

"Irreparable harm is harm for which there is no adequate remedy at law, such as money damages." *TDBBS LLC v. Ethical Prod. Inc.*, 2019 WL 1242961, at \*6 (D. Ariz. Mar. 18, 2019) (citing *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014)). A plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction" and not merely "a possibility." *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (quoting *Winter*, 555 U.S. at 22). Irreparable harm cannot be based on "unsupported and conclusory statements regarding harm"—rather, it must be "grounded in evidence" and based on "factual findings." *See id.* at 1250. Plaintiffs cannot meet this burden.

*First*, Plaintiffs' only purported "harm" **occurred six months before they filed the Motion**, and Plaintiffs do not contend they are likely to suffer future irreparable harm absent

an injunction. "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance." *See TDBBS*, 2019 WL 1242961, at *6. Here, Plaintiffs allege that: (i) Crisby's non-existent dating app was "indefinitely delayed," and (b) Prime's new butane business has "been terminated." *See* Doc. 2 at 15. These alleged past harms do not suggest that Plaintiffs are likely to suffer *future* irreparable harm absent an injunction. *See TDBBS*, 2019 WL 1242961, at *7 (no irreparable harm where the alleged "harm has already occurred" because "preliminary injunctions are not meant to remedy past harms"); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (reversing preliminary injunction where the alleged injury was "too remote and speculative," because a plaintiff "must demonstrate that it **will be** exposed to irreparable harm") (emphasis supplied).

*Second*, Plaintiffs offer mere speculation that an injunction is necessary to prevent "further transfer of the Domains, removing them from this Court's reach" and to prevent "expiration" of the Domains that could "allow the Domains to be acquired by third parties." *See* Doc. 2 at 12. Plaintiffs' conjecture falls well short of satisfying their burden to show a *likelihood* of irreparable harm, and Plaintiffs cannot establish a likelihood of irreparable harm when they have not submitted any evidence to support their speculative assertions. *See Identity Intel. Grp.*, 2022 WL 17903681, at *3 (no irreparable harm where plaintiff "fail[ed] to provide any such evidence other than its bare assertions of future harm"); *Forefront Dermatology S.C. v. Crossman*, 642 F. Supp. 3d 947, 952 (D. Ariz. 2022) (plaintiff "failed to point to evidence… showing an actual or significant risk [of] irreparable harm").

*Third*, the Domains are registered to non-party Calor, a UK entity, and registered with 123-Reg, a UK company, that—as explained above—is not subject to personal jurisdiction in Arizona. Thus, the requested injunction would not avoid the alleged "harm" because a court cannot enter an injunction against a defendant without personal jurisdiction over them.

*Fourth*, Plaintiffs failed to show that any alleged injury is not compensable with money damages. Crisby alleges, based solely on hearsay, that QLSC terminated the one-week-old JVA after the Calor Domain was removed from Crisby's account. *See* Doc. 1 ¶ 36, 55. Prime

1   alleges, based solely on hearsay, that its proposed new white-label butane business "ended."

2   *See* Doc. 3 ¶ 19. Any "damages" related to a hypothetical, prospective new business are

3   necessarily speculative. *See McAlister v. Gieszl*, 2010 WL 173309, at *6–7 (Ariz. Ct. App.

4   Jan. 19, 2010) (to recover lost profits, a new business "must show with reasonable certainty

5   that the new business would have been feasible, would have yielded a profit, and prove how

6   much profit the business would have realized"). Plaintiffs also made no attempt to explain why

7   they could not use a different domain for their embryonic business concepts—indeed, Prime

8   admitted it reestablished its website at butane.org. *See* Doc. 1 ¶ 44 n.7. Even if Plaintiffs could

9   somehow show reasonable certainty as to any alleged damages, such losses are recoverable

10  through money damages. "The key word in this consideration is irreparable. Mere injuries,

11  however substantial, in terms of money, time and energy necessarily expended are not

12  enough." *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197,

13  1202 (9th Cir. 1980) (cleaned up) (quoting *Sampson v. Murray*, 415 U.S. 61, 94 (1974)).

14      *Fifth*, Plaintiffs' own conduct confirms the lack of urgency or threat of irreparable

15  harm.[5] Crisby delayed over 2.5 months before filing *Crisby I*, and Prime delayed 3.5 months

16  before filing its request for injunctive relief. *See Crisby I*, Doc 2, 20. And, although Judge

17  Brnovich granted Crisby's request for an *ex parte* TRO, the Court never granted any injunctive

18  relief for Prime, and Crisby allowed that TRO to expire on October 15, 2024. *Crisby I*, Doc.

19  16, 42. Plaintiffs' decision to allow the TRO to expire nearly two months ago underscores their

20  inability to demonstrate any threat of purported irreparable harm.

21      "Because Plaintiffs have failed to show that they are likely to suffer irreparable harm

22  in the absence of preliminary relief, [the Court] need not address the remaining elements of

23  the preliminary injunction standard." *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th

24  Cir. 2011) (internal quotations omitted).

25  ───────────────

    [5] *See Barton & Assocs. Inc. v. Trainor*, 2020 WL 6081496, at *6 (D. Ariz. Oct. 15, 2020) ("A
26  delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety
    of relief."); *Li v. Home Depot USA Inc.*, 2013 WL 12120065, at *3 (C.D. Cal. Jan. 7, 2013)
27  (three-month delay "implies a lack of urgency and irreparable harm"); *Givemepower Corp. v.*
    *Pace Compumetrics, Inc.*, 2007 WL 951350, at *7 (S.D. Cal. Mar. 23, 2007) (two-month
28  "delay in seeking injunctive relief undercuts … argument of immediate, irreparable harm").

1   **E.    The Balance Of Equities Favors Defendants**

2   Plaintiffs cannot demonstrate that the balance of equities favors them because the

3   requested injunctive relief is unnecessary and would be ineffective. "When analyzing this

4   element, courts 'must balance the competing claims of injury and must consider the effect on

5   each party of the granting or withholding of the requested relief.'" *Forefront Dermatology*

6   *S.C.*, 642 F. Supp. 3d at 954 (quoting *Winter*, 555 U.S. at 24). Plaintiffs assert that the balance

7   of equities "heavily" favors them because an injunction "preserv[es] the status quo." Doc. 2 at

8   14–15. Not so, as the Domains were returned to Calor 6 months ago. Accordingly, it is

9   Plaintiffs that seek to alter the status quo (and impair the rights of Calor, a non-party to this

10  action). Moreover, Plaintiffs speculate that, absent an injunction, they "might forever lose their

11  control and ownership interest" in the Domains. *See* Doc. 2 at 15. But again, Plaintiffs overlook

12  the fact that 123-Reg is not subject to personal jurisdiction in this forum.

13  On the other hand, a preliminary injunction would prohibit conduct outside of GoDaddy

14  and GoDaddy Inc.'s control, as GoDaddy is not the registrar of the Domains and GoDaddy

15  Inc. is not a registrar. An injunction would also undermine the provisions in the UTOS and

16  DNRA that permit GoDaddy to correct mistakes or errors by a domain registrar. Accordingly,

17  the balance of equities tips against Plaintiffs' unnecessary and ineffective proposed injunction.

18  Nor is there any merit to Plaintiffs' assertion that TROs should be "routinely" granted

19  in "domain name cases," *see* Doc. 2 at 8, and Plaintiffs' cited authorities are inapposite.

20  *TemuExpress.com*, for example, was a trademark case where no defendant appeared to oppose

21  the TRO. 2024 WL 1366933, at \*1–\*2. Similarly, *Orchid Labs Inc. v. Anonymous Ultimate*

22  *Licensee of Sale-Orchid.Com* was a cybersquatting case where no defendant entered an

23  appearance or responded to the request for injunctive relief. *See* 2018 U.S. Dist. LEXIS

24  250142, at \*1–2 (D. Ariz. May 4, 2018); *see also Boyko v. Kondratiev*, 2023 WL 5017198, at

25  \*3 (D. Ariz. July 14, 2023) (criticizing *Orchid Labs* for granting TRO "without analysis of the

26  court's authority to do so").

27  Plaintiffs' reliance on this Court's decision in *True Names Ltd. v. GoDaddy Inc.*, 2022

28  WL 4121401 (D. Ariz. Sept. 9, 2022) is particularly misplaced. *See* Doc. 2 at 15–16. There,

again, no defendant appeared to oppose the TRO request. 2022 WL 4121401, at *1. More importantly, the plaintiff was the ***original registrant*** of the domain at issue, and it alleged that it had been prevented from renewing the domain registration, causing the domain to be auctioned and sold to a third party. *See ENS Labs Ltd. v. GoDaddy Inc.*, 2023 WL 4746115, at *1 (D. Ariz. July 25, 2023). This Court ordered that the domain name be ***returned to the original registrant***. *See id.* As such, the party that won the registration through an auction was enjoined. Plaintiffs are seeking the exact opposite result here.

### F.    A Preliminary Injunction Is Against The Public Interest

When the impact of an injunction is "limited only to the parties," the public interest is usually a neutral factor. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). "If, however, the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." *Id.* Here, Plaintiffs' requested injunction is against the public interest because it would interfere with the existing rights and interests of the nonparty registrant of the Domains, Calor. Indeed, Calor is a necessary party to any claim for equitable relief regarding the Domains because Plaintiffs seek an adjudication of Calor's rights to the Domains. *See* Fed. R. Civ. P. 19(a)(B)(i) (requiring Plaintiffs to join any person that "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest").

Moreover, the public has a strong interest in ensuring that registrars can correct errors or mistakes. Plaintiffs' requested relief undermines that ability, and thus would undermine the public interest in a properly functioning domain name registration process. Accordingly, the public interest militates against granting an injunction.

### V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' for a Temporary Restraining Order and Preliminary Injunction.

Dated:  December 13, 2024

**COZEN O'CONNOR**
Jeffrey M. Monhait

By:  *s/Jeffrey M. Monhait*
      Jeffrey M. Monhait

Attorneys for Defendants
GoDaddy Inc., GoDaddy.com, LLC,
and 123-Reg Limited

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies, under penalty of perjury under the laws of the State of Arizona that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jeffrey J. Neuman
JJN SOLUTIONS, LLC
9445 Brenner Ct.
Vienna, VA 22180
(202) 549-5079
jeff@jjnsolutions.com

Counsel for Plaintiffs

Isacc S. Crum
MESSNER REEVES LLP
7250 N. 16th St., Suite 410
Phoenix, AZ 85020
(602) 457-5059
icrum@messner.com

Counsel for Plaintiffs

SIGNED AND DATED this 13th day of December, 2024 at Philadelphia, Pennsylvania.

COZEN O'CONNOR

By:  *s/ Jeffrey M. Monhait*
      Jeffrey M. Monhait

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**