1    Jeffrey M. Monhait, AZ Bar No. 038707
     COZEN O'CONNOR
2    1650 Market Street, Suite 2800
     Philadelphia, PA  19103
3    Telephone: (215) 665-2084
     Email:         jmonhait@cozen.com
4

5    Attorneys for Defendants
     GoDaddy Inc., GoDaddy.com, LLC
6    and 123-Reg Limited

7

8                    UNITED STATES DISTRICT COURT

9                       DISTRICT OF ARIZONA

10

11   Prime Loyalty, LLC a New York limited        Case No.: 2:24-cv-03359-JJT
     liability company, Crisby Studio AB, a
12   Swedish limited liability company, and       **DEFENDANTS GODADDY INC.,**
     Niklas Thorin, a Swedish resident,           **GODADDY.COM, LLC, AND**
                                                   **123-REG LIMITED'S**
13              Plaintiffs,                        **MEMORANDUM OF LAW IN**
                                                   **SUPPORT OF MOTION TO**
14        v.                                       **DISMISS PLAINTIFFS'**
                                                   **COMPLAINT**
15   GoDaddy, Inc. a Delaware corporation,
     GoDaddy.com, LLC, a Delaware corporation,
16   and 123-Reg Limited, a UK company,

17              Defendants.

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF CONTENTS**

**Page**

2

3      I.     Introduction ................................................................................................... 1

4      II.    Relevant Factual Background ....................................................................... 2

5             A.    Background On GoDaddy ................................................................... 2

6             B.    Plaintiffs' Allegations Against GoDaddy .......................................... 2

7             C.    Plaintiffs' Contracts With GoDaddy ................................................. 3

8             D.    123-Reg And The Domains ................................................................ 4

9             E.    Relevant Procedural History .............................................................. 4

10     III.   Argument ....................................................................................................... 5

11            A.    Plaintiffs Failed To Allege Subject Matter Jurisdiction ..................... 5

12                  1.    Plaintiffs' "Jurisdictional Supplement" Cannot Be Considered ............. 6

13                  2.    Crisby Failed To Allege The Identity And Citizenship Of All Members 8

14                  3.    Plaintiffs Failed To Allege 123-Reg's Principal Place Of Business ..... 10

15            B.    123-Reg Is Not Subject To Personal Jurisdiction In Arizona ........................ 11

16                  1.    The Court Lacks General Jurisdiction Over 123-Reg ......................... 12

17                  2.    123-Reg Is Not Subject To General Jurisdiction In Arizona Under A

18                        Jurisdictional Veil-Piercing Theory ...................................................... 13

19                  3.    123-Reg Is Not Subject To Specific Jurisdiction In Arizona ............... 15

20            C.    Plaintiffs Failed To State A Claim For Relief .................................... 18

21                  1.    Plaintiffs' Challenge To The Parties' Contracts Fails .......................... 18

22                  2.    Plaintiffs' Contract Claims Fail As A Matter Of Law ....................... 24

23                  3.    Plaintiffs' Implied Covenant Claim Fails As A Matter Of Law ........... 25

24                  4.    Plaintiffs' Estoppel Claim Fails As A Matter Of Law ........................ 26

25                  5.    Plaintiffs' Tort Claims Fail As A Matter Of Law ............................... 26

26                  6.    Plaintiffs Cannot Prevail On A Separate "Claim" For Injunction......... 30

27     IV.    Conclusion ................................................................................................... 30

28

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abraham v. Am. Res. Co., LLC*,
  2021 WL 5180230 (E.D. Mich. July 28, 2021)............................................................9

*Acad. of Mot. Picture Arts & Scis. v. GoDaddy.com, Inc.*,
  2015 WL 5311085 (C.D. Cal. Sept. 10, 2015).......................................................2, 19

*Acasio v. San Mateo Cnty.*,
  2015 WL 8752982 (N.D. Cal. Dec. 15, 2015) ..........................................................19

*Adams v. W. Marine Prods., Inc.*,
  958 F.3d 1216 (9th Cir. 2020) .....................................................................................8

*Advantage Aviation Servs. Sweden AB v. JetPro Int'l, LLC*,
  2021 U.S. Dist. LEXIS 70699 (S.D. Fla. Apr. 12, 2021)...........................................8

*AFCO Credit Corp. v. Randall Transp. LLC*,
  2023 WL 2810701 (M.D. Fla. Apr. 6, 2023) ...............................................................9

*Akobdzhanyan v. Volvo Car U.S.*,
  2020 U.S. Dist. LEXIS 77511 (C.D. Cal. Apr. 30, 2020)...........................................8

*Allen v. Shutterfly, Inc.*,
  2020 WL 5517172 (N.D. Cal. Sept. 14, 2020)...........................................................21

*Allendale Mut. Ins. Co. v. Bull Data Sys.*,
  10 F.3d 425 (7th Cir. 1993) .........................................................................................6

*Alpine 4 Techs. Ltd. v. Martin*,
  2022 WL 4548118 (D. Ariz. Sept. 29, 2022) ............................................................24

*Am. Girl, LLC v. Nameview, Inc.*,
  381 F. Supp. 2d 876 (E.D. Wis. 2005) ........................................................................2

*Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*,
  94 F.3d 586 (9th Cir. 1996).......................................................................................11

*Arciniega v. Experian Info. Sols., Inc.*,
  2023 WL 6803084 (D. Ariz. Oct. 12, 2023) .............................................................22

*Argyros v. Island Storage & Marine LLC*,
  2021 WL 4427061 (D. Ariz. Sept. 27, 2021) ............................................................25

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................18

*Barnett v. V.T. Motors LLC*,
    2021 WL 5759113 (D. Ariz. Dec. 3, 2021)........................................22, 23

*Beauchamp v. Muise*,
    2024 WL 4364058 (D. Ariz. Oct. 1, 2024) ......................................16

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................18

*Bishop Paiute Tribe v. Inyo Cnty.*,
    863 F.3d 1144 (9th Cir. 2017)............................................................5

*BMO Harris Bank NA v. Corley*,
    2022 WL 4781944 (D. Ariz. Oct. 3, 2022) ......................................27

*Boehm v. Airbus Helicopters Inc.*,
    527 F. Supp. 3d 1112 (D. Ariz. 2020)..............................................15

*Bowman v. Honeywell Int'l, Inc.*,
    438 F. App'x 613 (9th Cir. 2011)......................................................26

*Brink's Co. v. Chubb European Grp. Ltd.*,
    2020 U.S. Dist. LEXIS 218242 (E.D. Va. Nov. 20, 2020) ...........10

*Buethe v. Britt Airlines, Inc.*,
    787 F.2d 1194 (7th Cir. 1986) ..........................................................10

*Caraccioli v. Facebook, Inc.*,
    700 F. App'x 588 (9th Cir. 2017)......................................................25

*Certain Underwriters at Lloyd's London v. Zurich Am. Ins. Co.*,
    2021 U.S. Dist. LEXIS 130040 (C.D. Cal. July 8, 2021) .............10

*Chandler Med. Bldg. Partners v. Chandler Dental Grp.*,
    855 P.2d 787 (Ariz. Ct. App. 1993) ..................................................24

*Chubchai v. AbbVie, Inc.*,
    599 F. Supp. 3d 866 (N.D. Cal. 2022).............................................11

*Cook v. Orkin Exterminating Co.*,
    258 P.3d 149 (Ariz. Ct. App. 2011) ..................................................26

*Corcoran v. CVS Health Corp.*,
    169 F. Supp. 3d 970 (N.D. Cal. 2016)..............................................14

*Cornelis v. B & J Smith Assocs. LLC*,
    2013 WL 6795969 (D. Ariz. Dec. 20, 2013)....................................................13

*Corral v. Select Portfolio Servicing, Inc.*,
    878 F.3d 770 (9th Cir. 2017) ........................................................................6

*Crabb v. GoDaddy.com, Inc.*,
    2010 WL 5890625 (W.D. Ark. Mar. 29, 2010)..............................................19

*Crisby Studio AB v. GoDaddy Inc.*,
    2024 WL 4785815 (D. Ariz. Nov. 14, 2024) ..................................1, 3, 4, 5

*Cruz v. Cameron Fin. Grp. Inc.*,
    2024 WL 326957 (D. Ariz. Jan. 29, 2024)....................................................30

*Daewoo Elecs. Am., Inc. v. Opta Corp.*,
    875 F.3d 1241 (9th Cir. 2017) ......................................................................7

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ....................................................................................12

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ..................................................................18, 20

*Day v. LSI Corp.*,
    174 F. Supp. 3d 1130 (D. Ariz. 2016) ..........................................................25

*Delphix Corp. v. Embarcadero Techs., Inc.*,
    749 F. App'x 502 (9th Cir. 2018)..................................................................12

*Discovery Growth Fund, LLC v. Clickstream Corp.*,
    2023 U.S. Dist. LEXIS 110638 (D. Nev. June 27, 2023) ............................8

*Doe v. Unocal Corp.*,
    248 F.3d 915 (2001) ....................................................................................14

*Dopadre v. City of Sierra Vista*,
    2019 WL 4014099 (Ariz. Ct. App. Aug. 26, 2019) ....................................29

*Double AA Builders, Ltd. v. Grand State Constr. L.L.C.*,
    114 P.3d 835 (Ariz. Ct. App. 2005) ............................................................26

*East v. Cnty. of Riverside*,
    2024 WL 1012975 (D. Ariz. Mar. 8, 2024) ................................................16

*Eder v. N. Ariz. Consol. Fire Dist. #1*,
    2020 WL 1307963 (D. Ariz. Mar. 19, 2020) ..............................................29

*Ehrmantraut v. Safeway Inc.*,
  732 F. Supp. 3d 1030 (D. Ariz. 2024) ........................................................................ 21

*Engage BDR v. GoDaddy*,
  2021 WL 8820555 (C.D. Cal. Sept. 23, 2021) .......................................................... 28

*Enhanced Athlete Inc. v. Google LLC*,
  479 F. Supp. 3d 824 (N.D. Cal. 2020) ...................................................................... 23

*EZScreenPrint LLC v. SmallDog Prints LLC*,
  2018 WL 3729745 (D. Ariz. Aug. 6, 2018) ......................................................... 12, 13

*Gaspard v. DEA Task Force*,
  2016 WL 2586182 (C.D. Cal. Apr. 4, 2016) .............................................................. 19

*Gen. Tech. Applications, Inc. v. Exro Ltda*,
  388 F.3d 114 (4th Cir. 2004) ....................................................................................... 9

*Gillard v. Good Earth Power AZ LLC*,
  2019 WL 1280946 (D. Ariz. Mar. 19, 2019) ............................................................. 24

*Glamour Dolls Inc. v. Lisa Frank Inc.*,
  2024 WL 4267376 (D. Ariz. Sept. 23, 2024) ............................................................. 15

*Greenwich Inv. Mgm't v. Aegis Cap. Corp.*,
  2024 U.S. Dist. LEXIS 46950 (D. Ariz. Mar. 18, 2024) ...................................... 5, 6, 7

*Hall v. Lalli*,
  977 P.2d 776 (Ariz. 1999) ............................................................................................ 7

*Hao v. GoDaddy.com, LLC*,
  2023 WL 3078660 (D. Ariz. Apr. 25, 2023) .............................................................. 27

*Helicopteros Nacionales de Colom., S.A. v. Hall*,
  466 U.S. 408 (1984) ................................................................................................... 15

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010) ..................................................................................................... 10

*Insight Direct USA Inc. v. Gorilla, Inc.*,
  2020 U.S. Dist. LEXIS 107260 (D. Ariz. June 18, 2020) ........................................... 8

*Inter123 Corp. v. Ghaith*,
  2014 WL 1343508 (D. Ariz. Apr. 4, 2014) ................................................................ 17

*Ireland Miller, Inc. v. Shee Atika Holdings Phoenix, LLC*,
  2010 WL 2743653 (D. Ariz. July 12, 2010) ......................................................... 28, 29

*Jones v. Chiado*,
    670 P.2d 403 (Ariz. Ct. App. 1983) .......................................................................20

*Jones v. GEICO Cas. Co.*,
    2021 WL 3602855 (D. Ariz. Aug. 13, 2021) ..........................................................26

*KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*,
    340 P.3d 405 (Ariz. Ct. App. 2014) .......................................................................28

*Kocharov v. JPMorgan Chase Bank, N.A.*,
    2023 WL 7018030 (D. Ariz. Oct. 25, 2023) ....................................................22, 23

*Koepnick v. Sears Roebuck & Co.*,
    762 P.2d 609 (Ariz. Ct. App. 1988) .......................................................................27

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ..................................................................................................6

*Landmarc Capital & Inv. v. Great Lakes Reinsurance (UK) PLC*,
    2014 U.S. Dist. LEXIS 196340 (D. Ariz. Jan. 29, 2014) .......................................10

*Lang Van, Inc. v. VNG Corp.*,
    40 F.4th 1034 (9th Cir. 2022)..................................................................................11

*LaRussa v. NMTC, Inc.*,
    2007 WL 9724933 (D. Ariz. Mar. 30, 2007) .........................................................27

*Leo India Films Ltd. v. GoDaddy.com, LLC*,
    2020 WL 836603 (D. Ariz. Feb, 20, 2020), *rev'd on other grounds*, 840
    Fed. App'x. 227 (9th Cir. 2021)..............................................................................19

*Leo India Films Ltd. v. GoDaddy.com LLC*,
    2023 WL 3740567 (D. Ariz. May 31, 2023).........................................................22

*LimoStars, Inc. v. New Jersey Car & Limo, Inc.*,
    2011 WL 3471092 (D. Ariz. Aug. 8, 2011) ...........................................................19

*LNS Enters. LLC v. Continental Motors Inc.*,
    464 F. Supp. 3d 1065 (D. Ariz. 2020).....................................................................11

*Lois v. Levin*,
    2022 WL 3591850 (C.D. Cal. Aug. 5, 2022) ....................................................16, 17

*Lorenz v. State*,
    364 P.3d 475 (Ariz. Ct. App. 2015) .......................................................................28

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

*Lowry v. EMC Mortg. Corp.*,
   710 F. App'x 752 (9th Cir. 2018)................................................................24

*Maricopa Cnty v. Office Depot, Inc.*,
   2014 WL 6611562 (D. Ariz. Nov. 21, 2014) ............................................26

*Marquez v. Amazon.com, Inc.*,
   69 F.4th 1262 (11th Cir. 2023).................................................................23

*Mayhew v. Scharf*,
   2010 U.S. Dist. LEXIS 82132 (D. Ariz. July 20, 2010) .............................7

*McClure v. State Farm Life Ins. Co.*,
   608 F. Supp. 3d 813 (D. Ariz. 2022)........................................................27

*McDonald v. Kiloo ApS*,
   385 F. Supp. 3d 1022 (N.D. Cal. 2019).....................................................17

*McGeachy v. Pinto Valley Mining Corp.*,
   2017 WL 3130639 (D. Ariz. July 24, 2017) ..............................................14

*Meza v. Lowe's Home Centers, LLC*,
   2015 WL 5462053 (N.D. Cal. Sept. 16, 2015)............................................9

*Mishiyev v. Alphabet, Inc.*,
   444 F. Supp. 3d 1154 (N.D. Cal. 2020)....................................................25

*Miss. Band of Choctaw Indians v. Holyfield*,
   490 U.S. 30 (1989) .....................................................................................8

*Modulus Fin. Eng'g Inc. v. Modulus Data USA Inc.*,
   2020 WL 2512785 (D. Ariz. May 15, 2020)..............................................16

*Myers v. Experian Info. Sols. Inc.*,
   2024 WL 2278398 (D. Ariz. May 20, 2024)........................................20, 21

*Neerman v. Cates*,
   2022 WL 17098666 (C.D. Cal. July 1, 2022) ...........................................10

*NewGen, LLC v. Safe Cig, LLC*,
   840 F.3d 606 (9th Cir. 2016).......................................................................7

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014)....................................................................20

*Nike Inc. v. Comerica Iberica de Exclusivas Deportivas, S.A.*,
   20 F.3d 987 (9th Cir. 1994).........................................................................6

*Omega Env't, Inc. v. Gilbarco, Inc.*,
    127 F.3d 1157 (9th Cir. 1997) .......................................................................29

*Patrick v. Running Warehouse, LLC*,
    93 F.4th 468 (9th Cir. 2024) .........................................................................21

*Petramala v. Connelly*,
    2019 WL 1932108 (D. Ariz. May 1, 2019) ...................................................18

*Petroliam Nasional Berhad v. GoDaddy.com, Inc.*,
    737 F.3d 546 (9th Cir. 2013) ..........................................................................2

*Phillips v. Hernandez*,
    2012 WL 5185848 (S.D. Cal. Oct. 18, 2012) ...............................................17

*Pistor v. Garcia*,
    2014 WL 116391 (D. Ariz. Jan. 13, 2014) ...................................................27

*Quantum Fluids LLC v. Kleen Concepts LLC*,
    2020 U.S. Dist. LEXIS 222593 (D. Ariz. Nov. 25, 2020) ..............................9

*Quiroz v. ALCOA Inc.*,
    416 P.3d 824 (Ariz. 2018) .............................................................................28

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ...........................................................12, 13, 14

*Regency Midwest Ventures Ltd. P'ship v. Best W. Int'l, Inc.*,
    2017 WL 992357 (D. Ariz. Mar. 15, 2017) ..................................................26

*Reich v. Lopez*,
    858 F.3d 55 (2d Cir. 2017) ............................................................................12

*Robinson v. Robinson*,
    2024 U.S. Dist. LEXIS 29260 (D. Ariz. Feb. 21, 2024) ................................7

*Rolle v. Robel*,
    2024 WL 342457 (D. Ariz. Jan. 30, 2024) ...................................................27

*San Mateo Union High Sch. Dist. v. Educ. Testing Servs.*,
    2013 WL 4711611 (N.D. Cal. Aug. 30, 2013) ..............................................23

*Scanlon v. Curtis Int'l Ltd.*,
    465 F. Supp. 3d 1054 (E.D. Cal. 2020) ..................................................13, 14

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) .........................................................................12

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS'
COMPLAINT**

*Segundo Suenos, LLC v. Jones*,
    494 F. App'x 732 (9th Cir. 2012).....................................................................8

*Serio v. Fan Fair Inc.*,
    2017 WL 8785132 (N.D. Cal. Feb. 21, 2017)......................................16, 17

*Silving v. Wells Fargo Bank, NA*,
    2012 WL 135989 (D. Ariz. Jan. 18, 2012); *aff'd sub nom. Silving v. Am.'s*
    *Servicing Co.*, 552 F. App'x 684 (9th Cir. 2014)........................................24

*Size, Inc. v. Network Sols., Inc.*,
    255 F. Supp. 2d 568 (E.D. Va. 2003)...........................................................28

*Smith v. Chrysler Grp. LLC*,
    2014 WL 1577515 (D. Ariz. Apr. 19, 2014)..................................................29

*Stoyanof v. Crocodiles Not Waterlillies, L.L.C.*,
    2011 WL 13232088 (D. Ariz. June 23, 2011)................................................18

*Sw. Pet Prods., Inc. v. Koch Indus., Inc.*,
    107 F. Supp. 2d 1108 (D. Ariz. 2000)..........................................................23

*ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*,
    871 F. Supp. 2d 905 (D. Ariz. 2012)............................................................29

*Transure, Inc. v. Marsh & McLennan, Inc.*,
    766 F.2d 1297 (9th Cir. 1985)........................................................................6

*Unknown Party v. Arizona Bd. of Regents*,
    2021 WL 1967392 (D. Ariz. May 17, 2021)..................................................28

*Vantage Mobility Int'l LLC v. Kersey Mobility LLC*,
    2020 WL 411188 (D. Ariz. Jan. 24, 2020)....................................................24

*Voltage Pictures, LLC v. Gussi S.A. de C.V.*,
    92 F.4th 815 (9th Cir. 2024)...........................................................................7

*Walls v. Arizona Dep't of Pub. Safety*,
    826 P.2d 1217 (Ariz. Ct. App. 1991) ...........................................................28

*Warfield v. Gardner*,
    346 F. Supp. 2d 1033 (D. Ariz. 2004)..........................................................27

*Whaleco Inc. v. TemuExpress.com*,
    2024 WL 1366933 (D. Ariz. Apr. 1, 2024) ..................................................15

*Williams v. Experian Info. Sols. Inc.*,
   2024 WL 3876171 (D. Ariz. Aug. 20, 2024) ................................................................21

*Winestyles, Inc. v. GoDaddy.com, LLC*,
   2012 WL 8254047 (D. Ariz. Aug. 15, 2012) ...............................................................19

*Young v. Owners Ins. Co.*,
   2020 U.S. Dist. LEXIS 66225 (D. Ariz. Apr. 15, 2020) ...............................................7

*Zinn v. ADT LLC*,
   2018 WL 526899 (D. Ariz. Jan. 24, 2018)..................................................................28

**Statutes**

A.R.S. § 29-3201(B)(4).............................................................................................9

**Other Authorities**

Fed. R. Civ. P. 12(b) .......................................................................................*passim*

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS'
COMPLAINT**

1    Defendants GoDaddy.com, LLC ("GoDaddy"), GoDaddy Inc., and 123-Reg Limited

2    ("123-Reg") (collectively, "Defendants") move to dismiss the Complaint (Doc. 1) filed by

3    Plaintiffs Crisby Studio AB, Niklas Thorin, ("Thorin") (collectively, "Crisby"), and Prime

4    Loyalty, LLC ("Prime") (collectively, "Plaintiffs") for lack of subject matter jurisdiction

5    pursuant to Fed. R. Civ. P. 12(b)(1), failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6),

6    and, as to 123-Reg, lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

7    **I.    INTRODUCTION**

8    Plaintiffs allege they purchased a domain name registration through GoDaddy's auction

9    services in or around April 2024—calor.com for Crisby (the "Calor Domain"), and butane.com

10   for Prime (the "Butane Domain") (collectively, the "Domains")—and two months later,

11   GoDaddy unwound the transactions because the Domains were auctioned in error. The parties'

12   contracts expressly permitted GoDaddy to take such action to correct such mistakes or errors,

13   and GoDaddy refunded Plaintiffs and gave them additional in-store credit. Months later,

14   Plaintiffs sued GoDaddy, GoDaddy Inc. (the sole member of GoDaddy's corporate

15   grandparent, and an entity with no involvement in the underlying allegations), and 123-Reg, a

16   United Kingdom ("UK") entity that is the registrar of the Domains. *See Crisby Studio AB v.*

17   *GoDaddy Inc.*, No. 24-cv-02165-PHX-SMB (D. Ariz.) (*Crisby I*). The Honorable Susan M.

18   Brnovich dismissed *Crisby I* for lack of subject matter jurisdiction, *see* 2024 WL 4785815 (D.

19   Ariz. Nov. 14, 2024), and Plaintiffs re-filed the exact same case in this Court.

20   Plaintiffs' Complaint should be dismissed with prejudice for numerous reasons. ***First***,

21   Plaintiffs once again failed to allege diversity jurisdiction under 28 U.S.C. § 1332. ***Second***,

22   123-Reg is not subject to personal jurisdiction in Arizona. ***Third***, Plaintiffs failed to state a

23   claim as a matter of law because the parties' contracts expressly allowed GoDaddy's alleged

24   actions. Plaintiffs' only hypothetical avenue to avoid a dismissal and overcome the plain

25   language of those agreements is to argue that the parties' contacts are unenforceable. *See* Doc.

26   31 at 70:5-16 ("if the terms of the agreements are enforceable, all of those claims will fail as

27   well"). However, Plaintiffs' allegations conclusively establish contract formation (indeed,

28   Plaintiffs continue to claim that this entire action "arises from" those contracts, *see* Doc. 1 ¶

1

1), and Plaintiffs failed to allege any basis to find that the contracts are unconscionable or otherwise unenforceable. No amendment could cure these defects, and the Court should dismiss the Complaint with prejudice.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Background On GoDaddy

GoDaddy is a domain name registrar, meaning it manages the reservation of Internet domain names registered through it by members of the public. *See Acad. of Mot. Picture Arts & Scis. v. GoDaddy.com, Inc.*, 2015 WL 5311085, at *1 (C.D. Cal. Sept. 10, 2015); *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 548 (9th Cir. 2013). GoDaddy Inc. is the sole member of GoDaddy's corporate grandparent, *see* Doc. 26, and GoDaddy Inc. is not a registrar, nor do Plaintiffs allege that it is a registrar. Doc. 1 ¶¶ 6-7, 15.

"[T]o use a domain name in connection with a web site, the web site operator must register the name with one of a number of competing companies known as 'registrars.' Registrars accept domain name registrations on a first-come, first-served basis." *Am. Girl, LLC v. Nameview, Inc.*, 381 F. Supp. 2d 876, 879 (E.D. Wis. 2005). GoDaddy provides domain name services in connection with domains that are not registered at the time of purchase as well as domains that have been previously registered. The latter category is referred to as aftermarket domain names. One component of GoDaddy's aftermarket domain services is GoDaddy Auctions, a venue to facilitate the purchase and sale of currently registered domain names and expiring domain names. *See* Doc. 1-1 at Ex. N §§ 1–2, 6. GoDaddy "is not the owner of the domain names listed" for auction, and "has no control over the quality, safety, or legality of the domain names listed." *See id.* at § 2.

### B.    Plaintiffs' Allegations Against GoDaddy

Crisby alleges they won an auction for the Calor Domain in April 2024. Doc. 1 ¶¶ 31–33. Crisby alleges that on May 27, 2024, they executed a joint venture agreement ("JVA") with non-party QLSC Consulting S.R.L. ("QLSC"), a Romanian company, "for the purpose of developing and launching a dating app." *Id.* ¶ 36. Crisby alleges they warranted that they "own[ed]" the Calor Domain, and agreed to eventually "transfer ownership" of it "to

1    the Joint Venture." *Id.* ¶ 36. Crisby alleges that on May 29, 2024, a GoDaddy employee

2    contacted Thorin regarding the Calor Domain, and Thorin sought "a high six-figure amount"

3    for it. *Id.* ¶¶ 46, 48. Crisby alleges that on June 4, 2024, GoDaddy told Crisby the Calor

4    Domain was mistakenly listed for auction "due to an unexpected error" and should not have

5    been auctioned. *Id.* ¶ 50. Crisby alleges that GoDaddy removed the Calor Domain from their

6    account to correct the error and gave Crisby a full refund plus a $350 in-store credit. *See id.*

7    Crisby alleges that QLSC then terminated the JVA. *See id.* ¶ 55.

8        Prime alleges it won an auction for the Butane Domain on March 31, 2024. Doc. 1

9    ¶¶ 40–41. Prime alleges it "secured" funding from non-party Mike Giordano ("Giordano") to

10   bid in the auction, and that they agreed to establish a "joint white-label butane business"

11   (Giordano was apparently already running such a business). *Id.* ¶ 39. Prime alleges it

12   purchased additional services and registered the domain names butane.net and butane.org on

13   April 7, 2024. *Id.* ¶ 42. Prime alleges that on May 29, 2024, a GoDaddy employee contacted

14   Prime regarding the Butane Domain. *Id.* ¶ 46. Prime alleges that on June 4, 2024, GoDaddy

15   told Prime that the Butane Domain was mistakenly listed for auction "due to an unexpected

16   error," removed the Butane Domain from Prime's account to correct the error, and gave Prime

17   a full refund plus a $7,350 in-store credit. *See id.* ¶ 50.

18       **C.    Plaintiffs' Contracts With GoDaddy**

19       GoDaddy requires all customers to agree to its Universal Terms of Service Agreement

20   ("UTOS") and other uniform agreements relating to the specific products or services

21   purchased, such as the Domain Name Registration Agreement ("DNRA") for domain

22   registration services, and the Auctions Membership Agreement ("AMA") for auctions

23   services. *See* Doc. 1-1 at Exs. E, N–O, 4–5; Doc. 24-1 § 5. Plaintiffs repeatedly admitted they

24   agreed to these contracts. *See Crisby I* at Doc. 3 ¶¶ 3, 5 (Thorin averred under penalty of

25   perjury that he agreed to the AMA and DNRA); Doc. 18 ¶¶ 72, 82, 87 (Plaintiffs alleged they

26   agreed to the AMA and DNRA); Doc. 20 at 11 (same). The UTOS is expressly incorporated

27   by reference in the AMA and DNRA. *See* Doc. 1-1 at Ex. N § 1, Ex. O § 1; *see also* Doc. 1-1,

28   Ex. E at 2 ("during the checkout process, you agreed to [the UTOS]"), Exs. 4–5 (same).

The UTOS and DNRA expressly permit GoDaddy to cancel or transfer a domain registration to correct mistakes or errors (among other reasons). First, the UTOS provides:

> GoDaddy expressly reserves the right … to deny, cancel, terminate, suspend, lock, or modify access to (or control of) any Account or Services (including the right to cancel or transfer any domain name registration) for any reason (as determined by GoDaddy in its sole and absolute discretion), including but not limited to the following: (i) to correct mistakes made by GoDaddy in offering or delivering any Services (including any domain name registration), (ii) to protect the integrity and stability of, and correct mistakes made by, any domain name registry or registrar, …[and] (viii) to avoid any civil or criminal liability on the part of GoDaddy….

Doc. 24-1 § 15. Similarly, the DNRA provides:

> You acknowledge and agree that GoDaddy and registry reserve the right to deny, cancel or transfer any registration or transaction, or place any domain name(s) on lock, hold or similar status, as either deems necessary, in the unlimited and sole discretion of either GoDaddy or the registry: … (ii) to protect the integrity and stability of, and correct mistakes made by, any domain name registry or registrar, … [and] (vii) to avoid any liability, civil or criminal, on the part of registry operator…."

Doc. 1-1, Ex. O § 8.

### D.    123-Reg And The Domains

The Domains are registered with 123-Reg, a company registered in England and Wales, with its registered office and principal place of business in the UK. *See* Doc. 23 ¶¶ 3, 17. Plaintiffs allege that the original registrant of the Domains was non-party Calor Gas Ltd ("Calor"), that Calor registered the Domains with 123-Reg, and that a technical error prevented Calor from renewing the Domains. *See* Doc. 1 ¶ 19; Doc. 1-1 at Exs. 11, 15. To correct the error, the Domains were returned to Calor. *See* Doc. 1-1 at Ex. 11, 15; Doc. 23 ¶ 17.

### E.    Relevant Procedural History

This is the exact same case as *Crisby I*. Crisby commenced that action on August 23, 2024, and later amended their complaint to add Prime as a plaintiff. *See Crisby I*, Docs. 1, 16. Judge Brnovich dismissed *Crisby I* without prejudice for lack of subject matter jurisdiction on November 14, 2024. *See* 2024 WL 4785815. *First*, Plaintiffs failed to allege "both the identity of the individual members or the citizenship of the [LLC] members of Prime or Crisby," as

1   required for diversity jurisdiction. *Id.* at *1. *Second*, diversity "was lacking" when Crisby filed

2   suit, and Crisby could not create diversity jurisdiction by adding Prime. *Id.* at *2-3.

3       Plaintiffs refiled the exact same case on November 27, 2024, *see* Doc. 1, but they

4   opportunistically omitted from their pleading certain admissions they made in *Crisby I*,

5   including their admissions that they are bound by the UTOS, AMA, and DNRA. Plaintiffs'

6   claims include: (a) trespass to chattel (Count I); (b) negligence claims (Counts II–IV);

7   (c) estoppel (Count V); (d) contract claims (Counts VI–VIII); (e) tortious interference claims

8   (Counts IX–XI); and (f) a claim for injunctive relief (Count XII). *See id.* ¶¶ 63-143.

9       On December 17, 2024, the Court denied Plaintiffs' Motion for Temporary Restraining

10  Order. Doc. 29. As the Court explained, all of Plaintiffs' claims "rise and fall" on the

11  enforceability of the UTOS, DNRA, and AMA, which permitted GoDaddy to take the alleged

12  actions at issue. *See* Doc. 31 at 70:5–21. The Court observed that Plaintiffs were not likely to

13  succeed on their challenge to the enforceability of those contracts, and therefore Plaintiffs were

14  unlikely to succeed on the merits of any of their claims. *See id.* at 70:22–71:4. The Court also

15  found that Plaintiffs were unlikely to succeed in showing that 123-Reg is subject to personal

16  jurisdiction in this Court. *See id.* at 71:5–18.

## III.    ARGUMENT

### A.    Plaintiffs Failed To Allege Subject Matter Jurisdiction

19      This Court must dismiss claims over which it lacks subject matter jurisdiction. *See* Fed.

20  R. Civ. P. 12(b)(1). In a facial challenge to subject matter jurisdiction, such as this one, "a

21  defendant argues that the claims in the complaint, even if true, are insufficient to establish

22  subject matter jurisdiction." *Greenwich Inv. Mgm't v. Aegis Cap. Corp.*, 2024 U.S. Dist.

23  LEXIS 46950, at *6 (D. Ariz. Mar. 18, 2024) (citing *Safe Air for Everyone v. Meyer*, 373 F.3d

24  1035, 1039 (9th Cir. 2004)). In such a challenge, "courts must accept all material, non-

25  conclusory allegations in the complaint as true and construe the complaint in favor of the

26  plaintiff." *Id.* (first citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); and then citing

27  *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011)); *accord Bishop Paiute Tribe v.

28  Inyo Cnty.*, 863 F.3d 1144, 1151 (9th Cir. 2017) (citation omitted). However, in all instances,

"the plaintiff bears the burden of establishing the elements of Article III standing." *Greenwich Inv. Mgm't*, 2024 U.S. Dist. LEXIS 46950, at *7 (citing *Spokeo v. Robins*, 578 U.S. 330, 338 (2016)). "It is to be presumed that a cause lies outside this [Court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017) (same).

Plaintiffs failed to allege facts that could support diversity jurisdiction under 28 U.S.C. § 1332(a)(3). *See* Doc. 1 ¶ 9. While "diversity jurisdiction does not encompass a foreign plaintiff suing foreign defendants," *Nike Inc. v. Comerica Iberica de Exclusivas Deportivas, S.A.*, 20 F.3d 987, 991 (9th Cir. 1994) (citation omitted), Section 1332(a)(3) allows this Court to exercise diversity jurisdiction in cases where there is complete diversity between opposing citizens of different States, and "additional" foreign parties. *See Transure, Inc. v. Marsh & McLennan, Inc.*, 766 F.2d 1297, 1298-99 (9th Cir. 1985). For Section 1332(a)(3) to apply, at least one plaintiff and one defendant must not be foreign citizens because Section 1332(a)(3) "does not permit a suit between foreigners and a mixture of citizens and foreigners." *Allendale Mut. Ins. Co. v. Bull Data Sys.*, 10 F.3d 425, 428 (7th Cir. 1993).

Plaintiffs failed to allege diversity jurisdiction for numerous reasons. *First*, rather than amend the Complaint to correct obvious deficiencies in their jurisdictional allegations, Plaintiffs filed a "jurisdictional supplement," even though only the allegations in their pleading may be considered at this stage. *Second*, even considering Plaintiffs' jurisdictional supplement, Plaintiffs alleged the identities and domiciles of only two Crisby shareholders who also serve as directors, rather than all shareholders. *Third*, Plaintiffs failed to allege 123-Reg's principal place of business. Thus, this case must be dismissed for lack of subject matter jurisdiction.

### 1. *Plaintiffs' "Jurisdictional Supplement" Cannot Be Considered*

Despite meet-and-confer efforts in which Defendants' counsel expressly noted that Plaintiffs must amend their Complaint if they wish to assert additional jurisdictional allegations, *see* Doc. 37-1, Plaintiffs declined to amend their Complaint. Instead, Plaintiffs filed a "Jurisdictional Supplement" seeking to "supplement[]" various Paragraphs of their

6

Complaint with additional or different factual allegations. *See* Doc. 33. Plaintiffs' counsel stated they filed a Jurisdictional Supplement instead of an amended pleading for the purpose of "not extend[ing] the time for [Defendants] to file [their] response." Doc. 37-1 at 1.

There is no basis for this procedural gamesmanship. A facial challenge tests the "sufficiency *of the pleadings* to establish subject matter jurisdiction," not the sufficiency of additional allegations not made in the pleadings. *See NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016) (emphasis added). Only the truth of "material, non-conclusory allegations *in the complaint*" is assumed. *Greenwich Inv. Mgm't*, 2024 U.S. Dist. LEXIS 46950, at *6 (emphasis added). If the allegations in the operative pleading are insufficient on their face, but could be supplemented, leave to amend can be granted "to amend jurisdictional allegations pursuant to 28 U.S.C. § 1653"—even if the allegations have been made in other filings. *NewGen, LLC*, 840 F.3d at 614. Accordingly, this Court has repeatedly required pleadings to be amended when the operative pleading fails to allege subject matter jurisdiction. *See, e.g.*, *Robinson v. Robinson*, 2024 U.S. Dist. LEXIS 29260, at *4 (D. Ariz. Feb. 21, 2024); *Young v. Owners Ins. Co.*, 2020 U.S. Dist. LEXIS 66225, at *3 (D. Ariz. Apr. 15, 2020); *Mayhew v. Scharf*, 2010 U.S. Dist. LEXIS 82132, at *5 (D. Ariz. July 20, 2010).[1]

Plaintiffs should be required to amend their pleading to include the allegations in their Jurisdictional Supplement that they added to address some (but not all) of the jurisdictional deficiencies in their Complaint. Specifically, Plaintiffs' Jurisdictional Supplement purported to supplement Paragraph 11 of the Complaint to allege the country of citizenship and domicile of Prime's sole member, rather than only his residence. *See Voltage Pictures, LLC v. Gussi S.A. de C.V.*, 92 F.4th 815, 822 (9th Cir. 2024) ("A limited liability company is a citizen of

---

[1] This is not a deficiency that can or should be overlooked. If this Court reaches Defendants' merits-based arguments under Fed. R. Civ. P. 12(b)(6), the result would be a dismissal with prejudice. But such a judgment may not have preclusive effect if Plaintiffs failed to invoke this Court's jurisdiction. *See Hall v. Lalli*, 977 P.2d 776, 779 (Ariz. 1999) (res judicata only applies "when a former judgment on the merits was rendered by a court of competent jurisdiction"); *see also Daewoo Elecs. Am., Inc. v. Opta Corp.*, 875 F.3d 1241, 1247 (9th Cir. 2017) (preclusive effect of a "dismissal by a federal court sitting in diversity" is determined by "the law of the state where the rendering federal diversity court sits" (citation omitted)). Accordingly, Defendants must ensure that Plaintiffs' jurisdictional allegations are sufficient.

1   every state of which its owners/members are citizens, not the state in which it was formed or

2   does business."); *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1221 (9th Cir. 2020) (for

3   diversity purposes, a natural person is a citizen of a state only if they are both a U.S. citizen

4   and a domiciliary of that state); *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48

5   (1989) ("'[D]omicile' is not necessarily synonymous with 'residence,' and one can reside in

6   one place but be domiciled in another."). *Compare* Doc. 1 ¶¶ 3, 11 (alleging only the residence

7   of Prime's sole member, but not his domicile or that he is a United States citizen), *with* Doc.

8   33 ¶ 11 (alleging that Prime's sole member is a New York domiciliary and United States

9   citizen). Plaintiffs also purported to supplement Paragraph 10 of the Complaint to allege that

10  123-Reg is incorporated in the United Kingdom, as required. *See* Section III(A)(3), *infra*.

11  *Compare* Doc. 1 ¶ 10 (failing to specify place of incorporation), *with* Doc. 33 ¶ 10 (alleging

12  that 123-Reg is a United Kingdom entity). Plaintiffs must amend their Complaint to allege

13  these facts in order to invoke the Court's jurisdiction.

14              **2.    *Crisby Failed To Allege The Identity And Citizenship Of All Members***

15              Even if the Court considered Plaintiffs' Jurisdictional Supplement, Plaintiffs still failed

16  to allege facts sufficient to establish diversity jurisdiction. Plaintiffs allege Crisby is a Swedish

17  "Aktiebolag," which they allege is "roughly equivalent to, but not the same as, a United States

18  limited liability company." *See* Doc. 33 ¶ 12. An Aktiebolag is treated like an LLC for

19  purposes of diversity jurisdiction. *See Advantage Aviation Servs. Sweden AB v. JetPro Int'l,*

20  *LLC*, 2021 U.S. Dist. LEXIS 70699, at *2-3 (S.D. Fla. Apr. 12, 2021); *Akobdzhanyan v. Volvo*

21  *Car U.S.*, 2020 U.S. Dist. LEXIS 77511, at *8 (C.D. Cal. Apr. 30, 2020).

22              Therefore, Plaintiffs must identify all of Crisby's members or member-equivalents and

23  allege their citizenship to establish Crisby's own citizenship. *See, e.g.*, *Segundo Suenos, LLC*

24  *v. Jones*, 494 F. App'x 732, 735 (9th Cir. 2012) (mem.) (citations omitted) ("When a limited

25  liability company sues, the complaint must allege the citizenship of its constituent members"

26  to satisfy their burden to prove subject matter jurisdiction.); *Discovery Growth Fund, LLC v.*

27  *Clickstream Corp.*, 2023 U.S. Dist. LEXIS 110638, at *3-4 (D. Nev. June 27, 2023) (complaint

28  failed to identify plaintiff LLC's members and their citizenship); *Insight Direct USA Inc. v.*

8

*Gorilla, Inc.*, 2020 U.S. Dist. LEXIS 107260, at \*4, \*7-8 (D. Ariz. June 18, 2020) (ordering plaintiff to show cause where plaintiff failed to allege such facts regarding respondent LLC); *Quantum Fluids LLC v. Kleen Concepts LLC*, 2020 U.S. Dist. LEXIS 222593, at \*2 (D. Ariz. Nov. 25, 2020) (ordering plaintiff to file amended complaint alleging such facts). The member-equivalents of a Swedish Aktiebolag appear to be referred to as aktieägarna, which roughly translates to "shareholders." *See* Aktiebolagslag (2005:551), at chap. 1, § 3, https://www.riksdagen.se/sv/dokument-och-lagar/dokument/svensk-forfattningssamling/aktiebolagslag-2005551_sfs-2005-551 (last accessed Feb. 6, 2025).

In their Jurisdictional Supplement, Plaintiffs allege only the identities and citizenships of two Crisby shareholders who are also directors, rather than the identities and citizenships of all of Crisby's shareholders. *See* Doc. 33 ¶ 12. Plaintiffs do not allege that Crisby's two directors are its only shareholders; rather, they allege that "[t]here are two shareholders of Crisby that also serve as the two Board of Directors members." *See id. But see id.* ¶ 11 (specifying, by contrast, that the identified member of Prime is its "sole member").

To the extent Plaintiffs are arguing that Crisby's citizenship is determined by the citizenship of its managers, that is incorrect. Manager-managed LLCs exist in the United States as well, *see, e.g.*, A.R.S. § 29-3201(B)(4) (the articles of organization for an Arizona LLC must state whether an LLC is manager-managed or member-managed), and the citizenship of a manager-managed LLC for diversity purposes is still determined by the citizenship of the LLC's members, not its managers. *See, e.g., Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004) ("While a manager-managed [LLC] looks and acts somewhat like a corporation," it nevertheless "is not a corporation and cannot be treated as such under section 1332 until Congress says otherwise." (citation omitted)); *AFCO Credit Corp. v. Randall Transp. LLC*, 2023 WL 2810701, at \*1 (M.D. Fla. Apr. 6, 2023) (citizenship of members of an LLC, not the citizenship of managers, is relevant to diversity jurisdiction); *Abraham v. Am. Res. Co., LLC*, 2021 WL 5180230, at \*1 (E.D. Mich. July 28, 2021) (same); *see also Meza v. Lowe's Home Centers, LLC*, 2015 WL 5462053, at \*2 (N.D. Cal. Sept. 16, 2015) (analyzing citizenship of a manager-managed LLC based on citizenship of members).

1    Plaintiffs' allegations fall short of the requirements for diversity jurisdiction. Plaintiffs

2    must either allege the identities and citizenships of Crisby's additional shareholders or, if

3    additional shareholders do not exist, Plaintiffs must allege that fact. Either way, the allegations

4    in Plaintiffs' Complaint—even considering Plaintiffs' improper Jurisdictional Supplement—

5    fail to establish this Court's subject matter jurisdiction.

6    ### 3.    Plaintiffs Failed To Allege 123-Reg's Principal Place Of Business

7        In the Jurisdictional Supplement, Plaintiffs allege that 123-Reg is "a United Kingdom

8    limited liability company." *See* Doc. 33 ¶ 10. It appears that Plaintiffs are referring to a "private

9    limited company," as there is no such corporate form as a "limited liability company" in the

10   United Kingdom. "[A] U.K. private limited company is an analog to an American

11   corporation," and so is treated like a corporation for diversity purposes. *See Brink's Co. v.*

12   *Chubb European Grp. Ltd.*, 2020 U.S. Dist. LEXIS 218242, at *16 & n.1 (E.D. Va. Nov. 20,

13   2020) (collecting "[n]early a dozen" cases reaching the same result); *Certain Underwriters at*

14   *Lloyd's London v. Zurich Am. Ins. Co.*, 2021 U.S. Dist. LEXIS 130040, at *3-4 (C.D. Cal. July

15   8, 2021) (same holding); *Landmarc Capital & Inv. v. Great Lakes Reinsurance (UK) PLC*,

16   2014 U.S. Dist. LEXIS 196340, at *3-4 (D. Ariz. Jan. 29, 2014) (same as to a public limited

17   company incorporated under the laws of the United Kingdom). Accordingly, Plaintiffs were

18   required to allege both 123-Reg's place of incorporation and principal place of business. *Hertz*

19   *Corp. v. Friend*, 559 U.S. 77, 80 (2010) (citing 28 U.S.C. § 1332(c)(1)).

20       While Plaintiffs allege in their Jurisdictional Supplement that 123-Reg is a United

21   Kingdom entity, they do not allege 123-Reg's principal place of business. *See* Doc. 33 ¶ 10.

22   At most, Plaintiffs allege that 123-Reg's "registered address" is located in the United

23   Kingdom. *See id.* A registered address (*e.g.*, the address at which a registered agent can be

24   served) is not equivalent to a principal place of business. *See, e.g.*, *Neerman v. Cates*, 2022

25   WL 17098666, at *1-2 (C.D. Cal. July 1, 2022) (a registered address is insufficient to allege

26   corporate citizenship); *Buethe v. Britt Airlines, Inc.*, 787 F.2d 1194, 1196 (7th Cir. 1986)

27   (distinguishing between registered address and principal place of business); *see also Hertz*

28   *Corp.*, 559 U.S. at 92–97 (principal place of business is "the place where a corporation's

10

1  officers direct, control, and coordinate the corporation's activities" (*e.g.* the company's "nerve
2  center" or headquarters), and cannot be established via addresses simply listed on corporate
3  filings). Therefore, Plaintiffs failed to allege sufficient facts to establish diversity jurisdiction.

4       For all of these reasons, this Court should dismiss Plaintiffs' Complaint for lack of
5  subject matter jurisdiction.

6       **B.    123-Reg Is Not Subject To Personal Jurisdiction In Arizona**

7       123-Reg should be dismissed from this case because it is not subject to personal
8  jurisdiction in Arizona. On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction,
9  "Plaintiff bears the burden of establishing personal jurisdiction, and 'need only make a prima
10 facie showing of jurisdictional facts.'" *LNS Enters. LLC v. Continental Motors Inc.*, 464 F.
11 Supp. 3d 1065, 1071 (D. Ariz. 2020) (first citing *Ziegler v. Indian River Cnty.*, 64 F.3d 470,
12 473 (9th Cir. 1995); and then quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).
13 The Court need only accept "***uncontroverted*** allegations in the complaint … as true." *Lang*
14 *Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1038 (9th Cir. 2022) (quoting *Schwarzenegger v. Fred*
15 *Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)) (emphasis added). When both parties
16 come forward with evidentiary quality materials raising disputed facts, "[c]onflicts between
17 parties over statements contained [therein] must be resolved in the plaintiff's favor." *Id.*
18 (quoting *Schwarzenegger*, 374 F.3d at 800); *accord Am. Tel. & Tel. Co. v. Compagnie*
19 *Bruxelles Lambert*, 94 F.3d 586, 588-89 (9th Cir. 1996). However, the Court "may not assume
20 the truth of allegations in a pleading which are contradicted by affidavit." *Chubchai v. AbbVie,*
21 *Inc.*, 599 F. Supp. 3d 866, 876 (N.D. Cal. 2022) (citation omitted).

22      Plaintiffs failed to allege facts that, if true, could support an exercise of personal
23 jurisdiction over 123-Reg under any cognizable legal theory. *First*, 123-Reg is not subject to
24 general jurisdiction in Arizona because it is a United Kingdom entity with a principal place of
25 business in the United Kingdom. *See, e.g.*, Doc. 23 ¶ 3. *Second*, Plaintiffs' sparse "alter ego"
26 allegations merely allege characteristics that apply to virtually all wholly owned subsidiaries
27 and cannot support jurisdictional veil-piercing. *Third*, 123-Reg is not subject to specific
28 jurisdiction in Arizona because Plaintiffs have not alleged any conduct in or directed at

1    Arizona that has any causal relationship to the claims in this litigation. 123-Reg must be
2    dismissed from this action.

### 1. The Court Lacks General Jurisdiction Over 123-Reg

4    A court has general personal jurisdiction over a defendant only if that defendant's
5    "affiliations with the State in which suit is brought are so constant and pervasive as to render
6    [it] essentially at home in the forum State." *EZScreenPrint LLC v. SmallDog Prints LLC*, 2018
7    WL 3729745, at *1 (D. Ariz. Aug. 6, 2018) (quoting *Daimler AG v. Bauman*, 571 U.S. 117,
8    122 (2014)). "The paradigmatic locations where general jurisdiction is appropriate over a
9    corporation are its place of incorporation and its principal place of business." *Ranza v. Nike,*
10   *Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015) (citing *Daimler AG*, 571 U.S. at 137). Plaintiffs do
11   not allege that 123-Reg's place of incorporation or its principal place of business is in Arizona.
12   *See* Doc. 1 ¶ 10; Doc. 33 ¶ 10; *see also* Sections III(A)(1), (3), *supra*. Rather, 123-Reg's place
13   of incorporation and its principal place of business are in the United Kingdom. Doc. 23 ¶ 3.

14   "Only in an 'exceptional case' will general jurisdiction be available anywhere else."
15   *Ranza*, 793 F.3d at 1069 (quoting *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir.
16   2014)). The burden to demonstrate such an exceptional case is, itself, exceptional. *See*
17   *Schwarzenegger*, 374 F.3d at 801 ("This is an exacting standard, as it should be…."). The
18   Supreme Court has only ever identified one such case, which involved the indefinite, complete
19   relocation of a corporate entity from the Philippines to Ohio due to the Japanese occupation of
20   the Philippines during World War II. *See Daimler AG*, 571 U.S. at 129-30 (citing *Perkins v.*
21   *Benguet Consol. Mining Co.*, 342 U.S. 437, 448 (1952)). Since *Daimler AG*, the Ninth Circuit
22   appears to have identified only one such case, where the Defendant, after residing in the forum
23   state for more than 20 years, claimed to have moved its principal place of business pursuant to
24   a merger, but "Plaintiff gathered and proffered to the district court extensive evidence showing
25   Embarcadero continued to represent that its headquarters were located in California." *Delphix*
26   *Corp. v. Embarcadero Techs., Inc.*, 749 F. App'x 502, 506 (9th Cir. 2018). Indeed, such
27   exceptional cases are so rare that some sister circuits have never identified such a case. *See,*
28   *e.g.*, *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017).

1    This is not a case involving a wartime military occupation or a recently acquired

2    corporate entity that resided in the forum state for decades. Rather, Plaintiffs do not allege that

3    123-Reg engages in any business in Arizona ***at all***. *See* Doc. 1 ¶ 10 (alleging only that distinct

4    entities acted on 123-Reg's behalf in Arizona); Doc. 33 ¶ 10 (same). There is no basis for

5    Plaintiffs to argue that this is an exceptional case in which 123-Reg is "essentially at home" in

6    Arizona, even though neither its place of incorporation nor its principal place of business is

7    located in the forum. *EZScreenPrint LLC*, 2018 WL 3729745, at *1 (quoting *Daimler AG*, 571

8    U.S. at 122). Accordingly, 123-Reg is not subject to general jurisdiction in Arizona.

9              ***2.    123-Reg Is Not Subject To General Jurisdiction In Arizona Under A***

10                   ***Jurisdictional Veil-Piercing Theory***

11    Neither is 123-Reg subject to general jurisdiction in Arizona under a jurisdictional

12    veil-piercing theory. Plaintiffs allege in a conclusory fashion that "123-Reg operates as an alter

13    ego of GoDaddy." Doc. 1 ¶ 10. However, Plaintiffs' supporting allegations for this conclusion

14    would apply to virtually every wholly owned subsidiary and do nothing to support Plaintiffs'

15    attempt to pierce the corporate veil. A "parent-subsidiary relationship is insufficient, on its

16    own, to justify imputing one entity's contacts with a forum state to another for the purpose of

17    establishing personal jurisdiction." *Ranza*, 793 F.3d at 1070. Under the alter ego test, Plaintiffs

18    must show "(1) that there is such unity of interest and ownership that the separate personalities

19    of the two entities no longer exist and (2) that failure to disregard their separate identities

20    would result in fraud or injustice." *Cornelis v. B & J Smith Assocs. LLC*, 2013 WL 6795969,

21    at *4 (D. Ariz. Dec. 20, 2013). To satisfy the "unity of interest and ownership" prong, Plaintiffs

22    must show that GoDaddy Inc. controls 123-Reg "to such a degree as to render the latter the

23    mere instrumentality of the former." *Ranza*, 793 F.3d at 1065. There must be "pervasive

24    control over the subsidiary, such as when a parent corporation dictates every facet of the

25    subsidiary's business." *Id.* (internal quotations omitted). "Total ownership and shared

26    management personnel are alone insufficient to establish the requisite level of control." *Id.*

27    123-Reg is a separate and distinct legal entity from GoDaddy and GoDaddy Inc. *See*

28    Doc. 23 ¶ 10; *see also Scanlon v. Curtis Int'l Ltd.*, 465 F. Supp. 3d 1054, 1063 (E.D. Cal.

1    2020) ("Courts have granted motions to dismiss for lack of personal jurisdiction in favor of

2    defendants based on similar declarations.") (collecting cases). 123-Reg observes and enforces

3    corporate formalities, maintains its own corporate records, bank accounts, payroll, and

4    financial plans and records, files and pays its own taxes, and funds its own operations. *See*

5    Doc. 23 ¶¶ 11–16. 123-Reg's assets and funds are not commingled with those of GoDaddy or

6    GoDaddy Inc., and 123-Reg controls its own day-to-day operations and affairs. *See id.*

7    Plaintiffs failed to allege that 123-Reg is an "alter ego" of GoDaddy or GoDaddy Inc., and

8    they cannot establish that either entity "exert[s] substantially total control" over 123-Reg such

9    that it is "a mere instrumentality" of them. *See Ranza*, 793 F.3d at 1065.

10        To urge a different result, Plaintiffs rely almost exclusively on facts that apply to nearly

11    all wholly owned subsidiaries. For example, Plaintiffs allege that one of 123-Reg's directors

12    "is also a GoDaddy officer." *See* Doc. 1 ¶ 10. However, "it is considered a normal attribute of

13    ownership that officers and directors of the parent serve as officers and directors of the

14    subsidiary." *Scanlon*, 465 F. Supp. 3d at 1064 (citation omitted); *McGeachy v. Pinto Valley*

15    *Mining Corp.*, 2017 WL 3130639, at *4 (D. Ariz. July 24, 2017) ("It is not enough that the

16    parent wholly owns the subsidiary or that both corporations share management personnel" to

17    establish an alter ego relationship.). Similarly, Plaintiffs allege 123-Reg refers to GoDaddy or

18    GoDaddy Inc. in various filings. Doc. 1 ¶ 10 "Separate corporate entities presenting

19    themselves as one online does not rise to the level of unity of interest required to show

20    companies are alter egos." *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D.

21    Cal. 2016). Plaintiffs cannot support the extraordinary remedy of piercing the corporate veil

22    through allegations that apply to all wholly owned subsidiaries.

23        Likewise, Plaintiffs' allegations that GoDaddy or GoDaddy Inc. provides management,

24    support, and/or administrative services for 123-Reg are insufficient to satisfy the unity of

25    interest requirement. *See id.* (entities were not alter egos where parent and subsidiary had

26    overlapping officers and directors, parent provided management and administrative services,

27    and parent's website presented itself as one integrated company); *Unocal Corp.*, 248 F.3d at

28    927 ("A parent … may be directly involved in financing and macro-management of its

14

subsidiaries … without exposing itself to a charge that each subsidiary is merely its alter ego.”); *Whaleco Inc. v. TemuExpress.com*, 2024 WL 1366933, at *5 (D. Ariz. Apr. 1, 2024) (allegations that GoDaddy “owned” a corporate affiliate, responded to complaints directed at the affiliate, and had “an overlap” in operations failed “to give rise to the plausible inference that the separate personalities of GoDaddy and DBP have ceased to exist”).

Plaintiffs also cannot show “fraud or injustice” necessary to satisfy the second alter ego prong. “A fraud or injustice arises if observance of the corporate form would confuse the opposing parties and frustrate their efforts to protect their rights, while allowing the party responsible to evade liability.” *See Glamour Dolls Inc. v. Lisa Frank Inc.*, 2024 WL 4267376, at *16 (D. Ariz. Sept. 23, 2024). Here, Plaintiffs alleged a contractual relationship with **GoDaddy**, and alleged no interaction with 123-Reg. Observing the corporate form would not confuse Plaintiffs or frustrate their alleged contractual rights because, if GoDaddy had breached its obligations (it has not), then Plaintiffs would have a direct remedy against GoDaddy. Plaintiffs’ alter ego theory cannot support general jurisdiction over 123-Reg.

### 3.    *123-Reg Is Not Subject To Specific Jurisdiction In Arizona*

123-Reg is not subject to specific jurisdiction in Arizona. “Arizona’s long-arm … statute is coextensive with federal due process,” and thus the specific jurisdiction inquiry under Arizona law “is identical to that of federal due process.” *Boehm v. Airbus Helicopters Inc.*, 527 F. Supp. 3d 1112, 1117 (D. Ariz. 2020) (citation omitted). The “constitutional touchstone” of a jurisdictional due process analysis is whether the nonresident defendant has purposefully established “certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.” *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 (1984) (cleaned up).

Courts use the following three-part test to assess whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*East v. Cnty. of Riverside*, 2024 WL 1012975, at *2 (D. Ariz. Mar. 8, 2024). Plaintiffs bear the burden of establishing the first two prongs of this test. *See id.*

Courts apply a "purposeful direction" test for tort claims, meaning Plaintiffs must show that 123-Reg "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered at the forum state." *Modulus Fin. Eng'g Inc. v. Modulus Data USA Inc.*, 2020 WL 2512785, at *3 (D. Ariz. May 15, 2020) (quoting *Schwarzenegger*, 374 F.3d at 803). "All three elements of the test must be satisfied." *Beauchamp v. Muise*, 2024 WL 4364058, at *2 (D. Ariz. Oct. 1, 2024).

Plaintiffs cannot satisfy their burden to show specific jurisdiction for several reasons. *First*, Plaintiffs failed to allege any intentional acts by 123-Reg expressly aimed at Arizona. To satisfy this element, Plaintiffs must demonstrate that 123-Reg engaged in conduct "directly targeting the forum" itself, as opposed to merely engaging in a "relationship with a plaintiff or third party" in the forum. *See Lois v. Levin*, 2022 WL 3591850, at *3–4 (C.D. Cal. Aug. 5, 2022) (quoting *Walden v. Fiore*, 571 U.S. 277, 285–86 (2014)). Plaintiffs' allegation that 123-Reg communicated with GoDaddy (*see* Doc. 1 ¶¶ 10, 51) does not show that 123-Reg somehow directly targeted Arizona, merely because GoDaddy is in Arizona. *See Beauchamp*, 2024 WL 4364058, at *3 (no specific jurisdiction over defendant where the forum-related conduct was not "expressly or especially made to Arizona customers"); *Serio v. Fan Fair Inc.*, 2017 WL 8785132, at *4 (N.D. Cal. Feb. 21, 2017) ("conducting business through an internet platform based in California," and using that internet platform to commit an "allegedly tortious action," was not "aimed" at California).

Nor does Plaintiffs' speculative allegation that 123-Reg and GoDaddy may have entered into a contract that is "presumably" governed under Arizona law give rise to specific jurisdiction. *See* Doc. 1 ¶ 10. "[T]he mere existence of a contract with a party in the forum

state does not constitute sufficient minimum contacts for jurisdiction." Plaintiffs' claims do not arise or relate to any purported contract between 123-Reg and GoDaddy because Plaintiffs are not parties to—or suing for a breach of—any such purported contract. Even if a foreign defendant contracts with an Arizona resident, that cannot establish specific jurisdiction over the defendant for claims brought by a plaintiff who is not a party to that agreement. *See Inter123 Corp. v. Ghaith*, 2014 WL 1343508, at *3 (D. Ariz. Apr. 4, 2014) ("Defendant's contacts and agreements with GoDaddy" were "with respect to his business dealings with GoDaddy … not with respect to the contract with Plaintiff at issue in this case."); *McDonald v. Kiloo ApS*, 385 F. Supp. 3d 1022, 1028 (N.D. Cal. 2019) (defendant's contract with a California defendant insufficient for specific jurisdiction in California, because plaintiffs were "not parties to th[at] contract" and were "not suing for any breaches of that contract"); *Phillips v. Hernandez*, 2012 WL 5185848, at *5 (S.D. Cal. Oct. 18, 2012) ("As Plaintiffs are not a party to the contract entered into in San Diego, their cause of action cannot have arisen out of the circumstances surrounding that contract.").

*Second*, Plaintiffs cannot show any harm suffered in Arizona, as required under the "purposeful direction" test. Plaintiffs allege that Crisby is a Swedish limited liability company, and that Prime is a New York limited liability company. *See* Doc. 1 ¶¶ 3–5. Plaintiffs do not contend they suffered harm in Arizona, much less that 123-Reg knew that such harm was likely to occur in Arizona. This case is analogous to *Serio*, in which the plaintiff alleged the defendant operated an internet store through eBay to engage in infringing activity that harmed the plaintiff's business. *See* 2017 WL 8785132, at *4. The Court rejected the plaintiff's assertion that the harm occurred in California, where eBay was headquartered, rather than Maryland, where the plaintiff's business was based. *See id.* ("Any such harm [to Plaintiff's business] did not occur in California. Even though eBay is headquartered in California, a listing on its internet platform is no more located in California than it is in any other location where it can be viewed."). For the same reasons, Plaintiffs cannot allege they suffered harm in Arizona. *See Lois*, 2022 WL 3591850, at *3–4 (no specific jurisdiction where plaintiffs "d[id] not describe how they suffered harm in California," and failed to show how defendant "knew

17

1    such harm was likely to be suffered in California"). Therefore, this Court lacks specific

2    jurisdiction over 123-Reg, and 123-Reg should be dismissed from this action.

3    **C.    Plaintiffs Failed To State A Claim For Relief**

4            To avoid a Rule 12(b)(6) dismissal, Plaintiffs' Complaint must contain sufficient

5    factual matter, accepted as true, to state a facially plausible claim to relief. *See Ashcroft v.*

6    *Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A

7    claim is plausible "when the plaintiff pleads factual content that allows the court to draw the

8    reasonable inference that the defendant is liable for the misconduct alleged." Courts "are not

9    bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S.

10   at 555, or "allegations that are merely conclusory, unwarranted deductions of fact, or

11   unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir.

12   2010); *accord Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action

13   … do not suffice."). Moreover, "[t]he Court need not accept as true allegations that contradict

14   matters properly subject to judicial notice or allegations contradicting the exhibits attached to

15   the complaint." *Stoyanof v. Crocodiles Not Waterlillies, L.L.C.*, 2011 WL 13232088, at *2 (D.

16   Ariz. June 23, 2011) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.

17   2001)). Here, Plaintiffs failed to state a claim for relief on any of their claims.[2] No amendment

18   could cure these deficiencies, and Plaintiffs' claims should be dismissed with prejudice.

19   ***1.    Plaintiffs' Challenge To The Parties' Contracts Fails***

20           As this Court recognized, Plaintiffs' claims "all rise and fall" on Plaintiffs' challenge

21   to the enforceability of the parties' contracts, as the UTOS and DNRA expressly allow

22   GoDaddy to cancel or transfer a domain name registration to correct an error or mistake. *See*

23   Doc. 31 at 70:5–21 ("if the terms of the agreements are enforceable, all of [Plaintiffs'] claims

24   will fail as well."). Specifically, if the UTOS and DNRA are enforceable, Plaintiffs' tort claims

25   _____

26   [2] As a threshold matter, Plaintiffs failed to allege which "Defendant" or "Defendants" committed the alleged acts at issue in Counts I-V, and Plaintiffs only referred to a single unnamed "Defendant" in Counts I, IV, and V. These claims are thus deficient under Fed. R.

27   Civ. P. 8, as Plaintiffs "repeatedly lump[ed] together all of the defendants as a collective whole … without specifically alleging the role that each defendant played in causing [p]laintiff's

28   alleged injury." *Petramala v. Connelly*, 2019 WL 1932108, at *1 (D. Ariz. May 1, 2019).

18

would be barred by, among other things, the economic loss rule, including Counts I-IV and Counts IX-XI. *See* Section III(C)(5), *infra*. Plaintiffs' estoppel claim (Count V) also fails if an enforceable contract governs the same subject matter. *See* Section III(C)(4), *infra*. And Plaintiffs' contract claims (Counts VI-VIII) would then be defeated by the plain terms of the UTOS and DNRA, which expressly allow GoDaddy to cancel or transfer a domain name registration to correct an error or mistake. *See* Section III(C)(2)-(3), *infra*.

Plaintiffs allege facts that conclusively prove contract formation, and Plaintiffs fail to offer any allegation to support a claim that the UTOS and DNRA are procedurally or substantively unconscionable. Moreover, many courts have upheld the enforceability of GoDaddy's UTOS as a matter of law. *See, e.g.*, *Acad. of Motion Picture Arts & Scis.*, 2015 WL 5311085, at *26; *Winestyles, Inc. v. GoDaddy.com, LLC*, 2012 WL 8254047, at *3 (D. Ariz. Aug. 15, 2012); *Leo India Films Ltd. v. GoDaddy.com, LLC*, 2020 WL 836603, at *2 (D. Ariz. Feb, 20, 2020), *rev'd on other grounds*, 840 Fed. App'x. 227 (9th Cir. 2021); *Crabb v. GoDaddy.com, Inc.*, 2010 WL 5890625, at *4 (W.D. Ark. Mar. 29, 2010); *LimoStars, Inc. v. New Jersey Car & Limo, Inc.*, 2011 WL 3471092, at *14 (D. Ariz. Aug. 8, 2011). Accordingly, this Court should dismiss Plaintiffs' claims with prejudice.

### a.   *Plaintiffs' Judicial Admissions Prove Contract Formation*

Plaintiffs repeatedly averred and admitted in *Crisby I* that they agreed to the AMA and DNRA—and the UTOS is incorporated by reference in those agreements. *See Crisby I* at Doc. 3 ¶¶ 3, 5; Doc. 18 ¶¶ 72, 82, 87; Doc. 20 at 11. *See also* Doc. 1-1 at Ex. N § 1, Ex. O § 1; Doc. 1-1, Ex. E at 2, Exs. 4–5. Plaintiffs now seek to retreat from their judicial admissions by omitting from their Complaint that they accepted the UTOS, DNRA, and AMA—even as they continue to allege that this entire action as "arises from Defendants' breach of its various domain name registration and auction agreements."[3] Doc. 1 ¶ 1. Plaintiffs' subterfuge fails,

---

[3] At a minimum, the Court can consider Plaintiffs' past judicial admissions for the purpose of determining "whether leave to amend would be futile." *See Acasio v. San Mateo Cnty.*, 2015 WL 8752982, at *1 (N.D. Cal. Dec. 15, 2015); *Gaspard v. DEA Task Force*, 2016 WL 2586182, at *1 (C.D. Cal. Apr. 4, 2016) ("While the Court cannot consider extrinsic evidence to decide a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court can consider extrinsic evidence to decide whether or not granting further leave to amend would be futile."), *report and recommendation adopted*, 2016 WL 2349093 (C.D. Cal. May 4, 2016).

however, because Plaintiffs still allege facts (and attach exhibits[4]) that show that Plaintiffs accepted the UTOS, DNRA, and AMA as a matter of law.

The UTOS, DNRA, and AMA are clickwrap (not browsewrap) agreements because GoDaddy's customers are required to "manifest assent to the [UTOS] expressly," as opposed to merely "giv[ing] … assent simply by using the website." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76 (9th Cir. 2014). Under Arizona law, a party is bound by its agreement to a contract—even if the party does not read it—so long as the party had the opportunity to read the contract. *See Jones v. Chiado*, 670 P.2d 403, 405 (Ariz. Ct. App. 1983). "[A] website operator may establish an enforceable internet contract on an 'inquiry notice theory,'" provided: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Myers v. Experian Info. Sols. Inc.*, 2024 WL 2278398, at \*4 (D. Ariz. May 20, 2024) (citation omitted).

Plaintiffs' exhibits to their Complaint make clear that "during the checkout process" Plaintiffs affirmatively "agreed to GoDaddy's Universal Terms of Service Agreement, Privacy Policy, and all other agreements applicable to your purchase." Doc. 1-1 at Exs. E, 4–5. Plaintiffs concede that as part of the purchase process for GoDaddy's products or services, on the check-out page: (1) immediately below the "Complete Purchase" button, it states, "By clicking "Complete Purchase", you agree to our Terms & Conditions and Privacy Policy"; (2) the text "Terms & Conditions" is underlined and contains hyperlinks to the applicable contracts for the products or services purchased, including the UTOS; (3) the customer has the ability to click first on the underlined hyperlinks to review the terms of the agreements; and (4) the customer has to click the "Complete Purchase" button, consenting to all the terms of the written agreements identified in the check-out page, in order to complete the purchase. *See* Doc. 1 ¶¶ 94, 105–06; *accord* Doc. 1-1 at Exs. E, 4–5 ("This message confirms that during the checkout process, you agreed to GoDaddy's [UTOS], Privacy Policy, and all other agreements

---

[4] The Court is not "required to accept as true allegations that contradict exhibits attached to the Complaint." *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1    applicable to your purchase," and providing a link to GoDaddy's refund policy "[i]f you wish
2    to cancel your purchase"). This process satisfied both the "reasonably conspicuous notice" and
3    "unambiguous manifestation of assent" factors. *See Myers*, 2024 WL 2278398, at *4.

4    Courts routinely find contract acceptance as a matter of law when examining check-out
5    pages with hyperlinks to applicable agreements that have similar designs and nearly identical
6    language providing conspicuous notice of the terms. *See, e.g.*, *Patrick v. Running Warehouse,*
7    *LLC*, 93 F.4th 468, 474, 477 (9th Cir. 2024) (agreement enforceable where on the "on the final
8    order review page … directly below the button [plaintiff] tapped to complete his purchase"
9    was displayed notice stating "By submitting your order you ... agree to our privacy policy and
10   terms of use," with the phrase "terms of use" containing a hyperlink to the applicable
11   agreement, even though the hyperlink was ***not*** underlined, unlike here); *Williams v. Experian*
12   *Info. Sols. Inc.*, 2024 WL 3876171, at *13-15 (D. Ariz. Aug. 20, 2024) (contract enforceable
13   where, "[d]irectly above the 'Submit Secure Order' button," a notice stated "By clicking
14   'Submit Secure Order': I accept and agree to your Terms of Use Agreement," and "Terms of
15   Use Agreement" hyperlinked to the applicable agreement); *Allen v. Shutterfly, Inc.*, 2020 WL
16   5517172, at *3, *5-7 (N.D. Cal. Sept. 14, 2020) (agreement enforceable where, "above the
17   'Submit Payment' button," a notice stated that "by clicking 'Submit Payment' [the purchaser]
18   agree[s] to the Privacy Statement and Terms of Service," and "Terms of Service" hyperlinked
19   to the applicable agreement"); *see also Ehrmantraut v. Safeway Inc.*, 732 F. Supp. 3d 1030,
20   1036-37 (D. Ariz. 2024) (no "color test" for hyperlinks, and underlined text for hyperlinks was
21   conspicuous). Therefore, even based only on Plaintiffs' Complaint, Plaintiffs accepted the
22   UTOS, DNRA, and AMA as a matter of law.

23          **b.    *Plaintiffs Failed To Allege Procedural Or Substantive***
24                  ***Unconscionability***

25   While Plaintiffs have vaguely referred to hypothetical unconscionability arguments
26   outside of their Complaint, *see* Doc. 2 at 11–12; Doc. 31 at 12:23–25, the Complaint references
27   unconscionability only once in a conclusory manner, without even identifying which terms
28   Plaintiffs contend are unconscionable. *See* Doc. 1 ¶ 108 ("The DNRA contains a number of

1    unbounded unconscionable terms and conditions."). This is particularly noteworthy because

2    the UTOS, DNRA, and AMA are severable; therefore, only unconscionability arguments

3    related to the specific terms that expressly allow GoDaddy to cancel or transfer a domain name

4    registration to correct an error or mistake are relevant to whether those provisions are

5    enforceable. *See* Doc. 24-1 § 28 (UTOS); Doc. 1-1 at Ex. N § 11 (DNRA); Doc. 1-1 at Ex. O

6    § 1 (AMA incorporates UTOS). Plaintiffs allege no facts whatsoever to support the conclusion

7    that the specific terms at issue in the UTOS, DNRA, and AMA are procedurally or

8    substantively unconscionable, which is alone sufficient to reject Plaintiffs' conclusory

9    arguments. *See Leo India Films Ltd. v. GoDaddy.com LLC*, 2023 WL 3740567, at *4 (D. Ariz.

10   May 31, 2023) (granting motion to dismiss a claim of procedural unconscionability where the

11   plaintiff failed to plead "sufficient facts to supports its claim").

12         In any event, on the face of the documents attached to or incorporated by reference into

13   Plaintiffs' Complaint, Plaintiffs' unalleged procedural and substantive unconscionability

14   theories fail as a matter of law. As a threshold matter, Plaintiffs have only alluded to procedural

15   unconscionability in passing, without articulating any basis for that theory. *See* Doc. 2 at 11–

16   12; Doc. 31 at 12:23–25. "Procedural unconscionability addresses the fairness of the

17   bargaining process, including such concerns as unfair surprise, fine print clauses, mistakes or

18   ignorance of important facts or other things that mean bargaining did not proceed as it should."

19   *Arciniega v. Experian Info. Sols., Inc.*, 2023 WL 6803084, at *3 (D. Ariz. Oct. 12, 2023)

20   (internal quotations omitted) (quoting *Gullett v. Kindred Nursing Ctrs. W., L.L.C.*, 390 P.3d

21   378, 385 (Ariz. Ct. App. 2017)). Plaintiffs allege nothing of the sort in the Complaint. So, to

22   the extent they stand on this theory at all, they have failed to state a claim.

23         Plaintiffs' substantive unconscionability claim also fails as a matter of law. *See* Doc. 2

24   at 11–12; Doc. 36 at 12:23–25. "Substantive unconscionability concerns the actual terms of

25   the contract and examines the relative fairness of the obligations assumed." *Barnett v. V.T.*

26   *Motors LLC*, 2021 WL 5759113, at *3 (D. Ariz. Dec. 3, 2021) (citation omitted). "Contract

27   clauses may be substantively unconscionable if they are 'monstrously harsh' or 'shocking to

28   the conscience.'" *Kocharov v. JPMorgan Chase Bank, N.A.*, 2023 WL 7018030, at *8 (D.

Ariz. Oct. 25, 2023) (quoting *Aerial Funding LLC v. Van Sickle*, 2020 WL 6140700, at *3 (Ariz. Ct. App. Oct. 20, 2020)). "The purpose of the unconscionability doctrine is the prevention of oppression and unfair surprise[,] not of disturbance of allocation of risks because of superior bargaining power." *Barnett*, 2021 WL 5759113, at *3 (cleaned up); *see also Sw. Pet Prods., Inc. v. Koch Indus., Inc.*, 107 F. Supp. 2d 1108, 1114 (D. Ariz. 2000) ("It is not the place of the judicial system to rewrite contract terms for sophisticated business entities caught unaware by unfavorable provisions that they failed to read and negotiate.").

The UTOS and DNRA are not "monstrously harsh" for allowing GoDaddy discretion to cancel or transfer a domain registration in order correct mistakes or to avoid potential civil liability. *See Enhanced Athlete Inc. v. Google LLC*, 479 F. Supp. 3d 824, 833 (N.D. Cal. 2020) (contract not unconscionable where it gave defendants sole discretion to determine whether users' videos were harmful and terminate accounts); *Marquez v. Amazon.com, Inc.*, 69 F.4th 1262, 1272–73 (11th Cir. 2023) (contract not unconscionable where it gave Amazon authority to suspend customers' Amazon Prime benefits); *San Mateo Union High Sch. Dist. v. Educ. Testing Servs.*, 2013 WL 4711611, at *8 (N.D. Cal. Aug. 30, 2013) (contract not unconscionable where it gave defendant sole discretion to invalidate test scores). Indeed, Prime has similar provisions in its own contracts with its customers. *See* Doc. 25-1 § 5 (reserving "the right to refuse or cancel any… orders" in the event of "typographical errors" in a transaction, without any time limit). Plaintiffs can hardly complain about terms they utilize in their own agreements with their customers.

As GoDaddy explained to Prime, returning the Domain to the original registrant, Calor, "was the right thing to do" because a technical error prevented Calor from being able to renew the Domains, and "[i]f the roles were reversed and an error" caused Plaintiffs to "miss an opportunity to renew one of your domains, we would take the same actions." Doc. 1-1 at Ex. 15. A contractual right to unwind a domain auction in these circumstances, especially paired with a full refund and additional in-store credit, is not "shocking to the conscience." Plaintiffs' substantive unconscionability claim fails as a matter of law. *See Kocharov*, 2023 WL 7018030, at *7 ("The determination of unconscionability is to be made by the Court as a matter of law.").

### 2.    *Plaintiffs' Contract Claims Fail As A Matter Of Law*

To prevail on a contract claim, Plaintiffs must prove: (1) the existence of a contract between Plaintiffs and the named defendants, (2) a breach of the contract by the named defendants, and (3) resulting damages. *See Gillard v. Good Earth Power AZ LLC*, 2019 WL 1280946, at *4 (D. Ariz. Mar. 19, 2019). "The interpretation of a contract is a question of law for the court to decide, and the court must give effect to a contract provision as written if it is clear and unambiguous." *Vantage Mobility Int'l LLC v. Kersey Mobility LLC*, 2020 WL 411188, at *3 (D. Ariz. Jan. 24, 2020) (citing *Hadley v. Sw. Props., Inc.*, 570 P.2d 190, 193 (Ariz. 1977)). Moreover, when interpreting the language of an unambiguous contract, courts will not "expand it beyond its plain and ordinary meaning or add something to the contract which the parties have not put there." *Alpine 4 Techs. Ltd. v. Martin*, 2022 WL 4548118, at *4 (D. Ariz. Sept. 29, 2022) (quoting *IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 263 P.3d 69, 75 (Ariz. Ct. App. 2011)). Along a similar vein, courts "will not construe one provision in a contract so as to render another provision meaningless." *Chandler Med. Bldg. Partners v. Chandler Dental Grp.*, 855 P.2d 787, 791 (Ariz. Ct. App. 1993).

Plaintiffs' failure to identify any purportedly breached contractual provision is fatal to their claims. *See Lowry v. EMC Mortg. Corp.*, 710 F. App'x 752 (9th Cir. 2018) (affirming dismissal where plaintiffs "failed to identify a contract provision" that was breached); *Silving v. Wells Fargo Bank, NA*, 2012 WL 135989, at *9 (D. Ariz. Jan. 18, 2012) (the "mere identification of the contracts without reference to the provisions violated or the actions of specific Defendants that violated them is insufficient to state a claim for breach of contract"), *aff'd sub nom. Silving v. Am.'s Servicing Co.*, 552 F. App'x 684 (9th Cir. 2014).

Moreover, the parties' contracts expressly permitted the alleged conduct at issue. The Domains were returned to Calor to correct "an unexpected error" that prevented Calor from being able to renew the Domains, and because the Domains should not have expired or been auctioned. *See* Doc. 1-1 at Exs. 11, 15. The UTOS and DNRA expressly allow GoDaddy to "cancel or transfer any domain name registration" for any reason, including, *inter alia*: (a) to "correct mistakes" made by GoDaddy in offering any of its services, (b) to "correct mistakes"

of any domain name registrar, or (c) to avoid any potential civil liability (including potential claims by the original registrant of the Domains). *See* Doc. 24-1 § 15; Doc. 1-1 at Ex. O § 8. Indeed, the parties' contracts expressly disclaim the purported duties that Plaintiffs now seek to impose on GoDaddy. *See* Doc. 1-1 at Ex. N § 2 ("GoDaddy has no control over the quality, safety or legality of the domain names listed."); Doc. 24-1 § 19 (disclaiming all warranties, including with respect to the accuracy, completeness or content of GoDaddy's websites and services). Interpreting the UTOS and DNRA to forbid what they expressly permit would violate nearly every interpretive canon under Arizona law. Accordingly, courts routinely hold—in every jurisdiction—that where "defendants were given the right to do what they did by the express provisions of the contract[,] there can be no breach." *Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1159 (N.D. Cal. 2020); *see Caraccioli v. Facebook, Inc.*, 700 F. App'x 588, 590 (9th Cir. 2017) (affirming dismissal of contract claim where the terms of service "expressly disclaim[ed] Facebook's responsibility" for the alleged conduct). Plaintiffs' contract claims (Counts VI and VII) must be dismissed.

### 3.     *Plaintiffs' Implied Covenant Claim Fails As A Matter Of Law*

Under Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (Count VIII), Plaintiffs must prove that Defendants "either [acted] in a manner that denies the other party the reasonably expected benefits of the contract or [used] its discretion under the terms of the contract for a reason beyond the risks assumed by the party claiming a breach." *See Argyros v. Island Storage & Marine LLC*, 2021 WL 4427061, at *4 (D. Ariz. Sept. 27, 2021) (internal quotations omitted). Any claim based on this implied covenant "cannot directly contradict an express contract term," *Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1155–56 (D. Ariz. 2016) (citation omitted), and "an implied covenant claim is not a tool to create new terms of a contract." *Argyros*, 2021 WL 4427061, at *4.

As set forth above, the UTOS and DNRA expressly authorized the alleged conduct at issue—the alleged retrieval or transfer of a domain to correct a registrar's mistake and/or to avoid potential civil liability. "If contracting parties cannot profitably use their contractual powers without fear that a jury will second-guess them under a vague standard of good faith,

the law will impair the predictability that an orderly commerce requires." *Jones v. GEICO Cas. Co.*, 2021 WL 3602855, at *4 (D. Ariz. Aug. 13, 2021) (citation omitted). Plaintiffs cannot use the implied covenant of good faith and fair dealing to frustrate the express terms of the parties' contracts, or obtain greater rights and seek a financial windfall. *See Regency Midwest Ventures Ltd. P'ship v. Best W. Int'l, Inc.*, 2017 WL 992357, at *4 (D. Ariz. Mar. 15, 2017) (plaintiffs cannot obtain "greater rights than that they bargained for").

### 4.    Plaintiffs' Estoppel Claim Fails As A Matter Of Law

Plaintiffs' "estoppel" claim (Count V) fails because the parties' relationship is governed by the UTOS, DNRA, and AMA. Promissory estoppel is an equitable doctrine that only applies when there is a failure of contract formation. *See Double AA Builders, Ltd. v. Grand State Constr. L.L.C.*, 114 P.3d 835, 843-844 (Ariz. Ct. App. 2005). Arizona law does not permit a party to bring an estoppel claim where there is an express agreement between the parties that covers the subject matter at issue. *See Bowman v. Honeywell Int'l, Inc.*, 438 F. App'x 613, 615 (9th Cir. 2011) ("Arizona law prohibits an action based on the promissory estoppel theory of liability if there is an express, written contract on the same subject matter") (citing *Chanay v. Chittenden*, 563 P.2d 287, 290 (Ariz. Ct. App. 1977)). Plaintiffs cannot use equitable claims to get a second attempt at their contract claims against GoDaddy.[5]

### 5.    Plaintiffs' Tort Claims Fail As A Matter Of Law

Plaintiffs' tort claims fail for numerous reasons. First, the economic loss rule ("ELR") bars these claims. The ELR "limits a party to its contractual remedies for purely economic loss arising from the other party's alleged failure to adequately perform its promises under a contract." *Maricopa Cnty v. Office Depot, Inc.*, 2014 WL 6611562, at *7 (D. Ariz. Nov. 21, 2014) (internal quotations omitted). Courts have broadly applied the ELR to bar tort claims that are duplicative of contract claims or otherwise premised on the parties' contractual relationship. *See, e.g.*, *Cook v. Orkin Exterminating Co.*, 258 P.3d 149, 152 (Ariz. Ct. App. 2011) (ELR barred negligence claims where plaintiffs were seeking "purely economic loss

---

[5] Plaintiffs did not, and cannot, allege that 123-Reg or GoDaddy Inc. made any promise to Plaintiffs, or should have foreseen that Plaintiffs would rely on any such nonexistent promise.

from [defendant's] alleged failure to adequately perform its promises under the Agreement"); *McClure v. State Farm Life Ins. Co.*, 608 F. Supp. 3d 813, 824–25 (D. Ariz. 2022) (ELR barred conversion claim "based upon exactly the same conduct as [plaintiff's] breach of contract claims"); *LaRussa v. NMTC, Inc.*, 2007 WL 9724933, at *5 (D. Ariz. Mar. 30, 2007) (ELR barred tortious interference claims based on "Defendant's breach of the [parties' contract]," and "economic repercussions from that breach of contract"). Plaintiffs' tort claims are based on the same allegations as their contract claims—that is, allegations that GoDaddy removed the Domains from Plaintiffs' accounts to correct an error or mistake. Indeed, Plaintiffs recognize that this entire action is premised on their contract claims, as they alleged that "[t]his action arises from Defendants breach of its various domain name registration and auction agreements…."). Doc. 1 ¶ 1. Because Plaintiffs have not, and cannot, allege non-economic losses, the ELR bars Plaintiffs' duplicative tort claims. *See BMO Harris Bank NA v. Corley*, 2022 WL 4781944, at *11 (D. Ariz. Oct. 3, 2022) (dismissing tortious interference claim that arose from the same conduct giving rise to contract claims).

Second, each of Plaintiffs' tort claims fails as a matter of law for other reasons:

***Trespass to Chattel (Count I):*** "[T]he tort of trespass to a chattel may be committed by intentionally dispossessing another of the chattel or using or intermeddling with a chattel in the possession of another." *Koepnick v. Sears Roebuck & Co.*, 762 P.2d 609, 617–18 (Ariz. Ct. App. 1988). Trespass to chattel has the same elements as conversion, and differs only in the measure of damages. *See Pistor v. Garcia*, 2014 WL 116391, at *7 n.3 (D. Ariz. Jan. 13, 2014). Plaintiffs' claim fails for at least two reasons. *First*, domains cannot be the subject of such a claim under Arizona law. *See, e.g., Hao v. GoDaddy.com, LLC*, 2023 WL 3078660, at *1–2 (D. Ariz. Apr. 25, 2023); *Rolle v. Robel*, 2024 WL 342457, at *5 (D. Ariz. Jan. 30, 2024). *Second*, the UTOS and DNRA permitted the conduct at issue. *See Warfield v. Gardner*, 346 F. Supp. 2d 1033, 1047 (D. Ariz. 2004) ("an act which would otherwise constitute a conversion may be precluded from having that effect by the plaintiff's consent to the act.").

***Gross Negligence, Negligence, and Negligent Misrepresentation (Counts II-IV):*** Plaintiffs cannot prevail on any negligence claim because those claims are based on a mere

1    alleged contractual breach. "Whether the defendant owes the plaintiff a duty of care is a

2    threshold issue; absent some duty, an action for negligence cannot be maintained." *Lorenz v.*

3    *State*, 364 P.3d 475, 477 (Ariz. Ct. App. 2015) (citation omitted). "[D]uty is not presumed,"

4    and "in every negligence case, the plaintiff bears the burden of proving the existence of a

5    duty." *Quiroz v. ALCOA Inc.*, 416 P.3d 824, 827 (Ariz. 2018); *see also Unknown Party v.*

6    *Arizona Bd. of Regents*, 2021 WL 1967392, at *7 (D. Ariz. May 17, 2021) (negligence claim

7    failed where plaintiff had not identified any duty of care that was owed). Importantly, "a breach

8    of contract is not a tort unless the law imposes a duty on the relationship created by the contract

9    which exists ***apart from the contract***." *Zinn v. ADT LLC*, 2018 WL 526899, at *2 (D. Ariz.

10    Jan. 24, 2018) (emphasis added) (dismissing negligence claim).

11        Here, GoDaddy owed Plaintiffs no duty of care other than contractual duties. *See*

12    *Engage BDR v. GoDaddy*, 2021 WL 8820555, at *3 (C.D. Cal. Sept. 23, 2021) (plaintiffs

13    failed to state negligence claim because GoDaddy's alleged duties as registrar "all arise from

14    the registration and renewal contracts underlying Plaintiffs' contractual claims"); *Size, Inc. v.*

15    *Network Sols., Inc.*, 255 F. Supp. 2d 568, 574 (E.D. Va. 2003) (dismissing negligence claim

16    because registrar did not owe "broader legal duties than were covered explicitly in the

17    contract"). Accordingly, Plaintiffs' duplicative negligence claims fail as a matter of law. *See*

18    *Ireland Miller, Inc. v. Shee Atika Holdings Phoenix, LLC*, 2010 WL 2743653, at *3 (D. Ariz.

19    July 12, 2010) (dismissing "claims based in negligence [that] are duplicative of [plaintiff's]

20    breach of contract claim" because claims alleging "Seller breached a duty set forth in the

21    parties' agreement merely is another attempt to plead a breach of contract claim"). Moreover,

22    Plaintiffs cannot show that Defendants engaged in conduct that created "an unreasonable risk

23    of bodily harm to others" necessary to state a claim for gross negligence. *See Walls v. Arizona*

24    *Dep't of Pub. Safety*, 826 P.2d 1217, 1221 (Ariz. Ct. App. 1991).[6]

---

25    [6] Plaintiffs do not, and cannot, allege that GoDaddy Inc. or 123-Reg owed Plaintiffs any duty.

26    "There must be a duty owed and a breach of that duty before one may be charged with the
    negligent violation of that duty." *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 340

27    P.3d 405, 411–12 (Ariz. Ct. App. 2014) (cleaned up). Plaintiffs also do not allege that 123-Reg
    or GoDaddy Inc. provided any "false information in a business transaction" to Plaintiffs, as

28    required to state a claim for negligent misrepresentation. *See id.* at 412 n.7.

28

***Tortious Interference (Counts IX-XI)*:** To prevail on a tortious interference claim, Plaintiffs must prove: (1) "the existence of a valid contractual relationship or business expectancy;" (2) "the interferer's knowledge of the relationship or expectancy;" (3) "intentional interference inducing or causing a breach or termination of the relationship or expectancy;" and (4) "resultant damage to the party whose relationship or expectancy has been disrupted." *Miller*, 104 P.3d at 202. In addition, "[t]he interference must be 'improper' before liability will attach." *Id.* Plaintiffs cannot prevail on these claims because the alleged "improper" act—unwinding the auctions of the Domains to correct an error or mistake, and issuing Plaintiffs refunds (plus additional in-store credit)—were exercises of GoDaddy's express contractual rights. *See, e.g.*, *Smith v. Chrysler Grp. LLC*, 2014 WL 1577515, at *11 (D. Ariz. Apr. 19, 2014) ("Although [defendant] intentionally caused the termination of [plaintiff's] contractual relationship with the [third party], it cannot be said that [defendant] tortuously interfered with the contract when it exercised a power expressly granted to it by the contract"); *Dopadre v. City of Sierra Vista*, 2019 WL 4014099, at *3 (Ariz. Ct. App. Aug. 26, 2019) ("specifically authorized" action was not "improper" and not actionable for intentional interference with business expectancy); *see also Omega Env't, Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1166 (9th Cir. 1997) (alleged interference was not improper where the defendant "exercised its express contractual right"). Moreover, with respect to Count IX, Prime failed to "identify a specific relationship" that any defendant purportedly interfered with, and failed to allege more than the mere "speculative hope of a business expectancy." *See ThermoLife Int'l, LLC v. Gaspari Nutrition, Inc.*, 871 F. Supp. 2d 905, 912 (D. Ariz. 2012); Doc. 1 ¶ 49.[7]

///

///

---

[7] Plaintiffs also did not (and cannot) allege that 123-Reg: (1) had knowledge of Plaintiffs' purported contractual relationship or business expectancy, *see Eder v. N. Ariz. Consol. Fire Dist. #1*, 2020 WL 1307963, at *4 (D. Ariz. Mar. 19, 2020) (conclusory allegations failed to show defendant "knew about a contract" between plaintiff and third party, or that defendant intended third party to breach its contract with plaintiff); and (2) committed any improper act constituting intentional interference with Plaintiffs' unknown business relationships.

**6.      Plaintiffs Cannot Prevail On A Separate "Claim" For Injunction.**

Injunctions "are *remedies*…. They are not causes of action in their own right—and … cannot be pleaded as such." *See Cruz v. Cameron Fin. Grp. Inc.*, 2024 WL 326957, at *4 (D. Ariz. Jan. 29, 2024). Accordingly, Count XII should be dismissed with prejudice.

## IV.      CONCLUSION

Plaintiffs failed to establish subject matter jurisdiction, failed to establish a basis for personal jurisdiction over 123-Reg, and failed to state a claim upon which relief can be granted. No amendment could cure these deficiencies, and Plaintiffs have already had numerous opportunities to amend their pleading. As such, Defendants respectfully request that this Court dismiss the Complaint in its entirety with prejudice.

Dated:  February 6, 2025

**COZEN O'CONNOR**
Jeffrey M. Monhait


By:  *s/Jeffrey M. Monhait*
      Jeffrey M. Monhait

Attorneys for Defendants
GoDaddy Inc., GoDaddy.com, LLC,
and 123-Reg Limited

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1
2
<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies, under penalty of perjury under the laws of the State
3
of Arizona that I electronically filed the foregoing document with the Clerk of the Court using
4
the CM/ECF system which will send notification of such filing to the following:
5
6
7  Jeffrey J. Neuman                              Isacc S. Crum
   JJN SOLUTIONS, LLC                             MESSNER REEVES LLP
8  9445 Brenner Ct.                               7250 N. 16th St., Suite 410
   Vienna, VA 22180                               Phoenix, AZ 85020
9  (202) 549-5079                                 (602) 457-5059
   jeff@jjnsolutions.com                          icrum@messner.com
10
11 Counsel for Plaintiffs                         Counsel for Plaintiffs
12
13        SIGNED AND DATED this 6th day of February, 2025 at Philadelphia, Pennsylvania.
14
15                                    COZEN O'CONNOR
16
                                      By:   <u>*s/ Jeffrey M. Monhait*</u>
17                                          Jeffrey M. Monhait
18
19
20
21
22
23
24
25
26
27
28