1  Jeffrey M. Monhait, AZ Bar No. 038707
   COZEN O'CONNOR
2  1650 Market Street, Suite 2800
   Philadelphia, PA 19103
3  Telephone: (215) 665-2084
   Email:        jmonhait@cozen.com
4

5  Attorneys for Defendants
   GoDaddy Inc., GoDaddy.com, LLC
6  and 123-Reg Limited

7

8                    UNITED STATES DISTRICT COURT

9                        DISTRICT OF ARIZONA

10

11  Prime Loyalty, LLC a New York limited        Case No.: 2:24-cv-03359-JJT
    liability company, Crisby Studio AB, a
12  Swedish limited liability company, and       **DEFENDANTS GODADDY INC.,**
    Niklas Thorin, a Swedish resident,           **GODADDY.COM, LLC, AND**
                                                  **123-REG LIMITED'S REPLY IN**
13                                                **SUPPORT OF MOTION TO**
                   Plaintiffs,                    **DISMISS PLAINTIFFS'**
14                                                **COMPLAINT**
           v.
15
    GoDaddy, Inc. a Delaware corporation,
16  GoDaddy.com, LLC, a Delaware corporation,
    and 123-Reg Limited, a UK company,
17
                   Defendants.
18

19

20

21

22

23

24

25

26

27

28

---

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION .................................................................................... 1

II.  ARGUMENT ......................................................................................... 1

    A.   Plaintiffs Failed to Allege Subject Matter Jurisdiction ....................................... 1

        1.   Ninth Circuit Law Bars Plaintiffs' Use of a Jurisdictional Supplement ................................................... 1

        2.   Plaintiffs Concede They Failed to Allege 123-Reg's Citizenship ........... 3

        3.   Plaintiffs Failed to Allege Sufficient Facts About Crisby's Citizenship ............................................ 3

    B.   Plaintiffs Failed to Allege Personal Jurisdiction as to 123-Reg ......................... 5

        1.   Plaintiffs Do Not Allege that 123-Reg Is an Alter Ego of GoDaddy Inc. ................................................... 5

        2.   123-Reg Is Not Subject to Specific Jurisdiction in Arizona .................. 7

    C.   Plaintiffs Failed to State a Claim as a Matter Of Law ...................................... 8

        1.   Plaintiffs Abandoned Their Contract Formation Challenge .................. 8

        2.   Plaintiffs Failed to Plead Procedural Unconscionability ........................ 9

        3.   Plaintiffs Failed to Plead Substantive Unconscionability ..................... 11

        4.   Plaintiffs' Contract Claims Fail As A Matter Of Law .......................... 16

        5.   Plaintiffs' Implied Covenant Claim Fails As A Matter Of Law ........... 17

        6.   Plaintiffs' Estoppel Claim Fails As A Matter Of Law ......................... 18

        7.   Plaintiffs' Tort Claims Fail As A Matter Of Law ................................ 19

III. CONCLUSION ..................................................................................... 20

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*1800 Ocotillo, LLC v. WLB Grp., Inc.*,
   196 P.3d 222 (Ariz. 2008) ................................................................................ 14

*Allen D. Shadron, Inc. v. Cole*,
   416 P.2d 555 (Ariz. 1966) ........................................................................... 13, 17

*AMA Multimedia, LLC v. Wanat*,
   970 F.3d 1201 (9th Cir. 2020) .......................................................................... 6

*Anderson v. Apple Inc.*,
   500 F. Supp. 3d 993 (N.D. Cal. 2020) ............................................................ 10

*Angus Med. Co. v. Digital Equip. Corp.*,
   840 P.2d 1024 (Ariz. Ct. App. 1992) .............................................................. 14

*Arciniega v. Experian Info. Sols., Inc.*,
   2023 WL 6803084 (D. Ariz. Oct. 12, 2023) ..................................................... 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................... 17

*Barnett v. V.T. Motors LLC*,
   2021 U.S. Dist. LEXIS 232213 (D. Ariz. Dec. 3, 2021).................................. 11

*Battle v. Nissan Motor Acceptance Corp.*,
   2007 WL 1095681 (E.D. Wis. Mar. 9, 2006).................................................. 10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................................... 17

*Bermudez v. DHI Mortg. Co. Ltd.*,
   2018 WL 2008998 (D. Ariz. Apr. 30, 2018) ................................................... 12

*Bike Fashion Corp. v. Kramer*,
   46 P.3d 431 (Ariz. Ct. App. 2002) .................................................................. 18

*Broemmer v. Abortion Servs. of Phoenix, Ltd.*,
   840 P.2d 1013 (Ariz. 1992) ............................................................................. 15

*Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*,
   136 F.3d 1360 (9th Cir. 1998).......................................................................... 2

*Cook v. Orkin Exterminating Co.*,
  258 P.3d 149 (Ariz. Ct. App. 2011) ................................................................. 19

*Corcoran v. CVS Health Corp.*,
  169 F. Supp. 3d 970 (N.D. Cal. 2016) ................................................................. 6

*Cornelis v. B & J Smith Assocs. LLC*,
  2013 WL 6795969 (D. Ariz. Dec. 20, 2013) .................................................. 5, 6

*Coulter v. Grant Thornton, LLP*,
  388 P.3d 834 (Ariz. Ct. App. 2017) ................................................................. 18

*Crisby Studio AB v. GoDaddy Inc.*,
  2024 WL 4785815 (D. Ariz. Nov. 14, 2024) ...................................................... 2

*Crown Eng'g Servs., LLC v. Sundt Constr., Inc.*,
  2023 WL 2821542 (Ariz. Ct. App. Apr. 7, 2023) ...................................... 16, 18

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ............................................................................................ 8

*Doe v. Unocal Corp.*,
  248 F.3d 915 (9th Cir. 2001) .............................................................................. 6

*Dominguez v. Wallick & Volk Inc.*,
  2022 WL 22771517 (D. Ariz. Nov. 10, 2022) .................................................. 19

*Duenas v. Life Care Ctrs. of Am., Inc.*,
  336 P.3d 763 (Ariz. Ct. App. 2014) ................................................................. 15

*Flast v. Cohen*,
  392 U.S. 83 (1968) ............................................................................................ 12

*Flores v. ADT Sec. Servs., Inc.*,
  2011 WL 1211769 (D. Ariz. Jan. 31, 2011) ..................................................... 14

*Gagic v. Cnty. of Maricopa*,
  2021 WL 1264006 (D. Ariz. Apr. 6, 2021), *aff'd*, 2021 WL 6102183 (9th Cir.
  Dec. 22, 2021) ..................................................................................................... 9

*Glamour Dolls Inc. v. Lisa Frank Inc.*,
  2024 WL 4267376 (D. Ariz. Sept. 23, 2024) ..................................................... 7

*Gravatt v. Gen. Star Indem. Co.*,
  1998 WL 842351 (S.D.N.Y. Dec. 2, 1998) ......................................................... 4

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

*Greenwich Inv. Mgmt. v. Aegis Cap. Corp.*,
   2024 U.S. Dist. LEXIS 46950 (D. Ariz. Mar. 18, 2024) ...................................... 2

*Grupo Dataflux v. Atlas Global Group, L.P.*,
   541 U.S. 567 (2004) .......................................................................................... 2

*Gullett v. Kindred Nursing Ctrs. W., L.L.C.*,
   390 P.3d 378 (Ariz. Ct. App. 2017) ................................................................. 10

*Hao v. GoDaddy.com, LLC*,
   2023 WL 3078660 (D. Ariz. Apr. 25, 2023) ..................................................... 20

*Higginbottom v. State*,
   51 P.3d 972 (Ariz. Ct. App. 2002) ................................................................... 18

*In re Sky Harbor Hotel Props., LLC*,
   443 P.3d 21 (Ariz. 2019) .................................................................................... 7

*Jones v. Chiado*,
   670 P.2d 403 (Ariz. Ct. App. 1983) ................................................................... 9

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) .............................................................................. 9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ............................................................................................ 5

*Kologik Capital, LLC v. In Force Tech., LLC*,
   2020 WL 10222425 (D. Mass. July 31, 2020) .................................................... 4

*Lang Van, Inc. v. VNG Corp.*,
   40 F.4th 1034 (9th Cir. 2022) .............................................................................. 6

*Leo India Films Ltd. v. GoDaddy.com, LLC*,
   2020 WL 836603 (D. Ariz. Feb, 20, 2020), *rev'd on other grounds*, 840 Fed.
   App'x. 227 (9th Cir. 2021) ................................................................................ 14

*Leo India Films Ltd. v. GoDaddy.com LLC*,
   2022 WL 836812 (D. Ariz. Mar. 21, 2022) ...................................................... 17

*Leo India Films Ltd. v. GoDaddy.com LLC*,
   2023 WL 3740567 (D. Ariz. May 31, 2023)................................................ 10, 11, 15, 17

*Louis v. Levin*,
   2022 WL 3591850 (C.D. Cal. Aug. 5, 2022) ...................................................... 7

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

*Marciniak v. Veritas Techs., LLC*,
   2021 WL 162750 (D. Ariz. Jan. 19, 2021)........................................................... 12

*Marciniak v. Veritas Techs. LLC*,
   2023 WL 417634 (D. Ariz. Jan. 26, 2023)........................................................... 12

*Marquez v. Amazon.com, Inc.*,
   69 F.4th 1262 (11th Cir. 2023)............................................................................. 12

*Maxwell v. Fidelity Fin. Servs. Inc.*,
   907 P.2d 51 (Ariz. 1995).............................................................................. 10, 15

*McAlister v. Loeb & Loeb*,
   2024 WL 372214 (Ariz. Ct. App. Feb. 1, 2024), *review granted* (Nov. 6, 2024) ...... 19, 20

*McGeachy v. Pinto Valley Mining Corp.*,
   2017 WL 3130639 (D. Ariz. July 24, 2017) .......................................................... 5

*Millennium Auto Sales LLC v. Pac. Specialty Ins. Co.*,
   2022 WL 1569079 (D. Ariz. May 18, 2022)......................................................... 18

*Mousa v. Saba*,
   218 P.3d 1038 (Ariz. Ct. App. 2009) ................................................................... 11

*Mumid v. Abraham Lincoln High Sch.*,
   618 F.3d 789 (8th Cir. 2010) ................................................................................. 4

*Myers v. Experian Info. Sols. Inc.*,
   2024 WL 2278398 (D. Ariz. May 20, 2024).......................................................... 9

*NewGen, LLC v. Safe Cig, LLC*,
   840 F.3d 606 (9th Cir. 2016) ................................................................................. 1

*Patrick v. Running Warehouse, LLC*,
   93 F.4th 468 (9th Cir. 2024) ............................................................................... 12

*Ranza v. Nike, Inc.*,
   793 F.3d 1059 (9th Cir. 2015) ............................................................................... 5

*Red Equip. Pte Ltd. v. BSE Tech, LLC*,
   2014 WL 2557129 (D. Ariz. June 6, 2014).......................................................... 19

*Rhodes v. County of Darlington*,
   833 F. Supp. 1163 (D.S.C. 1992) .......................................................................... 4

*Rizzio v. Surpass Senior Living*,
   492 P.3d 1031 (Ariz. 2021) ................................................................................. 13

*Russ v. United Servs. Auto. Ass'n*,
  2017 WL 1953458 (D. Ariz. May 11, 2017) ........................................ 15

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) .......................................................... 1

*Savage v. Glendale Union High Sch.*,
  343 F.3d 1036 (9th Cir. 2003) .......................................................... 1

*Scanlon v. Curtis Int'l Ltd.*,
  465 F. Supp. 3d 1054 (E.D. Cal. 2020) ............................................ 5

*Serio v. Fan Fair Inc.*,
  2017 WL 8785132 (N.D. Cal. Feb. 21, 2017) .................................... 8

*Sitevoice, LLC v. Gyrus Logic, Inc.*,
  2014 WL 4722329 (D. Ariz. Sept. 23, 2014) .................................... 19

*Sports Imaging of Ariz. L.L.C. v. 1993 CKC Trust*,
  2008 WL 4448063 (Ariz. App. 2008) .............................................. 19

*Sw. Pet Prods., Inc. v. Koch Indus., Inc.*,
  107 F. Supp. 2d 1108 (D. Ariz. 2000) ...................................... 10, 15

*Tietsworth v. Sears*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) .......................................... 10

*United States v. L.A. Tucker Truck Lines, Inc.*,
  344 U.S. 33 (1952) ............................................................................ 2

*United States v. Nasri*,
  119 F.4th 1172 (9th Cir. 2024) ...................................................... 12

*Valdez v. Delgado*,
  524 P.3d 1151 (Ariz. Ct. App. 2019) .............................................. 10

*Walden v. Fiore*,
  571 U.S. 277 (2014) .......................................................................... 7

*Whaleco Inc. v. TemuExpress.com*,
  2024 WL 1366933 (D. Ariz. Apr. 1, 2024) ...................................... 6

*Whitaker v. Tesla Motors, Inc.*,
  985 F.3d 1173 (9th Cir. 2021) ........................................................ 17

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) .......................................................... 2

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989) ............................................................................................ 2

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) .................................................................... 7, 8

*Yu v. Fydeski*,
    2023 WL 5720246 (D. Ariz. June 8, 2023) ................................................. 2

**Statutes**

A.R.S. § 47-2312 ............................................................................................... 20

**Other Authorities**

Fed. R. Civ. P. 15(d) .................................................................................... 2, 3

*That vs. Which*, PURDUE ONLINE WRITING LAB,
    https://owl.purdue.edu/owl/general_writing/grammar/that_vs_which.html (last
    accessed Mar. 26, 2025) ............................................................................... 4

MARGARET SHERTZER, THE ELEMENTS OF GRAMMAR (1986) ................................. 4

WILLIAM STRUNK JR. & E.B. WHITE, THE ELEMENTS OF STYLE (4th ed. 1999) ...................... 4

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

I.    **INTRODUCTION**

Plaintiffs'[1] Opposition to Defendants' Motion to Dismiss (the "Motion") is based on theories and allegations found nowhere in Plaintiffs' Complaint and only confirms that dismissal is warranted. *First*, Plaintiffs failed to correct the deficiencies in their jurisdictional allegations. *Second*, Plaintiffs offered no basis for this Court to exercise personal jurisdiction over 123-Reg. *Third*, Plaintiffs failed to offer any allegations or authority to save their deficient claims, all of which fail because the UTOS and DNRA expressly allowed GoDaddy's alleged actions. Plaintiffs do not, and cannot, dispute that they agreed to the UTOS, DNRA, and AMA, and Plaintiffs' challenges to the enforceability of those contracts are: (a) not based on allegations in the Complaint (and thus can be dismissed out of hand), and (b) entirely deficient under Arizona law. Beyond that issue, Plaintiffs failed to allege facts sufficient to state any claim upon which relief can be granted. Plaintiffs have had many opportunities to provide a sufficient pleading, but they failed to do so, and they did not request leave to amend. Therefore, Plaintiffs' Complaint should be dismissed with prejudice.

II.    **ARGUMENT**

A.    **Plaintiffs Failed to Allege Subject Matter Jurisdiction**

1.    ***Ninth Circuit Law Bars Plaintiffs' Use of a Jurisdictional Supplement***

Without Plaintiffs' procedurally improper jurisdictional supplement, Plaintiff failed to allege subject matter jurisdiction for at least two reasons, including a failure to allege: (1) the country of citizenship and domicile of Prime's sole member and (2) 123-Reg's country of incorporation. *See* Doc. 41 at 17-19. Plaintiffs do not contest this. Instead, they insist that their jurisdictional supplement was procedurally proper. *See* Doc. 41 at 13-14.

Plaintiffs are wrong, as a facial challenge to subject matter jurisdiction tests the "sufficiency of the pleadings." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016); *accord Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("[A] facial attack" concerns "the allegations contained in a complaint."); *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (a facial challenge "confin[es] the inquiry to

---

[1] All capitalized terms are as defined in Defendants' Motion, unless otherwise specified.

**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1  allegations in the complaint"); *see also Greenwich Inv. Mgmt. v. Aegis Cap. Corp.*, 2024 U.S.

2  Dist. LEXIS 46950, at *7 (D. Ariz. Mar. 18, 2024) ("Courts may look beyond the complaint

3  only when a defendant brings a factual attack against jurisdiction," not a facial attack. (citing

4  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000))).

5          Plaintiffs ignore this binding authority, and instead rely on two unpublished cases in

6  which the Court either required the filing of a jurisdictional supplement or mentioned the

7  possibility of one in passing dicta. *See Crisby Studio AB v. GoDaddy Inc.*, 2024 WL 4785815,

8  at *1 (D. Ariz. Nov. 14, 2024) ("*Crisby I*") (dicta); *Yu v. Fydeski*, 2023 WL 5720246, at *2

9  (D. Ariz. June 8, 2023). These cases directly conflict with Ninth Circuit authority on facial

10 challenges without acknowledging or analyzing this issue. The Supreme Court and the Ninth

11 Circuit have long cautioned against treating a "prior exercise of jurisdiction" as precedential

12 or even persuasive when the specific jurisdictional question at issue was "passed *sub silentio*."

13 *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952); *accord Will v. Mich.*

14 *Dep't of State Police*, 491 U.S. 58, 63 n.4 (1989) ("[T]his Court has never considered itself

15 bound [by prior *sub silentio* holdings] when a subsequent case finally brings the jurisdictional

16 issue before us." (second alteration in original) (citation omitted)); *see also Burbank-Glendale-*

17 *Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1363 (9th Cir. 1998). Two district

18 court cases that assumed, without analysis, that a jurisdictional supplement could be used to

19 invoke this Court's jurisdiction cannot trump binding precedent that says otherwise.

20         Plaintiffs argue—without authority—that Fed. R. Civ. P. 15(d) allowed the filing of

21 their jurisdictional supplement as a supplemental pleading. Doc. 41 at 14. This is incorrect for

22 two reasons. *First*, Rule 15(d) requires a motion and the Court's leave to file any supplemental

23 pleading. Plaintiffs made no such motion, and the Court did not provide leave. Fed. R. Civ. P.

24 15(d). *Second*, Rule 15(d) applies only to a supplemental pleading "setting out any transaction,

25 occurrence, or event that happened after the date of the pleading to be supplemented." *Id.* This

26 cannot be applicable because subject matter jurisdiction is assessed at the time of filing. *See*

27 *Crisby I*, 2024 WL 4785815, at *2 (collecting cases); *see also Grupo Dataflux v. Atlas Global*

28

*Group, L.P.*, 541 U.S. 567, 570-71 (2004) ("This time-of-filing rule is hornbook law (quite literally) taught to first-year law students."). Therefore, Rule 15(d) is inapplicable.

Plaintiffs' resistance to filing an amended pleading is difficult to understand. Plaintiffs initially stated that the "whole point of filing the 'supplement' … was to not extend the time for [Defendants] to file [their] response," Doc. 37-1 at 1, but any such extension would have been far shorter than successive rounds of briefing on motions to dismiss, which is what would occur if the Court dismisses Plaintiffs' Complaint for lack of jurisdiction without reaching the merits. And while Plaintiffs have now changed their story to a desire to "avoid unnecessary costs and inefficiencies … [from] redrafting the entire Complaint to remove now-irrelevant references to a temporary restraining order, preliminary injunction, and other resolved matters," such references could either have remained unaltered or been accompanied by a single footnote that the Court had already denied the requested relief. *See* Doc. 44 at 14-15. Regardless, "efficiency and avoid[ing] waste" are not reasons for this Court to exercise jurisdiction that has not been properly invoked. *See id.* at 14. At a minimum, Plaintiffs must amend their Complaint to allege the facts in their Jurisdictional Supplement.

### 2. *Plaintiffs Concede They Failed to Allege 123-Reg's Citizenship*

Plaintiffs failed to allege 123-Reg's principal place of business in their Complaint or Jurisdictional Supplement. Doc. 41 at 21-22. U.K. private limited companies are treated as corporations for diversity purposes, so 123-Reg's citizenship cannot be determined without this fact. Plaintiffs failed to address this issue, *see generally* Doc. 44, and thus conceded they failed to properly allege subject matter jurisdiction.

### 3. *Plaintiffs Failed to Allege Sufficient Facts About Crisby's Citizenship*

Crisby is a Swedish Aktiebolag ("AB"). Numerous courts have treated ABs as LLCs for diversity purposes, and Plaintiffs failed to cite a single contrary case. *See* Doc. 41 at 19 (collecting cases). Instead, Plaintiffs argued that an AB should be treated like a corporation for diversity purposes because it is not managed by its member-equivalents. *See* Doc. 44 at 12. However, the same is true of manager-managed LLCs in the United States, which are still treated as LLCs for diversity purposes. *See* Doc. 41 at 20 (collecting cases). This Court should

follow the decisions Defendants cited given the absence of any contrary authority or other reason to treat ABs differently than manager-managed LLCs for diversity purposes.

Plaintiffs did not offer sufficient allegations about their member-equivalents. Even considering the improper Jurisdictional Supplement, Plaintiffs only alleged that "[t]here are two shareholders of Crisby that also serve as the two Board of Directors members." *See* Doc. 33, ¶ 12. Plaintiffs' use of a restrictive clause can only be read to mean that two of Crisby's shareholders are on its Board of Directors, not that they are Crisby's only shareholders. A restrictive clause (signaled by the word "that" with no comma) "means that the information in the clause is necessary to understand the preceding noun." *That vs. Which*, PURDUE ONLINE WRITING LAB, https://owl.purdue.edu/owl/general_writing/grammar/that_vs_which.html (last accessed Mar. 26, 2025); *accord* MARGARET SHERTZER, THE ELEMENTS OF GRAMMAR 7 (1986). Specifically, a "restrictive clause identifies a subset of the object described and directs the meaning of the sentence to that subset." *Rhodes v. County of Darlington*, 833 F. Supp. 1163, 1190 n.18 (D.S.C. 1992); *accord* WILLIAM STRUNK JR. & E.B. WHITE, THE ELEMENTS OF STYLE 3-4 (4th ed. 1999) (restrictive clause "serve[s] to tell which [of a group] are meant"). If Plaintiffs intended to allege that there were exactly two shareholders of Crisby, they needed to use a nonrestrictive clause. *See* PURDUE ONLINE WRITING LAB, *supra* (nonrestrictive clauses, signaled by a comma followed by the word "which," mean "the information in the clause isn't necessary to understand the noun in the sentence").

Plaintiffs characterize this as a mere grammar issue, but Defendants (and this Court) are entitled to assume that Plaintiffs mean what they say based on the rules of the English language. Courts regularly rely on the distinction between restrictive and nonrestrictive clauses in interpreting legal writing. *See, e.g.*, *Mumid v. Abraham Lincoln High Sch.*, 618 F.3d 789, 798-99 (8th Cir. 2010) (interpreting a statute); *Gravatt v. Gen. Star Indem. Co.*, 1998 WL 842351, at *4 & n.5 (S.D.N.Y. Dec. 2, 1998) (same); *Kologik Capital, LLC v. In Force Tech., LLC*, 2020 WL 10222425, at *7 (D. Mass. July 31, 2020) (interpreting a patent). If the actual meaning of Plaintiffs' allegations differs from the intended meaning, then Plaintiffs should amend to correct the mistake, particularly given that the "party asserting jurisdiction" bears

the burden of establishing it.[2] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Plaintiffs are entitled to no inferences on a Rule 12(b)(1) motion.

For all of these reasons, Plaintiffs failed to allege subject matter jurisdiction.

### B.    Plaintiffs Failed to Allege Personal Jurisdiction as to 123-Reg

#### 1.    *Plaintiffs Do Not Allege that 123-Reg Is an Alter Ego of GoDaddy Inc.*

Plaintiffs claim that 123-Reg is an alter ego of GoDaddy Inc. based exclusively on facts that apply to all subsidiaries. A "parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015). To establish personal jurisdiction, Plaintiffs had to make a prima facie case "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Cornelis v. B & J Smith Assocs. LLC*, 2013 WL 6795969, at *4 (D. Ariz. Dec. 20, 2013).

To allege the degree of control required to establish the unity of interest factor, Plaintiffs had to establish a prima facie case that GoDaddy Inc. controlled 123-Reg "to such a degree as to render the latter the mere instrumentality of the former," such as by "dictat[ing] every facet of the subsidiary's business." *Ranza*, 793 F.3d at 1073. Even "[t]otal ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Id.*

Plaintiffs ignore this legal standard because they cannot meet it. Plaintiffs allege shared offices, shared management, and some coordination between related entities, but courts routinely reject such allegations as insufficient to establish an alter ego relationship. "[I]t is considered a normal attribute of ownership that officers and directors of the parent serve as officers and directors of the subsidiary." *Scanlon v. Curtis Int'l Ltd.*, 465 F. Supp. 3d 1054, 1064 (E.D. Cal. 2020) (citation omitted); *accord McGeachy v. Pinto Valley Mining Corp.*, 2017 WL 3130639, at *4 (D. Ariz. July 24, 2017) (such allegations are "not enough" to establish an alter ego relationship). Indeed, a parent's "macro-management" of the subsidiary

---

[2] Plaintiffs attempted to supplement their improper Jurisdictional Supplement by declaration, *see* Doc. 44 at 13; Doc. 44-1, ¶ 5, but again, this is improper on a facial challenge to subject matter jurisdiction. *See* Doc. 41 at 17-19; Section II(A)(1), *supra*.

is insufficient to establish an alter ego relationship. *Doe v. Unocal Corp.*, 248 F.3d 915, 927 (9th Cir. 2001); *accord Whaleco Inc. v. TemuExpress.com*, 2024 WL 1366933, at *5 (D. Ariz. Apr. 1, 2024). Moreover, related entities may "present[] themselves as one online" without giving "rise to the level of unity of interest required to show companies are alter egos." *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 984 (N.D. Cal. 2016).

123-Reg observes corporate formalities; maintains its own corporate records, bank accounts, payroll and financial plans and records; files and pays its own taxes; funds its own operations; maintains its own corporate and accounting books and records; controls its own day-to-day operations and affairs; does not maintain identical directors or officers with GoDaddy Inc. (despite some overlap); and is not even directly owned by GoDaddy Inc., but only indirectly owned through nine intermediate entities. *See* Doc. 23 ¶¶ 10-16. Plaintiffs do not and cannot contest any of these facts, much less with evidentiary-quality affidavits, so these facts must be accepted as true in deciding this motion because "disputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction."[3] *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020) (citation omitted). Given these undisputed facts, Plaintiffs failed to allege a prima facie case that GoDaddy Inc. dictates every facet of 123-Reg's business, as necessary to subject it to general jurisdiction in Arizona.

Plaintiffs also ignore the second ***required*** factor to support an alter ego theory of jurisdiction. Plaintiffs have not alleged any facts indicating that a "failure to disregard" the separate identities of GoDaddy Inc. and 123-Reg "would result in fraud or injustice." *Cornelis*, 2013 WL 6795969, at *4. "A fraud or injustice arises if observance of the corporate form

---

[3] Plaintiffs also (1) made claims that were not alleged in the Complaint or supported by evidence, *see, e.g.*, Doc. 44 at 17 (claiming, without citation, that "GoDaddy exclusively auctions 123 Reg's expired domain names"); and (2) cited to plainly inadmissible materials that obviously do not support the claims made. *See, e.g.*, *id.* (claiming "GoDaddy" directs all of 123-Reg's communications and employment decisions based on hearsay Internet posts that (i) indicated "GoDaddy" responded to a single press inquiry directed to it regarding 123-Reg, and (ii) discussed certain employment decisions at multiple brands, without any indication that "GoDaddy" directed any particular employment decisions). Plaintiffs cannot rebut an evidentiary-quality declaration with hearsay articles that do not even support the propositions stated. *Lang Van, Inc. v. VNG Corp.*, 40 F.4th 1034, 1038 (9th Cir. 2022) (citation omitted) (only conflicts in evidentiary-quality materials are resolved in Plaintiffs' favor).

would confuse the opposing parties and frustrate their efforts to protect their rights, while allowing the party responsible to evade liability." *Glamour Dolls Inc. v. Lisa Frank Inc.*, 2024 WL 4267376, at *16 (D. Ariz. Sept. 23, 2024). Plaintiffs allege a contractual relationship with GoDaddy and do not allege any interaction whatsoever with 123-Reg. Therefore, Plaintiffs' expectations could not be frustrated by being unable to sue 123-Reg in Arizona.

### 2.    *123-Reg Is Not Subject to Specific Jurisdiction in Arizona*

In a vain attempt to allege specific jurisdiction, Plaintiffs claim GoDaddy acted as an agent of 123-Reg in Arizona with regards to the actions that gave rise to Plaintiffs' claims. Doc. 44 at 19-20. This theory contradicts Plaintiffs' alter ego theory, in which Plaintiffs claim (without support) that GoDaddy controlled all decisions by 123-Reg to such an extent that they ceased to have separate existences. However, for specific jurisdiction, Plaintiffs reverse course to argue that GoDaddy instead acted as an agent for 123-Reg—a relationship that would require 123-Reg to control GoDaddy. *In re Sky Harbor Hotel Props., LLC*, 443 P.3d 21, 23 (Ariz. 2019) (agency relationship requires that a "manifestation of consent by one person to another that the other shall act on his behalf ***and subject to his control***, and consent by the other so to act" (emphasis added)); *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024-25 (9th Cir. 2017) (plaintiffs must allege that the principal retained "the right to substantially control [the agent's] activities" (citations omitted)). Plaintiffs cannot have it both ways. They allege no facts suggesting that 123-Reg retained any "right to substantially control" any particular Arizona contacts that GoDaddy may have had in connection with the Parties' dispute. *Williams*, 851 F.3d at 1024-25. Therefore, Plaintiffs' agency theory fails.

Separately, Plaintiffs' agency theory fails because it assumes that any contact with GoDaddy is a contact directed at Arizona. Not so. There is a distinction between conduct "directly targeting the forum" and merely engaging in a "relationship with a plaintiff or third party" in the forum. *Louis v. Levin*, 2022 WL 3591850, at *3-4 (C.D. Cal. Aug. 5, 2022) (quoting *Walden v. Fiore*, 571 U.S. 277, 285-86 (2014)). Plaintiffs admit, as they must, that GoDaddy's auction services are on the Internet, not in Arizona, but then later try to equate this to a contact with Arizona. *Compare* Doc. 1 ¶ 27 (admitting the auction is conducted on the

Internet), *with id.* at ¶¶ 8, 10 (equating this with Arizona in conclusory fashion based on GoDaddy's location). "[C]onducting business through an internet platform based in [Arizona]" is not conduct "aimed" at Arizona, merely because the provider happens to be headquartered there. *Serio v. Fan Fair Inc.*, 2017 WL 8785132, at *4 (N.D. Cal. Feb. 21, 2017). "Even though [GoDaddy] is headquartered in [Arizona], a listing on its internet platform is no more located in [Arizona] than it is in any other location where it can be viewed." *Id.* Defendants cited this authority in their Motion, and Plaintiffs had no response.

Plaintiffs appear to rely upon a mistaken assumption that, if GoDaddy is subject to personal jurisdiction in Arizona, and GoDaddy acted as 123-Reg's agent, then 123-Reg is also subject to personal jurisdiction in Arizona. But GoDaddy is not subject to specific jurisdiction in Arizona for Plaintiffs' claims; it is subject to **general** jurisdiction in Arizona based on its Arizona headquarters. The Supreme Court has held that general jurisdiction cannot be imputed from agent to principal. *Daimler AG v. Bauman*, 571 U.S. 117, 134-36 (2014); *accord Williams*, 851 F.3d at 1023 (*Daimler* "voided [the Ninth Circuit's previous] agency approach for imputing contacts for the purpose of general jurisdiction"). Therefore, GoDaddy's Arizona headquarters is irrelevant to whether 123-Reg is subject to jurisdiction in Arizona—even if Plaintiffs had adequately alleged an agency relationship, which they have not.

For all of these reasons, 123-Reg is not subject to personal jurisdiction in Arizona. All claims against 123-Reg should be dismissed without prejudice.

### C.    Plaintiffs Failed to State a Claim as a Matter Of Law

#### 1.    *Plaintiffs Abandoned Their Contract Formation Challenge*

As this Court previously acknowledged, Plaintiffs' claims "all rise and fall" on Plaintiffs' challenge to the enforceability of the parties' contracts. *See* Doc. 31 at 70:5–21. As set forth in the Motion, Plaintiffs' own allegations, exhibits, and judicial admissions demonstrate contract formation—meaning Plaintiffs agreed to the UTOS, DNRA, and AMA. *See* Doc. 41 at 29–32. Plaintiffs offer no contrary argument, and concede that the relevant agreements are "clickwrap," *see* Doc. 44 at 9, 36, indicating contract formation as a matter of law. *See* Doc. 41 at 29-32.

### 2.    *Plaintiffs Failed to Plead Procedural Unconscionability*

Plaintiffs cast certain aspects of the contract formation process as bearing on procedural unconscionability. *See* Doc. 44 at 21-22. They do not cite their Complaint for these arguments, underscoring that any procedural unconscionability claim is unpled. *See* Doc. 41 at 32-33. It is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Gagic v. Cnty. of Maricopa*, 2021 WL 1264006, at *3 (D. Ariz. Apr. 6, 2021), *aff'd*, 2021 WL 6102183 (9th Cir. Dec. 22, 2021). Plaintiffs cannot introduce new evidence and declarations to support their new, unpled allegations at this stage, *see* Doc. 44-1, 44-2, because "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Plaintiffs' failure to allege any of the facts they now rely upon requires that this Court dismiss their procedural unconscionability theory out of hand.

Regardless, Plaintiffs' arguments are inconsistent with Arizona law. Plaintiffs suggest they can establish procedural unconscionability based on the following: (1) they "were not required to open" the contracts, check a box, or scroll through the UTOS and DNRA before manifesting assent, instead clicking a button after being put on inquiry notice, *see* Doc. 44 at 21-22; (2) the language indicating they agreed to the UTOS and DNRA by clicking "Complete Purchase" was in "small-print," *see id.* at 21; (3) the UTOS and DNRA are each 33 pages, *see id.* at 21-22; and (4) the Domains were "only available through" GoDaddy. *See id.* at 22. None of these allegations are in the Complaint, but even if they were, they would be insufficient.

*First*, under Arizona law, a contracting party's choice not to read a contract is a risk that they choose to bear, not something that can render a contract unenforceable. *See Jones v. Chiado*, 670 P.2d 403, 405 (Ariz. Ct. App. 1983); *Myers v. Experian Info. Sols. Inc.*, 2024 WL 2278398, at *4 (D. Ariz. May 20, 2024). Arizona courts routinely enforce clickwrap contracts like the UTOS, DNRA, and AMA. *See* Doc. 41 at 29-32. Plaintiffs cite no contrary authority.

*Second*, the size of the language indicating assent to the UTOS and DNRA is relevant only to contract formation (which Plaintiffs concede), not contract enforceability. Only the size of the text *in the contract itself* is relevant to procedural unconscionability. *Arciniega v.*

*Experian Info. Sols., Inc.*, 2023 WL 6803084, at *3 (D. Ariz. Oct. 12, 2023) ("fine print clauses" in a contract are one factor in considering procedural unconscionability (quoting *Gullett v. Kindred Nursing Ctrs. W., L.L.C.*, 390 P.3d 378, 385 (Ariz. Ct. App. 2017))); *Maxwell v. Fidelity Fin. Servs. Inc.*, 907 P.2d 51, 57 (Ariz. 1995) (citation omitted). There are no fine print clauses in the UTOS and DNRA. *See* Doc. 1-1, Exs. N, O; Doc. 24-1; *see also Leo India Films Ltd. v. GoDaddy.com LLC*, 2023 WL 3740567, at *4 (D. Ariz. May 31, 2023).

*Third*, Plaintiffs do not cite a single Arizona case suggesting the length of a contract supports procedural unconscionability, particularly in a contract between sophisticated parties. *See Sw. Pet Prods., Inc. v. Koch Indus., Inc.*, 107 F. Supp. 2d 1108, 1114 (D. Ariz. 2000) ("It is not the place of the judicial system to rewrite contract terms for sophisticated business entities caught unaware by unfavorable provisions that they failed to read and negotiate.").

*Fourth*, Plaintiffs' attempt to argue that the Domains could not be obtained elsewhere is irrelevant. *See* Doc. 44 at 22. "[W]hether there were alternative sources of supply for the goods in question" is relevant to procedural unconscionability, *see Leo India Films*, 2023 WL 3740567, at *4 (citation omitted), but this factor does not refer to alternative sources of a specific, unique good; it refers to the availability of substitutes. *See Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1028 (N.D. Cal. 2020) (rejecting procedural unconscionability claim and finding that other smartphones were an available alternative to Apple's iPhone); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1139 (N.D. Cal. 2010) (rejecting lack of alternatives argument); *Battle v. Nissan Motor Acceptance Corp.*, 2007 WL 1095681, at *6 (E.D. Wis. Mar. 9, 2006) (plaintiff was not "forced to buy this particular used car at this particular dealership using this particular financing"). Plaintiffs admit that substitutes are available from many other registrars. *See* Doc. 1 ¶ 49 (alleging Prime registered twenty-six other butane-related domain names). Plaintiffs essentially argue that any contract for unique goods is procedurally unconscionable, but this would render every real estate contract unenforceable. *See Valdez v. Delgado*, 524 P.3d 1151, 1156 (Ariz. Ct. App. 2019) ("[L]and is viewed as unique…."). That cannot be right.

For all of these reasons, Plaintiffs' unpled procedural unconscionability theory is legally insufficient. Therefore, Plaintiffs' claims should be dismissed with prejudice.

### 3. *Plaintiffs Failed to Plead Substantive Unconscionability*

Plaintiffs next argue that the UTOS, DNRA, and AMA are substantively unconscionable *in toto*. Plaintiffs do not support these arguments with any citations to the Complaint, and so they should be dismissed out of hand. *See* Section II(C)(2), *supra*.

Moreover, Plaintiffs ignore that the UTOS, DNRA, and AMA are severable. *See* Doc. 41 at 33 (citing Doc. 24-1 § 28; Doc. 1-1 at Ex. N § 11; and Doc. 1-1 at Ex. O § 1). Most of Plaintiffs' arguments relate to terms other than the ones that give GoDaddy the right to "cancel or transfer any domain name registration[] for any reason," including, *inter alia*: (a) to "correct mistakes" made by GoDaddy in offering any of its services; (b) to "correct mistakes" of any domain name registrar; or (c) to avoid any potential civil liability (including potential claims by the original registrant of the Domains). *See* Doc. 24-1 § 15; Doc. 1-1 at Ex. O § 8. Plaintiffs' failure to allege that these provisions are substantively unconscionable means that they survive due to the severable nature of the contracts, and Plaintiffs' claims must be dismissed. *See Mousa v. Saba*, 218 P.3d 1038, 1044 (Ariz. Ct. App. 2009) ("In Arizona, even if one part of a severable contract is void, the court may enforce the remainder of the contract." (citation omitted)); *Barnett v. V.T. Motors LLC*, 2021 U.S. Dist. LEXIS 232213, at *13 (D. Ariz. Dec. 3, 2021) ("Although [one] provision is unconscionable, it is severable from the rest of the [contract], meaning the [contract] itself is not unconscionable and is still enforceable.").

Each of Plaintiffs' unpled substantive unconscionability arguments is meritless. Therefore, Plaintiffs' claims should be dismissed with prejudice.

### a. *GoDaddy's Right to Modify the UTOS Is Irrelevant*

Plaintiffs argue that the UTOS, DNRA, and AMA are substantively unconscionable because GoDaddy retains the right to amend the contracts. However, Plaintiffs do not allege that GoDaddy amended the provisions at issue after Plaintiffs agreed to the UTOS and DNRA.[4] *See* Doc. 44 at 23-25. This Court need not decide the enforceability of hypothetical contract

---

[4] Elsewhere in the brief, Plaintiffs characterize this as an issue of procedural unconscionability. *See* Doc. 44 at 14-15. That is incorrect. *Leo India Films*, 2023 WL 3740567, at *4 (claim that one party had "unilateral authority to make modifications to the Agreements" went to substantive unconscionability, not procedural unconscionability).

1    amendments that never occurred. *United States v. Nasri*, 119 F.4th 1172, 1184 (9th Cir. 2024)

2    ("[T]he oldest and most consistent thread in the federal law of justiciability is that the federal

3    courts will not give advisory opinions." (quoting *Flast v. Cohen*, 392 U.S. 83, 96 (1968))

4    (alteration in original)). This Court also need not decide whether the contractual provisions

5    granting GoDaddy the right to amend the UTOS, DNRA, and AMA are substantively

6    unconscionable because the contracts are severable. *See* Section II(C)(3), *supra*; *see also*

7    *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 480 (9th Cir. 2024) (presence of a unilateral

8    modification provision, without more, does not render a separate clause substantively

9    unconscionable). Plaintiffs' argument is nothing more than a red herring.

10       In any event, this provision is enforceable under Arizona law. *Marquez v. Amazon.com,*

11    *Inc.*, 69 F.4th 1262, 1273 (11th Cir. 2023); *Marciniak v. Veritas Techs. LLC*, 2023 WL 417634,

12    at *3 (D. Ariz. Jan. 26, 2023) (Arizona courts recognize contracts as valid despite clauses that

13    preserved unilateral discretion to modify them).

14                    b.    *GoDaddy's Agreements Are Not Illusory*

15       Plaintiffs make a closely related pair of arguments that the UTOS and DNRA are

16    illusory. Both versions of this argument are meritless.

17       *First*, Plaintiffs claim that Section 15 of the UTOS allows GoDaddy to withdraw from

18    the UTOS at any time, rendering it a "void" "agreement which permits one party to withdraw

19    at [its] pleasure." Doc. 44 at 24-25 (quoting *Marciniak v. Veritas Techs., LLC*, 2021 WL

20    162750, at *4 (D. Ariz. Jan. 19, 2021)). This is an incorrect interpretation of Section 15, which

21    allows GoDaddy to "deny, cancel, terminate, suspend, lock, or modify access to (or control

22    of) any Account or Services (including the right to cancel or transfer any domain name

23    registration)," not withdraw from the contract entirely. *See* Doc. 24-1 § 15. GoDaddy would

24    remain bound by the UTOS, and such provisions are routinely enforced. *See* Doc. 41 at 34

25    (collecting cases); *see also Bermudez v. DHI Mortg. Co. Ltd.*, 2018 WL 2008998, at *2 (D.

26    Ariz. Apr. 30, 2018) ("the only allegations supporting [plaintiff's] unconscionable contract

27    claim is—in fact—permissible").

28

While Section 15 is plainly enforceable, the result would not change even if it was not. Plaintiffs concede that Section 8 of the DNRA is more limited and does not permit GoDaddy to withdraw from the agreement "for any reason." *See* Doc. 44 at 25 n.5. Section 8 of the DNRA allows GoDaddy to "deny, cancel or transfer any registration … in [its] unlimited and sole discretion," including, *inter alia*, "to avoid any liability, civil or criminal" or "during the resolution of a dispute." *See* Doc. 1-1 at Ex O, § 8. Again, the contracts are severable; therefore, even if Section 15 of the UTOS was unenforceable (it is not), Section 8 of the DNRA would remain enforceable and foreclose Plaintiffs' claims. Plaintiffs' passing contention that Section 8 of the DNRA is unenforceable because it leaves GoDaddy to determine in its "unlimited and sole discretion" whether such an event has occurred is frivolous under long-standing Arizona law. *See, e.g.*, *Allen D. Shadron, Inc. v. Cole*, 416 P.2d 555, 557 (Ariz. 1966) (contract providing party with discretion is not illusory because party is still forbidden from "arbitrary, unreasonable or oppressive acts").

*Second*, Plaintiffs repeat their argument that the parties' contract are unenforceable due to GoDaddy's right to modify them. This argument remains unavailing. *See* Section II(C)(3)(a), *supra*. Further, this right does not render the contracts illusory because customers can reject any modifications by ceasing to use GoDaddy's services. *See* Doc. 24-1 § 2.

### c. Plaintiffs' "Due Process" Arguments Are Meritless

Next, Plaintiffs argue the UTOS and DNRA deprive them of due process. Plaintiffs cite *Rizzio v. Surpass Senior Living*, 492 P.3d 1031 (Ariz. 2021), to suggest that GoDaddy must provide Plaintiffs with unquantified "due process" procedures when GoDaddy exercises its contractual rights, including an internal "appeal process" and evidence showing how a technical error prevented the original registrant from renewing the Domains. *See* Doc. 44 at 24, 26-27. *Rizzio* stands for the mere proposition that an arbitration agreement that imposes prohibitively expensive arbitration costs that would "deny the plaintiff meaningful access to a forum in which she could vindicate her rights" may be substantively unconscionable. *See Rizzio*, 492 P.3d at 1035. Nothing in the UTOS or DNRA imposes "prohibitively expensive" arbitration costs on Plaintiffs, or denies Plaintiffs access to a meaningful forum—such as this

1   one. Rather, Plaintiffs just have not stated and cannot state a viable claim for relief under the

2   contracts, which expressly allow GoDaddy to do what it did. *See* Doc. 24-1 § 15.

3                  d.        *GoDaddy's Limitation of Liability Clause Is Both Enforceable and*

4                           *Irrelevant to Whether Plaintiffs Stated a Claim*

5          Plaintiffs contest the enforceability of the UTOS's limitation of liability provision, but

6   this would only be relevant to the damages they could seek in this action, not whether they

7   stated a claim. Again, the UTOS is severable, and this Court does not need to issue an advisory

8   opinion on the enforceability of the limitation of liability provision to decide whether Plaintiffs

9   stated a viable claim. *See* Section II(C)(3), *supra*.

10         If the Court does reach this issue, though, "the UTOS liability limitation provision is

11  not substantively unconscionable." *Leo India Films Ltd. v. GoDaddy.com, LLC*, 2020 WL

12  836603, at *2 (D. Ariz. Feb, 20, 2020), *rev'd on other grounds*, 840 Fed. App'x. 227 (9th Cir.

13  2021). This provision limits GoDaddy's total aggregate liability to $10,000. *See* Doc. 24-1

14  § 20. Arizona courts routinely uphold broad liability limitations, particularly in the commercial

15  context. *See, e.g.*, *Angus Med. Co. v. Digital Equip. Corp.*, 840 P.2d 1024, 1032 (Ariz. Ct.

16  App. 1992) ("it is not unconscionable to waive or disclaim an entire category of remedies");

17  *cf. 1800 Ocotillo, LLC v. WLB Grp., Inc.*, 196 P.3d 222, 226 (Ariz. 2008) (limitation of liability

18  clauses "may desirably allow the parties to allocate as between themselves the risks of

19  damages in excess of the agreed-upon cap"); *Flores v. ADT Sec. Servs., Inc.*, 2011 WL

20  1211769, at *4, *6 (D. Ariz. Jan. 31, 2011) (provision making defendant "exempt for any loss,

21  damage, injury or other consequence arising directly or indirectly from the services" it

22  provided under the contract, and limiting damages to "the greater of $500 or 10% of the annual

23  service charge" paid under the contract, was "neither unconscionable nor void as contrary to

24  public policy"), *report and recommendation adopted*, 2011 WL 1211516 (D. Ariz. Mar. 31,

25  2011). Plaintiffs cite no contrary authority.

26                 e.        *GoDaddy's Contracts Are Not Contracts of Adhesion*

27         Plaintiffs argue in conclusory fashion that the parties' contracts are adhesion contracts

28  that violate reasonable expectations. *See* Doc. 44 at 20–21. "'[R]easonable expectations' and

---

14

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1    unconscionability are two distinct grounds for invalidating or limiting the enforcement of a

2    contract[.]" *Maxwell*, 907 P.2d at 56-57 (reasonable expectations "is more correctly associated

3    with contracts of adhesion, not claims of unconscionability"). Plaintiffs do not define a

4    contract of adhesion, let alone explain why they believe the parties' contracts fit that definition.

5         The UTOS, DNRA, and AMA are not contracts of adhesion. "A contract of adhesion

6    offers goods or services on essentially a take it or leave it basis without affording the consumer

7    a realistic opportunity to bargain and under such conditions that the consumer cannot obtain

8    the desired product or services except by acquiescing in the form contract." *Duenas v. Life

9    Care Ctrs. of Am., Inc.*, 336 P.3d 763, 770-71 (Ariz. Ct. App. 2014) (quoting *Broemmer v.

10   Abortion Servs. of Phoenix, Ltd.*, 840 P.2d 1013, 1015 (Ariz. 1992)) (internal quotation marks

11   omitted). As previously noted, GoDaddy competes with hundreds of other registrars; Plaintiffs

12   do not allege otherwise. *See* Section II(C)(2), *supra*. Therefore, at minimum, Plaintiffs failed

13   to allege facts showing that they bargained "under such conditions that the consumer cannot

14   obtain the desired product or services except by acquiescing in the form contract." *Duenas*,

15   336 P.3d at 771 (citation omitted). Indeed, other courts have held that GoDaddy's contracts

16   are not contracts of adhesion. *Leo India Films*, 2023 WL 3740567, at *2.

17        Even if the UTOS, DNRA, and AMA were contracts of adhesion, "Arizona law

18   recognizes that a contract of adhesion is presumptively valid and fully enforceable according

19   to its terms unless the contract is unconscionable or beyond the range of reasonable

20   expectations." *Russ v. United Servs. Auto. Ass'n*, 2017 WL 1953458, at *3 (D. Ariz. May 11,

21   2017). Plaintiffs fail to allege unconscionability, as noted above, and also fail to allege any

22   violation of their reasonable expectations—particularly because they are sophisticated

23   businesses that clearly understand such contractual provisions. *See Sw. Pet Prods.*, 107 F.

24   Supp. 2d at 1114; Doc. 31 at 50:4-5 ("THE COURT: If my business depends on this and I'm

25   a sophisticated user, I'm not reading that?"). As GoDaddy explained, "fixing the original issue

26   and returning the domain was the right thing to do," and "[i]f the roles were reversed and an

27   error on our part caused you to miss an opportunity to renew one of your domains, we would

28   take the same actions." Doc. 1-1 at Ex. 15. The UTOS and DNRA expressly permitted

GoDaddy to cancel or transfer the Domains to correct an error or mistake, and correcting technical errors is plainly not beyond the reasonable expectations of even an unsophisticated consumer, let alone the sophisticated parties before the Court.

For all of these reasons, Plaintiffs' unpled substantive unconscionability theory would fail even if alleged. Therefore, their claims should be dismissed with prejudice.

### 4.    *Plaintiffs' Contract Claims Fail As A Matter Of Law*

As set forth in the Motion, Plaintiffs' contract claims fail because: (1) Plaintiffs failed to identify any provision that was breached; and (2) the parties' contracts expressly permitted the alleged conduct at issue. *See* Doc. 41 at 35-36. Plaintiffs attempt to brush aside these fatal defects, but to no avail.

As an initial matter, Plaintiffs *still* cannot identify a contractual provision that was purportedly breached. Instead, Plaintiffs now suggest that GoDaddy violated "implied terms" and vaguely reference "website and industry standards" for those purportedly implied terms. *See* Doc. 44 at 29–31. This argument fails for numerous reasons.

*First*, Plaintiffs effectively concede they cannot state a contract claim based on any express terms of the agreements. Plaintiffs' contract claims, therefore, are entirely duplicative of their implied covenant claim. Thus, the contract claims fail as a matter of law.

*Second*, any claim based on implied terms fails for the same reasons as Plaintiffs' implied covenant claim—implied terms "cannot directly contradict an express contract term." *Crown Eng'g Servs., LLC v. Sundt Constr., Inc.*, 2023 WL 2821542, at *3 (Ariz. Ct. App. Apr. 7, 2023). The UTOS and DNRA allowed GoDaddy to "cancel or transfer any domain name registration" "for any reason," including (but not limited to) (a) to "correct mistakes" made by GoDaddy, (b) to "correct mistakes" of any domain name registrar, or (c) to avoid any potential civil liability (including claims by the original registrant of the Domains). *See* Doc. 24-1 § 15; Doc. 1-1 at Ex. O § 8. Plaintiffs may not rely on ill-defined "implied terms" or unalleged "industry standards" to contradict express contractual terms.

*Third*, Plaintiffs suggest GoDaddy must provide Plaintiffs with evidence showing how a technical error prevented the original registrant from renewing the Domains, and claim this

1    presents "questions of fact for trial." *See* Doc. 44 at 21–22. That gets it exactly backwards. To

2    get to discovery, Plaintiffs must plausibly allege that GoDaddy exceeded its discretion under

3    the contracts by taking "arbitrary, unreasonable or oppressive acts." *Cole*, 416 P.2d at 557.

4    "[D]iscovery cannot cure a facially insufficient pleading. *Iqbal* specifically cautioned that

5    'Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than

6    conclusions,' and *Twombly* went further, observing '[i]t is no answer to say that a claim just

7    shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery

8    process through careful case management….'" *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173,

9    1177 (9th Cir. 2021) (first quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); and then

10   quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007)).

11           Plaintiffs have not alleged any facts suggesting that GoDaddy acted for any reason other

12   than to correct a technical error. For instance, Plaintiffs have not alleged that GoDaddy profited

13   in any way from correcting the error (while issuing refunds and store credit—acts that ***cost***

14   GoDaddy money) or that GoDaddy turned around and sold the Domains for a higher price, as

15   opposed to returning them to the original registrant. Without a threshold showing of

16   plausibility to a hypothetical (but unalleged) charge of arbitrary, unreasonable or oppressive

17   acts in the exercise of GoDaddy's discretion, the "doors of discovery" must remain firmly

18   closed.[5] *Iqbal*, 556 U.S. at 678-79.

19           ***5.    Plaintiffs' Implied Covenant Claim Fails As A Matter Of Law***

20           Plaintiffs contend that GoDaddy breached the implied covenant of good faith and fair

21   dealing by "acting in ways that are not prohibited" under the governing contracts "but which

22   adversely affected [Plaintiffs'] benefits." *See* Doc. 44 at 32. Plaintiffs' argument rests on

23   allegations that are found nowhere in the Complaint. Plaintiffs have never alleged "GoDaddy's

24   claim of 'mistake' or 'error' was used as a pretext" for some nefarious purpose. *See id.*

25   ───────────────

26   [5] Contrary to Plaintiffs' arguments, this case is not "similar to" *Leo India Films Ltd. v. GoDaddy.com LLC*, 2022 WL 836812 (D. Ariz. Mar. 21, 2022). *See* Doc. 44 at 30. There,

27   GoDaddy suspended a domain "in response to a letter from Indian law enforcement," but the plaintiff did not attach that letter to the complaint or "reference [it] at all." *See id.* at *2. Thus,

28   the Court in *Leo India Films* could not rely on materials outside the complaint. Here, Plaintiffs attached the relevant communications to their Complaint. *See* Doc. 1-1 at Ex. 15.

The law is clear: "[R]egardless of the circumstances, 'an implied covenant of good faith and fair dealing cannot directly contradict an express contract term.'" *Millennium Auto Sales LLC v. Pac. Specialty Ins. Co.*, 2022 WL 1569079, at *10 (D. Ariz. May 18, 2022) (quoting *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 434 (Ariz. Ct. App. 2002)). Here, the UTOS and DNRA expressly authorized the alleged conduct and allocated the risk in the event that GoDaddy determined it was necessary to cancel or transfer a domain registration to correct an error or mistake, or otherwise avoid potential civil liability. Plaintiffs cannot use the implied covenant of good faith and fair dealing to rewrite the UTOS and DNRA, contradict their express terms, and reassign the allocation of risks expressly addressed in the agreements. *See Crown Eng'g Servs.*, 2023 WL 2821542, at *3 (implied covenant claim failed where it relied on "a risk expressly anticipated by the contract"); *Coulter v. Grant Thornton, LLP*, 388 P.3d 834, 842 (Ariz. Ct. App. 2017) (breach of the implied covenant occurs where a party uses its "discretion for a reason outside the contemplated range—a reason beyond the risks assumed by the party claiming a breach"). And again, Plaintiffs do not plausibly allege facts to suggest that GoDaddy acted in an "arbitrary, unreasonable or oppressive" manner in exercising its discretion. *See* Section II(C)(5), *supra*. Plaintiffs' claim fails as a matter of law.

### 6. *Plaintiffs' Estoppel Claim Fails As A Matter Of Law*

Plaintiffs' estoppel claim is plainly foreclosed as a matter of law because the parties' relationship is governed by the UTOS, DNRA, and AMA. *See* Doc. 41 at 37. Plaintiffs now assert their "estoppel claim arises from Defendants pre-contractual actions" that purportedly "induced Plaintiffs to enter" into the parties' written agreements. *See* Doc. 44 at 37. But to state a promissory estoppel claim, a plaintiff must show that a defendant "made a promise," "should have reasonably foreseen that [the plaintiff] would rely on that promise," and that the plaintiff "actually relied on the promise to his detriment." *Higginbottom v. State*, 51 P.3d 972, 977 (Ariz. Ct. App. 2002). Plaintiffs do not allege that GoDaddy made any promise aside from the contractual promises in the UTOS, DNRA, and AMA, and GoDaddy Inc. and 123-Reg had no alleged "pre-contractual" interactions with Plaintiffs. *See generally* Doc. 1. Although Plaintiffs assert that they "would not have purchased the domain[s]" had they known a

1    technical error prevented the original registrant from renewing the Domains, *see* Doc. 44 at

2    37, the UTOS and DNRA expressly assigned the risk of such an error or mistake to Plaintiffs,

3    not GoDaddy, while disclaiming the exact warranty that Plaintiffs now seek to impose on

4    Defendants. *See* Doc. 24-1, § 15; Doc. 1-1 at Ex. O § 8; *see also* Doc. 1-1 at Ex. N § 2

5    ("GoDaddy has no control over the quality, safety or legality of the domain names listed.");

6    Doc. 24-1 § 19 (disclaiming all warranties, including with respect to the accuracy,

7    completeness or content of GoDaddy's websites and services). Plaintiffs' equitable claim is

8    foreclosed by the express terms of the parties' agreements.

9                    **7.    Plaintiffs' Tort Claims Fail As A Matter Of Law**

10          Plaintiffs cannot escape the fatal defects that bar their tort claims. *First*, Plaintiffs argue

11   that the ELR is "limited" and generally applies only "to products liability and construction

12   defect litigation." *See* Doc. 44 at 32-33 (citing *Sports Imaging of Ariz. L.L.C. v. 1993 CKC

13   Trust,* 2008 WL 4448063, at *20 (Ariz. App. 2008)). Plaintiffs claim it is an open question

14   whether the ELR applies more broadly, but Arizona courts have since "extended the [ELR]

15   beyond products liability and construction defect cases." *Red Equip. Pte Ltd. v. BSE Tech,

16   LLC*, 2014 WL 2557129, at *4 (D. Ariz. June 6, 2014) (citing *Cook v. Orkin Exterminating

17   Co.*, 258 P.3d 149, 153 (Ariz. Ct. App. 2011) (applying the ELR to a service contract and

18   barring negligence, fraud, and misrepresentation claims)); *accord Dominguez v. Wallick &

19   Volk Inc.*, 2022 WL 22771517, at *4 (D. Ariz. Nov. 10, 2022) ("Since 2011, other courts in

20   this District have relied on *Cook* and applied the economic loss doctrine to contracts for

21   services outside of construction defect and products liability cases."); *see Sitevoice, LLC v.

22   Gyrus Logic, Inc.*, 2014 WL 4722329, at *6 (D. Ariz. Sept. 23, 2014) (ELR barred conversion

23   claim). Plaintiffs appear to have overlooked this authority, which postdates *Sports Imaging*.

24          *Second*, Plaintiffs fail to address the authority holding that domains cannot be subject

25   to conversion (or trespass to chattel). *See* Doc. 41 at 38. Instead, Plaintiffs rely on an inapposite

26   case, *McAlister v. Loeb & Loeb,* 2024 WL 372214 (Ariz. Ct. App. Feb. 1, 2024), *review

27   granted* (Nov. 6, 2024). In *McAlister*, the Court held that an electronic patent application may

28   be the subject of a trespass to chattel claim. *See id.* at *7. As the *McAlister* court recognized,

1   the outermost bounds of such a claim still must involve "intangible property that is merged in,

2   or identified with, some document, such as a stock certificate or an insurance policy." *Id.*

3   (cleaned up). A patent application qualifies, but a domain registration does not because it is

4   neither merged in, nor identified with, any document. *See Hao v. GoDaddy.com, LLC*, 2023

5   WL 3078660, at *1–2 (D. Ariz. Apr. 25, 2023). Plaintiffs also do not dispute that, should the

6   Court find the UTOS and DNRA permitted the conduct at issue, any trespass to chattel claim

7   fails as a matter of law. *See* Doc. 41 at 38.

8       *Third*, Plaintiffs failed to address any of the deficiencies in their tortious interference

9   claims. *See* Doc. 41 at 40. Plaintiffs do not dispute that their tortious interference claims must

10  be dismissed if the Court determines that GoDaddy acted within its express contractual rights

11  under the UTOS and DNRA, and Prime failed to allege: (a) any "specific relationship" any

12  Defendant purportedly interfered with, and (b) anything beyond the mere hope of a business

13  expectancy. Although Plaintiffs assert they "informed Defendants of [their] active business

14  uses" in "response" to an email from GoDaddy, *see* Doc. 44 at 35, Plaintiffs failed to allege

15  that 123-Reg had knowledge of Plaintiffs' purported business relationship, or committed any

16  improper act that intentionally interfered it.

17      *Finally*, Plaintiffs' duplicative negligence claims are facially deficient for numerous

18  reasons. *See* Doc. 41 at 38-39. Plaintiffs remain unable to identify any applicable duty of care

19  apart from GoDaddy's contractual duties, and failed to allege that GoDaddy Inc. and 123-Reg

20  owed Plaintiffs any duty. Plaintiffs' reliance on A.R.S. § 47-2312 to assert there is an "implied

21  warranty" is misguided, as that statute applies to the sale of goods (and not services); the UTOS

22  disclaims all warranties, *see* Doc. 24-1 § 19; and Plaintiffs' argument, if accepted, would

23  simply demonstrate that Plaintiffs' tort claims duplicate a breach of warranty claim, and thus

24  are barred by the ELR. Likewise, Plaintiffs' citation to the Arizona Consumer Fraud Act is

25  inapposite, given that Plaintiffs did not bring any claims under this statute.

26  **III.    CONCLUSION**

27      Defendants respectfully ask that this Court dismiss Plaintiffs' claims with prejudice.

28

1

2    Dated:  March 26, 2025                **COZEN O'CONNOR**
                                           Jeffrey M. Monhait
3

4                                          By:  *s/Jeffrey M. Monhait*
                                                Jeffrey M. Monhait
5
                                           Attorneys for Defendants
6                                          GoDaddy Inc., GoDaddy.com, LLC
                                           and 123-Reg Limited
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies, under penalty of perjury under the laws of the State of Arizona that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jeffrey J. Neuman                         Isacc S. Crum
JJN SOLUTIONS, LLC                  MESSNER REEVES LLP
9445 Brenner Ct.                          7250 N. 16th St., Suite 410
Vienna, VA 22180                         Phoenix, AZ 85020
(202) 549-5079                             (602) 457-5059
jeff@jjnsolutions.com                   icrum@messner.com

Counsel for Plaintiffs                    Counsel for Plaintiffs

SIGNED AND DATED this 26th day of March, 2025 at Philadelphia, Pennsylvania.

COZEN O'CONNOR

By:  *s/ Jeffrey M. Monhait*
         Jeffrey M. Monhait

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT