# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Prime Loyalty LLC, *et al.*,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>GoDaddy Incorporated, *et al.*,<br><br>　　　　Defendants. | No. CV-24-03359-PHX-JJT<br><br>**ORDER** |

The parties filed five joint notices of discovery disputes on five discrete issues. (Docs. 97-101.) The Court held a telephonic hearing to address all five disputes on March 5, 2026 and resolved one of them, as described in Doc. 101, at the hearing. (Doc. 109.) It now resolves the remaining four disputes.

**I.　　Dispute re: Discovery into Prior Auction Reversals (Doc. 98)**

Plaintiffs' Interrogatory No. 5 asked Defendants to "State whether GoDaddy has experienced any other instance within the past five years in which a domain name auction or sale was reversed or cancelled due to an 'unexpected error,' and if so, describe each instance, including the date, the affected domain, registrant, nature and cause of the error, and corrective actions taken." Defendants object on the basis of relevance and proportionality, principally; they also object to the requirement that they divulge registrant identities and information associated with any such instances of auction reversal or cancellation.

. . .

Plaintiffs argue that discovery as to similar instances in reversals of other domain name auctions is relevant to their claim for breach of the covenant of good faith and fair dealing because where a party has relied on the discretion provided to it in the contract—here the UTOS Agreement—to cancel or reverse the domain name auction, comparative instances of similar conduct in similar situations could show a lack of good faith in the Defendants' instant decision. Defendants argue that the implied covenant of good faith cannot contradict an express contract term—here the term allowing Defendants discretion to cancel or reverse an auction, and so their decision to cancel any other auctions cannot bear on the bad faith claim Plaintiffs bring here.

The Court disagrees with the breadth of Defendants' conclusion. A party to a contract can be given discretion in that contract to reverse the transaction at issue, and can exercise that discretion, but if it does so to deny the opposing party the benefit of its agreement, that action can still constitute bad faith. *Day v. LSI Corp.*, 174 F.Supp.3d 1130, 1156 (D. Ariz. 2016), the case Defendants cite in support of this argument, does not provide otherwise. The facts that would determine the relevance of other instances of cancellation or reversal are not concrete enough for the Court to make a final determination precisely because they are yet unknown at this time. But Plaintiffs' logic is sound that such evidence could likely be relevant on the issue.

Discovery thus will proceed into other instances of auction cancellation or reversal, and if it yields any such comparable situations, the parties can argue the application of *Day* in the context of concrete comparative instances at the summary judgment or pretrial stages. But the Court will impose a more limited time frame on the scope of this discovery than Plaintiffs have requested. Defendants are correct that a five-year look-back period is not proportional to the needs or value of this case under the circumstances they have described adequately in their filing. The Court will limit the temporal scope of review and production to the 18 months immediately before the cancellations at issue.

Finally, Defendants need not disclose the registrant identities or other information pertaining to them.

## II.    Dispute re: Discovery into Prior Legal Actions (Doc. 100)

Plaintiffs' Interrogatory No. 15 asked Defendants to "Identify all lawsuits, arbitrations, or administrative proceedings within the past five years involving GoDaddy Inc. in which a dispute arose over a domain name auction, post-auction reversal, or clawback." As in the previous dispute, the parties' arguments focused mainly on relevance and proportionality. At the hearing, they did agree on some facts that would allow limitation of the scope of the discovery request and its compliance, as reflected below.

For the same reasons identified in dispute I., the Court disagrees with Defendants' narrow formulation of relevance with regard to the requested disclosure, and therefore will overrule the objection on that ground. And for similar reasons, it also agrees with Defendants' scope and proportionality concerns as set forth in the prior dispute. Therefore the Court will allow Plaintiffs' discovery into other legal actions, but with more tightly defined parameters than appear in the original interrogatory.

In responding to Interrogatory No. 15 as re-crafted here, Defendants shall identify all lawsuits, arbitrations, or administrative proceedings within the past two years where Godaddy.com was named as a defendant, and in which a dispute arose over only a post-auction reversal, cancellation, or clawback.

## III.    Dispute re: Identities of Partners in the Butane Business (Doc. 99)

Defendants' Request for Production No. 16 seeks "Documents relating to your or Mike Giordano's alleged efforts to 'prepare one of his warehouses in South Florida . . . to accommodate the initial supply of butane.com-branded items' and 'enter into contractual negotiations with his established network of suppliers, distributors, and vendors to carry the new butane.com-branded products,' as alleged in paragraph 45 of your complaint." Plaintiffs object specifically to the identification of, or the turning over of documents that would identify, non-party Mr. Giordano's business partners—the "suppliers, distributors, and vendors" referenced in paragraph 45 of the Complaint, and again in RFP No. 16, urging exposure of these non-parties to the discovery aspects of this litigation would be harmful to Mr. Giordano's business relationships. They also assert that the business partners have

no knowledge of the facts underlying the instant case, which they would cabin as Plaintiffs' participation in Defendants' domain name auction for butane.com, or the actions that followed resulting in the cancellation or clawback of that domain name.

Defendants argue that the business partners do have information relevant to one aspect of the case—the damages Plaintiffs claim in their Complaint. Defendants' view is grounded in the language of paragraph 45 of the Complaint, which states in relevant part that "Giordano entered into contractual negotiations with his established network of suppliers, distributors, and vendors to carry the new butane.com-branded products." In Defendants' reading, this allegation would go to Plaintiffs' claim of damages for lost profits as a result of the clawback of the domain name and the resulting inability to go forward with the butane.com business. Defendants urge that they are entitled to talk to these business partners and explore what negotiations they engaged in as "basic discovery about whether such damages exist."

This dispute is obviated by Plaintiff's counsel's concession at the hearing that Plaintiffs are not seeking lost profits damages based on the discussions of potential business partners and suppliers within the butane business or otherwise. Defense counsel acknowledged that if that were the case, the discovery sought from the non-party business partners would be irrelevant. The Court agrees.

If the Court incorrectly understood Plaintiffs' counsel's assertion, and Plaintiffs do intend to seek lost profits damages from the butane.com business, then the non-party business partners' knowledge of their communications with Prime and or Giordano would be relevant, as they would go to 1) what effort or investment Prime had put into raising the business concern that was later aborted as a result of the loss of the domain name, which might justify lost profits; and 2) whether any such work or investment was attributable to Prime, in which case expected lost profits may be recoverable in an action by Prime, or whether it was attributable to a non-party such as Mr. Giordano or his business, neither of whom are parties to this action, in which case associated lost profits damages would not be recoverable in this action.

### IV.    Dispute re: Attorney-Client Privilege (Doc. 97)

Plaintiffs seek in their Interrogatory No. 4 "how and when GoDaddy first discovered the 'unexpected error' referenced in its June 4, 2024 communications, including the date and manner of discovery; the persons involved in identifying and reporting the error; internal communications describing the error; the corrective actions taken; and whether GoDaddy believes that 123-Reg contributed to or caused the error with an explanation of the basis for that belief." Defendants argue, to the extent any employee directly initiated any communications with counsel seeking advice for the corporation, those communications are privileged.

The Court does not take issue with this statement—the communications would be privileged. But the underlying facts are not. Thus, Defendants must disclose when GoDaddy first discovered the error, and they must disclose how they discovered it as well, even if that discovery occurred in the course of a conversation with counsel. If that were the case, the Court will not deem privilege to be waived beyond the answer itself, and Defendant need not divulge any of the communications themselves. Defendants also must identify the persons involved in identifying the error, other than any counsel.[1] Any non-privileged communications describing the error are also to be disclosed, as are the corrective actions taken. Finally, Defendants must disclose whether GoDaddy believes that 123-Reg contributed to or caused the error and why it believed that, excluding any communications with or advice of counsel on that issue.

In framing the discovery dispute, and in arguing it at the telephonic hearing, Plaintiffs argue that Defendants must identify "who made the decision to unwind or claw back Plaintiffs' domain names calor.com and butane.com." (E.g., Doc. 97 at 2.) But that is not any part of Plaintiffs' Interrogatory No. 4 served on Defendants. It is not the elevation of form over substance to hold Plaintiffs to the actual terms of the interrogatory they served. And the Court will do so here. Defendants need not answer this question as part of their

---

[1] The parties will recall that at the telephonic dispute hearing, counsel for both sides agreed, in the hypothetical the Court posed to them mirroring this situation, that the identity of the non-lawyer employee involved in such communication was not protected by the privilege, but the identity of the counsel so consulted was protected.

response to Interrogatory No. 4. Plaintiffs are however free to inquire in any remaining discovery steps as to this question if permitted under the Rules of Civil Procedure and the Court's scheduling Order. The Court's ruling above regarding privilege and its narrow drawing of any waiver as applied to any answer thereto would apply to any deposition questions, where the witness had knowledge enabling them to answer such a question.

**SO ORDERED**.

Dated this 19th day of March, 2026.

Honorable John J. Tuchi
United States District Judge