Jeffrey J. Neuman (Admitted *pro hac vice*)
Jeff@jjnsolutions.com
JJN Solutions Law, PLLC
9445 Brenner Ct.
Vienna, VA 22180
Telephone: (202) 549-5079

Isaac S. Crum, #026510
icrum@messner.com
MESSNER REEVES LLP
7250 N. 16th St. Ste 410
Phoenix, Arizona 85020
Telephone: (602) 457-5059
Facsimile: (303) 623-0552

*Attorneys for Prime Loyalty, Crisby
Studio AB, and Niklas Thorin*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Prime Loyalty, LLC, a New York limited liability company, Crisby Studio AB, a Swedish limited company, and Niklas Thorin, a Swedish resident<br><br>           Plaintiffs,<br><br>v.<br><br>GoDaddy, Inc., a Delaware corporation, GoDaddy.com, LLC, a Delaware corporation, and 123-Reg Limited, a UK company,<br><br>           Defendants. | Case No. 2:24-cv-03359-JJT<br><br><br>**PLAINTIFFS' MOTION FOR ATTORNEYS FEES PURSUANT TO FED. R. CIV. P. 37(a)(5)** |

1

Plaintiffs Prime Loyalty, LLC ("Prime"), Crisby Studio AB, and Niklas Thorin ("Crisby") (collectively the "Plaintiffs"), by and through their attorneys, respectfully move this Court pursuant to Fed. R. Civ. P. 37(a)(5) for an award of attorneys' fees and expenses based on the Court's March 5, 2026, and March 19, 2026 Orders resolving the parties' discovery disputes.

## I.    **INTRODUCTION**

This fee motion is warranted because Plaintiffs prevailed on all five discovery disputes presented to the Court. After the parties met and conferred and then submitted the disputes through the joint procedure required by the Court's Scheduling Order, the Court rejected Defendants' objections and ordered the discovery to proceed. On four disputes, the Court issued a written order granting Plaintiffs relief and compelling discovery. On the fifth dispute, concerning the depositions of Andreea Elena Stefan and Emma Stanciu, the Court ruled on the record that the depositions could proceed remotely by notice.

Rule 37(a)(5)(A) provides that, when a motion to compel is granted or requested discovery is ordered after court intervention, the court must require the party whose conduct necessitated the motion, the attorney advising that conduct, or both, to pay the movant's reasonable expenses, including attorneys' fees, unless the resisting party shows that its position was substantially justified or that other circumstances would make an award unjust. Neither exception applies here.

This is precisely the circumstance Rule 37 was designed to address. Plaintiffs repeatedly attempted to resolve these disputes without burdening the Court. Defendants nevertheless forced judicial intervention on five separate discovery issues, and Plaintiffs prevailed on all five. The Court itself observed at the March 5, 2026 hearing that the number of discovery disputes in this case already placed it among the cases with the highest volume of such disputes on the Court's docket and strongly urged the parties to resolve disputes without further court involvement. The outcome of the hearing and the

Court's subsequent rulings confirm that the disputes requiring intervention were not close calls, but positions maintained by Defendants without substantial justification.

Plaintiffs certify that they attempted in good faith to meet and confer with Defendants regarding the relief requested in this motion, but Defendants did not participate and the parties were unable to reach agreement.

## II.    **BACKGROUND**

The Court's Rule 16 Scheduling Order barred the filing of ordinary discovery motions without leave and required the parties instead to submit discovery disputes jointly after sincere efforts to resolve them through personal consultation. The parties followed that process and filed five joint notices of discovery dispute. Four were taken under advisement at the March 5, 2026 hearing, and one was resolved on the record at that hearing.

First, as to Plaintiffs' Interrogatory No. 5 seeking discovery into prior auction reversals, Defendants objected principally on relevance and proportionality grounds. The Court rejected Defendants' narrow relevance position and held that discovery into other auction cancellations or reversals could be relevant to Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing. The Court ordered discovery to proceed, limiting only the temporal scope to the eighteen months immediately preceding the cancellations at issue and permitting Defendants to withhold registrant identities.

Second, as to Plaintiffs' Interrogatory No. 15 seeking discovery into prior legal actions involving post-auction reversals, cancellations, or clawbacks, Defendants again objected primarily on relevance and proportionality grounds. The Court overruled those objections and ordered Defendants to identify all lawsuits, arbitrations, or administrative proceedings within the prior two years in which GoDaddy.com was named as a defendant and the dispute involved only a post-auction reversal, cancellation, or clawback.

Third, on Plaintiffs' privilege-related discovery dispute concerning Interrogatory No. 4, Defendants argued that the discovery sought information protected by the attorney-client privilege. The Court agreed that communications themselves could remain

privileged, but held that the underlying facts were not. The Court required Defendants to disclose when GoDaddy first discovered the asserted 'unexpected error,' how it was discovered, who was involved in identifying it other than counsel, any non-privileged communications describing the error, the corrective actions taken, and whether and why GoDaddy believed 123-Reg contributed to or caused the error, excluding only communications with counsel and advice of counsel.

Fourth, the Court also resolved the dispute concerning the identities of alleged butane-business partners in accordance with Plaintiffs' position as stated at the hearing. Plaintiffs' counsel clarified that Plaintiffs were not seeking lost profits based on discussions with potential partners or suppliers in the butane business. In light of that clarification, the Court agreed that the requested discovery would be irrelevant. The Court further noted that only if Plaintiffs later pursued such lost-profits damages would the non-party business-partner discovery become relevant.

Fifth, on the dispute regarding the depositions of Andreea Elena Stefan and Emma Stanciu, Defendants insisted that any depositions of those witnesses had to proceed through the Hague Convention because Romanian law allegedly prohibited even voluntary remote depositions on Romanian soil. Yet Defendants simultaneously admitted they were not asserting a control objection and expected both witnesses to cooperate in voluntarily appearing for remote depositions. When the Court found that the evidence Defendants had submitted was insufficient to establish that remote depositions would violate Romanian law, it ordered Defendants to provide sufficient, reliable evidence before the hearing. In response, Defendants filed a notice expressly clarifying that they did not contend that remote depositions would violate a Romanian blocking statute and that they had not located any such statute. At the March 5, 2026 hearing, the Court ruled on the record that the parties could proceed with the remote depositions of Ms. Stefan and Ms. Stanciu by notice, with resort to Hague procedures only if Ms. Stanciu declined to participate voluntarily.

Accordingly, after the March 5, 2026 hearing, Plaintiffs had prevailed on all five disputes presented to the Court. The four disputes taken under advisement were resolved in Plaintiffs' favor by written order entered on March 19, 2026. The fifth had already been resolved in Plaintiffs' favor on the record at the hearing.

## III.    <u>LEGAL STANDARD</u>

Rule 37(a)(5)(A) creates a mandatory fee-shifting regime. If a motion to compel is granted, or if the requested discovery is provided only after the motion is filed, 'the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.' Fed. R. Civ. P. 37(a)(5)(A). The court must not order payment only if: '(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust.' Id.

In the Ninth Circuit, this standard is mandatory, not discretionary, once the movant has prevailed. See *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994). The burden rests on the party facing fees to establish substantial justification or circumstances making an award unjust. *Id*.; see also I*nfanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 311 (C.D. Cal. 2020). A position is substantially justified only if it is justified in substance or in the main, that is, to a degree that could satisfy a reasonable person; in other words, there must be a genuine dispute such that reasonable people could differ as to the appropriateness of the contested conduct. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Bark v. Northrop*, 300 F.R.D. 486, 490 (D. Or. 2014).

Although the parties' disputes here were presented through joint notices pursuant to the Court's case-management order rather than formal captioned motions to compel, that procedural difference does not alter the Rule 37 analysis. The Court was asked to

{08731985 / 1}                                                      4

resolve whether discovery had to be provided; it ruled that discovery had to be provided; and Defendants' positions were rejected. The joint discovery-dispute procedure served the same function as a motion to compel and should be treated accordingly for purposes of Rule 37(a)(5).

## IV.    ARGUMENT

### A.    *Plaintiffs Prevailed on All Five Discovery Disputes*

There can be no serious dispute that Plaintiffs prevailed on all five discovery disputes. On the four disputes resolved by written order, the Court overruled Defendants' objections and ordered discovery to proceed. The Court did not deny relief on any of those disputes. Instead, it compelled responses to Interrogatories Nos. 4, 5, and 15 and resolved the butane-business-partner dispute consistently with Plaintiffs' clarification that they were not seeking lost profits based on those alleged relationships.

Likewise, on the deposition dispute, the Court rejected Defendants' position that the witnesses could be deposed only through Hague procedures and ruled that the parties could proceed with the remote depositions by notice. That ruling afforded Plaintiffs the precise relief they sought. The fact that the Court included a contingency for proceeding through the Hague Convention if Ms. Stanciu later declined to participate voluntarily does not alter the result. Plaintiffs sought permission to proceed by notice; the Court granted it.

Because Plaintiffs obtained court-ordered discovery relief on every dispute presented, the predicate for Rule 37(a)(5) is satisfied.

### B.    *Rule 37(a)(5) Requires a Fee Award Here.*

Once a party prevails on a motion to compel or its functional equivalent, Rule 37(a)(5) provides that the court must award the movant's reasonable expenses unless the resisting party carries its burden of showing substantial justification or injustice. The rule exists to compensate the party forced to incur fees to obtain basic discovery and to deter needless discovery motion practice.

That purpose applies with particular force here. This case generated five separate discovery disputes significant enough to require the Court's intervention. The Court expressly remarked during the March 5 hearing that the number of discovery disputes in the case already placed it near the top of the Court's cases in terms of discovery-dispute volume, and it strongly urged the parties to resolve disputes without further judicial involvement. Defendants continued to maintain all five positions through the hearing. Plaintiffs then prevailed on all five.

Moreover, Plaintiffs satisfied the meet-and-confer prerequisite. The parties conferred repeatedly, and each joint notice included the certification required by the Court's Scheduling Order confirming sincere efforts to resolve the matter through personal consultation and an impasse. Plaintiffs thus complied fully with both the Federal Rules and the Court's case-management procedures before seeking relief.

Defendants may contend that the Court's imposition of reasonable limitations on the scope of discovery demonstrates that their objections were substantially justified. That argument fails. Rule 37 does not require that a moving party obtain discovery in the precise form originally requested in order to recover fees. Rather, fee shifting is warranted where a party refuses to provide discovery and the Court orders that discovery to proceed. See *Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 308 (C.D. Cal. 2020).

Here, Defendants did not propose reasonable alternatives or engage in narrowing discussions during the meet-and-confer process. Instead, Defendants took an all-or-nothing approach, refusing to provide the requested discovery altogether unless ordered by the Court. The Court's subsequent imposition of reasonable limitations does not retroactively render Defendants' refusal substantially justified.

Courts distinguish between genuine disputes in which parties engage in good-faith efforts to narrow issues and situations where a party refuses discovery entirely and only provides it after judicial intervention. This case falls squarely in the latter category.

### C.    *Defendants' Positions Were Not Substantially Justified.*

Defendants' positions across the five discovery disputes were not substantially justified and required repeated Court intervention.

Under Rule 37, a position is "substantially justified" only if it is justified in substance or in the main, if it has a reasonable basis in both law and fact such that reasonable people could differ as to its appropriateness. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The burden rests on the party resisting discovery to make that showing. *Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 308 (C.D. Cal. 2020). Here, Defendants cannot meet that burden.

Defendants may argue that a party can be substantially justified even if it ultimately does not prevail. While that general principle is correct, it does not apply here. This case does not involve a close or debatable dispute over the proper scope of discovery. Rather, Defendants asserted broad objections, declined to propose reasonable limitations, and, in at least one instance, failed to provide any evidentiary support for a central legal position even after being ordered by the Court to do so. Courts distinguish between good-faith disagreements over discovery scope and situations in which a party maintains unsupported or overbroad objections that require judicial intervention. *Infanzon*, 335 F.R.D. at 308. This case falls squarely in the latter category.

First, across multiple disputes, Defendants asserted broad objections, including relevance, proportionality, and privilege, that the Court rejected. The Court expressly concluded that Plaintiffs' theories of relevance were sound and ordered Defendants to provide discovery they had refused to produce. Although the Court imposed reasonable limitations on scope in certain instances, those limitations do not render Defendants' refusal to provide any discovery substantially justified. Courts routinely hold that a position is not substantially justified where it lacks a reasonable basis in law and fact, even if some narrowing of scope is ultimately appropriate. See *Bark v. Northrop Corp.*, 300 F.R.D. 486, 497 (D. Or. 2014). Defendants did not offer tailored objections or

propose narrowing alternatives during the meet-and-confer process, but instead maintained blanket objections that required Court intervention.

Second, the deposition dispute concerning Ms. Stefan and Ms. Stanciu independently confirms the lack of substantial justification. Defendants repeatedly asserted that Romanian law prohibited voluntary remote depositions of these witnesses. In response, the Court expressly ordered Defendants to provide sufficient, reliable evidence that such depositions would violate Romanian law.

Defendants failed to do so. This sequence, asserting a legal prohibition, being ordered to substantiate it, and then failing to do so, demonstrates that Defendants' position lacked a reasonable basis in law or fact.

Defendants' reliance on purported uncertainty in Romanian law does not render their position substantially justified. A party asserting that foreign law prohibits discovery bears the burden of demonstrating that prohibition with competent legal authority. *Roberts v. Heim*, 130 F.R.D. 430, 436 (N.D. Cal. 1990). Conclusory assertions are insufficient. Defendants were expressly ordered to provide such evidence and failed to do so.

Nor does the Court's inclusion of a contingency for Hague Convention procedures alter this conclusion. The Court did not adopt or validate Defendants' legal position. Instead, it permitted the depositions to proceed by notice after Defendants failed to substantiate their claim. The contingency reflected practical considerations related to witness availability, not any endorsement of Defendants' argument. This is confirmed by the Court's differential treatment of the witnesses: no contingency was imposed for Ms. Stefan, who remained a GoDaddy employee, while the contingency applied only to Ms. Stanciu, who had announced her departure. The Court's ruling thus turned on witness availability, not on any legal uncertainty.

Third, Defendants' conduct resulted in unnecessary delay and expense. Defendants had been resisting these depositions since at least December 2025 based on their assertion that Romanian law prohibited voluntary remote depositions. That position

was ultimately rejected after the Court required Defendants to substantiate it and Defendants failed to do so. The resulting delay was therefore not a product of the inherent complexity of international discovery, but of Defendants' decision to maintain an unsupported legal position until judicial intervention was required.

The timeline confirms this. Only after the Court rejected that position were the parties able to move forward, at which point Ms. Stanciu's impending departure from the company created additional logistical constraints. That sequence demonstrates that the delay flowed directly from Defendants' position, not from neutral scheduling difficulties.

Where, as here, a party's unsupported position prevents discovery from proceeding until resolved by the Court, the resulting delay and expense are properly attributable to that party.

Finally, Defendants' positions across all five disputes necessitated Court intervention. Plaintiffs engaged in good-faith efforts to resolve these issues without judicial involvement and complied fully with the Court's joint dispute procedures. Defendants nevertheless maintained positions that were rejected in every instance. Rule 37 is designed to address precisely this type of conduct, where a party's unsupported positions require judicial resolution and impose unnecessary expense on the opposing party. See *Infanzon*, 335 F.R.D. at 308.

Where, as here, a party advances positions that are consistently rejected, fails to substantiate those positions when ordered to do so, and requires repeated judicial intervention to obtain basic discovery, those positions are not substantially justified and warrant fee shifting under Rule 37.

### D. *No Other Circumstances Make a Fee Award Unjust.*

Defendants may argue that the complexity of the case, the number of disputes, or the Court's narrowing of certain requests render a fee award unjust. Those arguments fail.

First, the fact that the Court imposed reasonable limitations on the scope of discovery does not make a fee award unjust. As discussed above, Defendants did not

propose narrowing alternatives during the meet-and-confer process, but instead refused to provide discovery altogether unless ordered by the Court. The Court's refinement of scope reflects the ordinary exercise of its discretion in managing discovery, not a validation of Defendants' refusal to provide any discovery in the first instance.

Second, this case does not present the type of close or novel dispute that would make fee shifting inequitable. The governing principles applied by the Court were straightforward: relevant comparative discovery is discoverable subject to proportional limits; underlying facts are not protected by the attorney-client privilege; and a party asserting that foreign law prohibits discovery must substantiate that assertion with competent evidence. Defendants failed to satisfy these standards across all five disputes.

Third, the volume of disputes underscores the need for fee shifting. Plaintiffs complied with the Court's procedures, engaged in good-faith efforts to resolve each dispute, and presented the issues through the joint process required by the Court. Defendants nevertheless maintained positions that were rejected in every instance. The fact that five separate disputes required judicial intervention, all of which were resolved in Plaintiffs' favor, confirms that this was not a situation in which both sides advanced equally reasonable positions.

Fourth, the international context of certain issues does not render a fee award unjust. Courts have repeatedly held that a party's status as a foreign litigant or the involvement of cross-border discovery does not excuse failure to comply with discovery obligations or to substantiate objections. See *Ocean Garden Prods., Inc. v. Blessings Inc.*, No. CV-19-00641-PHX-DLR, 2020 WL 5758915, at *2 (D. Ariz. Sept. 28, 2020). Here, Defendants were expressly ordered to provide evidence supporting their foreign-law objection and failed to do so.

Finally, Rule 37 does not require a finding of bad faith, nor does it impose a heightened standard for fee shifting in complex cases. The rule applies where a party's conduct necessitates Court intervention and lacks substantial justification. See *Hyde & Drath v. Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994). That standard is satisfied here.

In short, this is not a case involving marginal success, mixed rulings, or equitable considerations that would make a fee award unjust. Plaintiffs prevailed on all five disputes, and Defendants' positions were rejected in each instance. Under these circumstances, fee shifting is not only appropriate, but required.

### E.    *Plaintiffs Are Entitled to Recover the Fees and Expenses Reasonably Incurred in Presenting the Five Disputes and This Motion.*

Plaintiffs seek recovery of the reasonable attorneys' fees and expenses caused by Defendants' conduct, including time spent meeting and conferring regarding the disputes, preparing the joint discovery dispute notices, reviewing Defendants' submissions, preparing for and attending the March 5, 2026 hearing, addressing Defendants' Romanian-law submission, and preparing this motion.

Defendants may contend that any fee award should be limited or apportioned because the Court imposed reasonable limitations on certain discovery requests or because some aspects of the disputes involved legitimate disagreements. That argument fails.

This is not a case in which the Court granted a motion in part and denied it in part, or in which different issues yielded mixed results. Plaintiffs prevailed on all five discovery disputes presented to the Court. In each instance, the Court rejected Defendants' position on whether discovery should proceed and ordered that discovery to proceed. The fact that the Court exercised its discretion to refine the scope of discovery does not convert Defendants' refusal to provide any discovery into a substantially justified position, nor does it create a basis for apportioning fees.

Nor is there a principled way to segregate the time incurred. The work performed by Plaintiffs' counsel was directed at overcoming Defendants' overarching positions across the five disputes, including their refusal to provide discovery, their reliance on overbroad objections, and, in the case of the deposition dispute, their unsupported assertion that foreign law prohibited the discovery altogether. The meet-and-confer efforts, preparation of joint notices, hearing preparation, and related work were all part of

{08731985 / 1}                                                    11

a unified effort to obtain discovery that Defendants refused to provide absent Court intervention.

Fees incurred in preparing this motion are likewise recoverable. Rule 37 expressly authorizes recovery of "reasonable expenses incurred in making the motion," which includes the time necessary to prepare a fee application where, as here, the opposing party does not agree to a reasonable award. See Fed. R. Civ. P. 37(a)(5)(A). Because Defendants declined to resolve the issue of fees despite Plaintiffs' good-faith efforts to meet and confer, the preparation of this motion was a necessary and foreseeable result of Defendants' conduct.

An award of fees in this case also serves the important purposes underlying Rule 37. Fee shifting is not only compensatory, but is intended to deter conduct that unnecessarily requires judicial intervention and consumes limited court resources. See *Infanzon v. Allstate Ins. Co.*, 335 F.R.D. 305, 308 (C.D. Cal. 2020).

This pattern is not unique to this case. In another District of Arizona case, the court similarly observed that the parties had "resorted to bickering and fighting" and "bombard[ed] the Court with voluminous discovery disputes," prompting the court to admonish that such conduct "must stop." *SiteLock LLC v. GoDaddy.com LLC*, No. CV-19-02746-PHX-DWL, 2020 WL 6135189, at *1, *3 (D. Ariz. Oct. 19, 2020).

There, the court ultimately declined to award fees based on case-specific circumstances, including the parties' shared responsibility for failing to propose reasonable limitations earlier in the process. Id. at *13. This case is materially different. Plaintiffs here engaged in good-faith efforts to narrow disputes, while Defendants maintained categorical objections and failed to substantiate key positions even when ordered to do so. The comparison underscores that, where the record reflects one-sided resistance rather than mutual breakdown, Rule 37's fee-shifting mandate should be enforced.

Here, the Court expressly observed that the number of discovery disputes in this case placed it among the highest on its docket at this stage of litigation and urged the

parties to resolve disputes without further Court involvement. Plaintiffs did so; Defendants did not. Instead, Defendants maintained positions across five disputes that required judicial resolution and were ultimately rejected in every instance.

Under these circumstances, a fee award reinforces Rule 37's purpose by compensating Plaintiffs and discouraging similar conduct that would otherwise burden the Court and the parties.

Plaintiffs seek only those fees reasonably incurred as a direct result of Defendants' positions in the five discovery disputes and will submit detailed billing records and supporting declarations demonstrating the reasonableness of the time expended and the rates charged.

Accordingly, an award of the full amount of reasonable fees and expenses incurred is appropriate.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and award Plaintiffs their reasonable attorneys' fees and expenses incurred in connection with the five discovery disputes on which Plaintiffs prevailed, including the fees and expenses incurred in bringing this motion, as required by Rule 37. Plaintiffs further request such other and further relief as the Court deems just and proper.

[THIS SPACE IS INTENTIONALLY LEFT BLANK]

DATED:  April 3, 2026,

/s/ Jeffrey J. Neuman

Jeffrey J. Neuman (Admitted *pro hac vice*)
Jeff@jjnsolutions.com
JJN Solutions Law, PLLC
9445 Brenner Ct.
Vienna, VA 22180

Isaac S. Crum, #026510
icrum@messner.com
MESSNER REEVES LLP
7250 N. 16th St. Ste 410
Phoenix, Arizona 85020
Telephone: (602) 457-5059
Facsimile: (303) 623-0552

*Attorneys for Prime Loyalty, Crisby Studio AB, and Niklas Thorin*

{08731985 / 1}

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies, under penalty of perjury under the laws of the State of Arizona that a copy of the foregoing document was provided to the counsel listed below via electronic mail:

Jeffrey M. Monhait
COZEN O'CONNOR
3WTC, 175 Greenwich Street
55th Floor
New York, NY 10007
Telephone: (215) 665-2084
Email: jmonhait@cozen.com

Robert S. Clark
COZEN O'CONNOR
1650 Market Street
Suite 2800
Philadelphia, PA 19103
Telephone: (215) 665-2041
Email: robertclark@cozen.com

SIGNED AND DATED this 3rd day of April at Vienna, Virginia

JJN SOLUTIONS LAW, PLLC

By:  *s/ Jeffrey J. Neuman*
     Jeffrey J. Neuman

{08731985 / 1}

15